# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Civil Action No._____

JEFF RODGERS, PATRICIA RODGERS, MICHAEL
LAVIGNE, JENNIFER LAVIGNE, CODY PYLE,
JENNIFER RIBALTA, IZAAR VALDEZ, FELIX
VALDEZ, individually and on behalf of all others similarly
situated

        Plaintiffs,

v.

HERBALIFE, LTD.; HERBALIFE INTERNATIONAL,
INC.; HERBALIFE INTERNATIONAL OF AMERICA,
INC., MARK ADDY, JILLIAN ADDY, DENNIS
DOWDELL, GARRAIN S. JONES, CODY MORROW,
CHRISTOPHER REESE, GABRIEL SANDOVAL,
EMMA SANDOVAL, JOHN TARTOL, LESLIE R.
STANFORD, FERNANDO RANCEL, LORI BAKER,
MANUEL COSTA, MARK DAVIS, JENNY DAVIS,
DANIELLE EDWARDS, GRAEME EDWARDS,
THOMAS P. GIOIOSA, SANDRA GIOIOSA, ALCIDES
MEJIA, MIRIAM MEJIA, PAULINA RIVEROS, RON
ROSENAU, CAROL ROSENAU, AMBER WICK, JASON
WICK, JORGE DE LA CONCEPCION, DISNEY DE LA
CONCEPCION, JENNIFER MICHELI, GUILLERMO
RASCH, CLAUDIA RASCH, SAMUEL HENDRICKS,
AMY HENDRICKS, BRADLEY HARRIS, PAYMI
ROMERO, ARQUIMEDES G. VALENCIA, RYAN
BAKER, KRISTOPHER BICKERSTAFF, MARK
MATIKA, ENRIQUE CARILLO, DANIEL J. WALDRON,
SUSAN PETERSON, MICHAEL KATZ, and DEBI KATZ

        Defendants.
_____/

**CLASS ACTION COMPLAINT**

**JURY DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs JEFF RODGERS, PATRICIA RODGERS, MICHAEL LAVIGNE, JENNIFER LAVIGNE, CODY PYLE, JENNIFER RIBALTA, IZAAR VALDEZ, FELIX VALDEZ, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this action against HERBALIFE, LTD., HERBALIFE INTERNATIONAL, INC., HERBALIFE INTERNATIONAL OF AMERICA, INC. (collectively, "Herbalife" or the "Company"), individual defendants MARK ADDY, JILLIAN ADDY, DENNIS DOWDELL, GARRAIN S. JONES, CODY MORROW, CHRISTOPHER REESE, GABRIEL SANDOVAL, EMMA SANDOVAL, JOHN TARTOL, LESLIE R. STANFORD, FERNANDO RANCEL, LORI BAKER, MANUEL COSTA, MARK DAVIS, JENNY DAVIS, DANIELLE EDWARDS, GRAEME EDWARDS, THOMAS P. GIOIOSA, SANDRA GIOIOSA, ALCIDES MEJIA, MIRIAM MEJIA, IVONNE RAMIREZ, PAULINA RIVEROS, RON ROSENAU, CAROL ROSENAU, AMBER WICK, JASON WICK, JORGE DE LA CONCEPCION, DISNEY DE LA CONCEPCION, JENNIFER MICHELI, GUILLERMO RASCH, CLAUDIA RASCH, SAMUEL HENDRICKS, AMY HENDRICKS, BRADLEY HARRIS, PAYMI ROMERO, ARQUIMEDES G. VALENCIA, RYAN BAKER, KRISTOPHER BICKERSTAFF, MARK MATIKA, ENRIQUE CARILLO, DANIEL J. WALDRON, SUSAN PETERSON, MICHAEL KATZ, and DEBI KATZ (collectively, the "Individual Defendants" and with Herbalife, the "Defendants") and allege as follows:

## INTRODUCTION

1.      This action seeks recovery from a corrupt organization of individuals and entities who act together, using misrepresentation and deceit, to sell access to a series of emotionally manipulative live events.

2.      The events are pitched as the guaranteed pathway to attaining life changing financial success with the multi-level marketing business opportunity sold by Defendant Herbalife. Events are held each month in dozens of locations across the country, and range in size from 200 to 20,000 attendees.

3.      Herbalife business opportunity participants are told that they must "attend every event" if they want to be successful; and that they must "qualify" for special treatment at these events by making large monthly purchases of Herbalife's products.

4.      Defendant Herbalife and its highest-ranking members (including the Individual Defendants), jointly produce and sell these events in close association. Defendants market their event system as some variation of the "Wheel of Success," the "Cycle of Success," or the "Circle of Success" (referred to herein as the "Circle of Success").

5.      The Circle of Success is graphically represented to participants in dozens of different forms, but all are intended to express the same core theme: attendance at events equals financial success.



6.      On or about October 26, 2011, from the stage of the year's largest event, Defendant Mark Addy concisely stated the mantra that is used to deceive thousands of Herbalife distributors and potential recruits in the U.S. every year: "If you go to all the events, you qualify for everything – you will get rich."[1] This mantra has been repeated thousands of times over the past four years by the Individual Defendants in close collaboration with Herbalife.

7.      The Plaintiffs here, each of whom has spent thousands of dollars attending these events, have received no benefit from doing so, despite Defendants' continuous barrage of guarantees to the contrary.

8.      Herbalife has long been the object of allegations, litigation, and regulation. Most recently the Federal Trade Commission (the "FTC") acted against the company, asserting that Herbalife's structure and deceptive business practices were harming consumers.

9.      But untouched by the FTC's action (and ultimate resolution of that action as discussed below) is the single most effective fraud in the arsenal of Herbalife and its top distributors – the Circle of Success event system. The event system lures and ensnares people such as Plaintiffs with the guarantee of significant income, a better lifestyle, and even happiness – all to be easily attained through event attendance.

10.     If Defendants told the truth – that there is no correlation between financial success and event attendance – Plaintiffs would not have attended Circle of Success events, would not have paid for tickets to Circle of Success events, and would not have paid for incidental expenses (such as hotel and airfare) to attend Circle of Success events.

11.     The Circle of Success is valueless.

---

[1] *Available at* https://youtu.be/Rb0hGAZl7w8.

12.     Plaintiffs seek damages and injunctive relief against the corrupt organization of individuals and entities who sell, operate, and compel participation in the Circle of Success.

### JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiffs assert claims under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).

14.     This Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Herbalife by virtue of Herbalife's extensive business operations in Florida.

16.     This Court has personal jurisdiction over the Individual Defendants. Defendants Lori Baker, Costa, Davis, Edwards, Gioiosa, Mejia, Ramirez, Riveros, Rosenau, Valencia, Wick, de la Concepcion, Micheli and Rasch are all residents of Florida. Each of the Individual Defendants has committed tortious acts in Florida, including making misrepresentations at Circle of Success events in Florida, disseminating false information over the wires in Florida, and each Defendant has engaged in substantial and not isolated activity in Florida.

17.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391, because substantial events giving rise to this Complaint took place in this District.

### SUBSTANTIVE ALLEGATIONS

### I.     THE FTC COMPLAINT

18.     In July 2016, the FTC sued Herbalife and certain of its subsidiaries, Case No. 16-cv-05217, in the United States District Court for the Central District of California (the "FTC Action").  In the FTC Action, the FTC accused Herbalife of operating an enterprise premised on the fiction that participants in the Herbalife scheme are likely to earn substantial income. Attached

hereto as **Exhibit 1** is a copy of the Complaint the FTC filed against Herbalife (the "FTC Complaint").

19.     The FTC Complaint alleged that "Defendants represent, expressly or by implication, that Herbalife Distributors are likely to earn substantial income, including significant full-time or part-time income, from pursuing a retail-based business opportunity."  FTC Complaint at ¶ 16.

20.     The FTC Complaint continues: "In reality, however, Defendants' program does not offer participants a viable retail-based business opportunity. Defendants' compensation program incentivizes not retail sales, but the recruiting of additional participants who will fuel the enterprise by making wholesale purchases of product." *Id.* at ¶ 17. The Complaint further alleges that "[t]he overwhelming majority of Herbalife Distributors who pursue the business opportunity make little or no money, and a substantial percentage lose money."  *Id.* at ¶ 20.

21.     The FTC Complaint focused on the promotional videos and marketing materials Herbalife uses, which "include representations that Distributors are likely to earn substantial income through Defendants' business opportunity; images of expensive houses, luxury automobiles, and exotic vacations; and income testimonials."  *Id.* at 25.

22.     The FTC Complaint recognized that "Defendants strongly encourage" people to attend events, that "[s]peakers are usually chosen from the very small percentage of Herbalife participants who have reached the highest status levels of the Herbalife organization" and that the presenters at the events "repeatedly emphasize that Distributors are likely to earn substantial income through Herbalife, and that Distributors' income potential is limited only by their own efforts."  *Id.* at ¶ 31.  The FTC Complaint then provides several examples of the absurd income claims being made at the events. *See id.* at ¶¶ 32-36.

23.     The FTC Complaint alleges that Herbalife does not offer a viable retail-based opportunity; that is, there is little legitimate market for the Herbalife product outside the network and most Herbalife Distributors who pursue the business opportunity make little or no money from retail sales. *Id.* at ¶ 55.  Instead, "when Distributors are left with product they are unable to sell they may give it to friends, throw it away, or gradually consume it themselves." *Id.* at ¶ 74. As a result, "the overwhelming majority of Distributors who attempt to retail the product make little or no net income, or even lose money, from retailing the product." *Id.* at ¶ 75.

24.     The FTC Complaint alleges that because "Herbalife participants earn little or no profit, or even lose money, from retailing Herbalife products . . . recruiting, rather than retail sales, is the natural focus of successful participants in Defendants' business opportunity." *Id.* at ¶¶ 147-148.

25.     Herbalife ultimately paid the FTC $200 million and agreed to entry of an order prohibiting it from certain business practices. These included limitations on multi-level compensation, prohibited misrepresentations relating to income and lifestyle, and compliance monitoring. Attached hereto as **Exhibit 2** is a true and correct copy of the Stipulation to Entry of Order for Permanent Injunction and Monetary Judgment.

## II.     MAKING MONEY WITH HERBALIFE

26.     None of Herbalife's top distributors, past or present, including the Individual Defendants, has built a significant income by retailing Herbalife's products according to Herbalife's rules. Defendants have actual knowledge that – despite their incessant misleading claims to the contrary – there is no viable retailing opportunity.

27.      The chain recruiting aspect of the business opportunity also produces dismal results for participants. According to the analysis in the FTC Complaint:

- 80% of distributors failed to entice a single new recruit into the scheme.

- 43% of those who had succeeded in recruiting a new participant, had nevertheless received no compensation from the company.

- More than half of the top 13% of distributors grossed less than $300 per year in payments from the company.

28. Although Herbalife's compensation plan includes eleven levels of distributors, there are effectively two classes of Herbalife participants: the infinitesimally small percentage of "haves," insiders who will trumpet alleged successes and "you can do it too" encouragement; and the "have-nots," outsiders comprising over 99 percent of all Herbalife participants.

29. Of the millions of people around the globe who have been duped over the last three decades into investing substantial sums to pursue Herbalife's business opportunity, fewer than 200 have achieved anything resembling the kind of lifestyles that are the steady refrain of Herbalife's marketing messaging. These 200, the top rungs of the President's Team, receive most of the recruiting rewards paid out by Herbalife. The President's Team members conspire to keep themselves on the top of the pyramid and to prevent their share of the take from being diluted.

30. Herbalife promotes the fetishized narrative surrounding the income claims of these President's Team members. President's Team members are cast as former dropouts, vagrants, bartenders, flight attendants, nurses, teachers, single mothers, used car salesmen, bus drivers, and college volleyball players – each of whom has achieved astounding success through Herbalife and through religious attendance of Circle of Success events.

31. In fact, to the extent the Individual Defendants have attained financial success, it is largely attributable to some combination of illegal or impermissible activity, such as banned recruitment methodologies and other unfair practices, which are not disclosed to Circle of Success attendees.

**Reliance on Banned Methods**

32.     For example, many North American President's Team members built large portions of their downlines relying on highly aggressive lead generation techniques that were banned by Herbalife four years ago as scrutiny of the company's business practices increased. These systems relied on mass marketing the Herbalife opportunity as a "work from home" internet system, and on charging distributors thousands of dollars a month to obtain leads generated through this deceptive advertising.

33.     Herbalife's stipulated settlement with the FTC fundamentally changes the way Herbalife operates by requiring distributors to prove retail sales and by forbidding standard practices such as using images containing, "opulent mansions, private helicopters, private jets, yachts, exotic automobiles." Yet the Individual Defendants who are still recognizing the residual benefits from these banned methods do not disclose that their downline was created in the first instance using these methods. Instead they continually defraud unsuspecting participants into believing that the key to their success was event participation and the Circle of Success.

**Roll-up**

34.     Another undisclosed way in which the Individual Defendants became wealthy was by relying on the hundreds of thousands of people who drop out of the Herbalife business opportunity each year. The downlines of those drop-outs, often consisting of their own friends and family, are "rolled up" the pyramid; greatly advantaging those at the top.

35.     Many top earning President's Team downlines have had the advantage of absorbing decades worth of Herbalife's 50% plus churn rate. Prospects and new recruits will not have that same opportunity when pursuing their own Herbalife businesses. Yet when promoting their allegedly lavish lifestyles, these President's Team members fail to disclose that a significant source

of their income was generated by downline recruits quitting, not by any affirmative act or conduct by the member.

**Stacking**

36.     Some of the biggest Herbalife downlines are grown and maintained by "stacking" the line with distributors, at key positions, who are essentially empty proxies of the upline. Controlling multiple points of an Herbalife downline organization facilitates the naked manipulation of the compensation scheme. The FTC alleged one telling example of this endemic practice among Herbalife's most successful distributors:

> Savvy Distributors have figured out ways to use the recruiting reward structure to reap rewards, even without profitable retail sales. For example, during the years 2009–14, one top Distributor paid over $8 million for product (with a total Suggested Retail Price of over $16 million) which the Distributor purchased in the names of various downline members, thereby generating additional rewards and qualifying for higher payments from Defendants. This Distributor then donated all of this product to charity, rather than attempting to sell it. The Distributor generated enough rewards through these purchases to make a net profit, without even selling the products.

*See* Ex. 1 at ¶ 86. Stacked downlines are the norm for Herbalife President's Team members, but this is never disclosed to potential recruits.

**Nepotism**

37.     The children and family of Herbalife's President's Team members are artificially placed in high-ranking positions throughout the scheme. In promotional materials and at Circle of Success events, family members hold themselves out as having achieved high incomes by adhering to the Circle of Success and by religiously attending and qualifying for special treatment at all events.

38.     For example, Defendant John Tartol, a top earning distributor and member of Herbalife's board of directors, has at least twelve members of his family highly placed within his

downline; all boast about their achievements at Circle of Success events across the country, telling others that they can do the same.

39.     But the children of President's Team members who become President's Team members themselves do not work the plan as explained to new recruits. They are stacked into preexisting downlines. Their Herbalife recruiting compensation checks are completely detached from their own efforts. This experience cannot be replicated by new recruits, who lack connections to Herbalife insiders, yet income claims by these members are a significant part of Herbalife's business opportunity sales pitch.

40.     Herbalife's "Gen H" initiative – which aims to recruit and retain college age participants – is particularly dependent on the income claims of children of long-time President's Team members.

## Preopening International Markets

41.     Herbalife affords certain members of its President's Team the opportunity to "preopen markets" outside of the United States. Herbalife's products and business opportunity are currently available in more than ninety countries. In many of those countries, members of the President's Team were permitted (through the conspicuous non-enforcement of Herbalife's rules) to enter the market and start building downline sales organizations before the market was officially open. This selective lack of enforcement allows preferred distributors to claim a place at the top of the compensation structure in a given country, assuring that virtually all recruiting and sales within that country will generate commissions for these distributors.

## Money Laundering

42.     Large "stacked" downlines present unique opportunities for the Defendants to generate illegal profits impossible for new recruits. Receiving compensation for *purchasing* products creates an obvious opportunity and incentive to launder illicit monies through the scheme.

43.     Money comes into a downline organization as product purchases and goes out as legitimized dollar-denominated commission checks from a global company with a New York Stock Exchange listing. [2]

## Currency Arbitrage

44.     President's Team members like Defendant Fernando Rancel, and others working the Miami market, have profited greatly from a currency arbitrage scheme.

45.     The complex arrangement involved a very favorable exchange rate that Herbalife utilized to convert Venezuelan bolivar purchases into U.S. dollar commission checks, effectively turning the purchase of Herbalife products into a profitable method of transferring money out of Venezuela despite their strict capital controls.

46.     The existence of this method of operation was never disclosed to new recruits as an income tool, though the income and lifestyle claims of distributors utilizing the method made up a substantial part of the income testimonials presented at Miami area events.

## The Tools Business

47.     A large percentage of the wealth amassed by President's Team members came from selling leads, systems, trainings, websites, marketing materials, mentoring group access, private events, etc. directly to recruits. These side businesses, collectively known as the "tools business," are fully detached from Herbalife's compensation plan.

48.     President's Team distributors do not disclose when the mansions, exotic automobiles, yachts, and helicopters used in their Circle of Success marketing efforts were in fact funded by these supplementary sources of income.

---

[2] Plaintiffs expect to discern in discovery which Defendants have used the Herbalife opportunity to launder funds.

**Broke and Bankrupt**

49.     Many of the income claims made by presenters at Circle of Success events, organized and overseen by the Defendants, are altogether false. It is not unusual for top distributors to be struggling to survive financially, while boasting from the Circle of Success stage about the life changing financial security of their large Herbalife incomes.

50.     For example, President's Team member Michael Burton was a frequently featured guest speaker at Herbalife events across the country. On June 22, 2013 Mr. Burton was the guest speaker at the Miami Success Training Seminar, speaking to members and recruits about the "financial freedom" he had attained via his Herbalife business.

51.     The next month Michael Burton filed for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Texas, Case No. 13-41669.

52.     Defendants sporadically pair their claims of enormous incomes with ineffective "results not typical" style disclaimers, but frequently the claimed results are not just atypical – they are fictional.

53.     The Herbalife success story is a fraud; a predatory scheme intentionally rigged against newcomers playing by the rules. The success claimed –  and promised –  by Defendants at Circle of Success events across the country is impossible to attain under its own terms.

**III.     THE HERBALIFE EVENT CYCLE**

54.     As discussed herein, through lies, omissions and misrepresentations, Defendants aggressively encouraged Plaintiffs and Class Members to attend a Circle of Success event every month.

55.     Herbalife produces its own large-scale events four times a year: a regional $50 "January Spectacular," two regional $100 "Leadership Development Weekends" in April and October, and a national $120 "Extravaganza" each July.

56.     The other eight months of the year are left to the semi-local $30 – $50 Success Training Seminars ("STS"). The STS is produced in conjunction with Herbalife, and tickets to these events are sold by an amorphous group of President's Team distributors that are most commonly referred to simply as "the leadership."

57.     Since its founding in the 1980s, Herbalife has relied on live events for both recruitment and retention. Live events are built around the persuasive power of the personal success testimonial. Herbalife founder Mark Hughes consistently emphasized the importance of this tool.

58.     According to Mr. Hughes, only 25% of an event should be devoted to information about Herbalife's products and marketing plan, while the remaining 75% should be reserved for success testimonials. The informational part of the meeting was intended only as a setup for the emotionally manipulative testimonials.

59.     At an Herbalife training event posted to YouTube, Mr. Hughes explained his theory on the subject:

> The more people that you can hear from, and the more different backgrounds you hear; and the more different circumstances, and where they were, and where they came from; and what their first month's income was, and what it is now; the more eyes that you can see; the more somebody, and there's going to be somebody today that you're going to see and you're going to say, 'If that person can do it, I can do it.' And that's the most important thing that can happen to you in Herbalife.[3]

60.     For more than thirty years Herbalife has built its revenues by relying almost exclusively on the "and you can too" personal success testimonial. At live events, the density and

---

[3] *Available at* https://youtu.be/ZXbHTaKxuwQ.

seeming sincerity of the income testimonials can overwhelm the resistance of even the most

skeptical prospect.

61.     Individual Defendants constantly reiterate the central importance of attending

Circle of Success events and of getting guests and prospects to do the same.

> "Our ultimate goal with everything we do in our precess[*sic*] is
> getting people plugged into the Herbalife Event Calendar,"
> President's Team member Jorge de la Concepción Jr.

> Events are the, "FASTEST way to build the BIGGEST checks in the
> SHORTEST period of time," President's Team member Andrea
> Villegas-Shanahan.

> "There is **a DIRECT CORRELATION** between the amount of
> people you bring to an event and your position in the Herbalife
> Marketing Plan! It is impossible to explain (or re-create) the
> excitement and impact of 300, 400, 500+ people in a room, all
> excited and talking about their results and how Herbalife has
> changed their lives."

> *See* Composite **<u>Exhibit 3</u>**.

62.     The FTC provided some detail on Herbalife's Circle of Success event culture in

their Complaint against the company:

> Defendants also sponsor numerous events for Distributors in both
> English and Spanish. Many of these events include live
> presentations at which speakers boast about the high incomes they
> earn as Herbalife Distributors. These events have names such as
> "Extravaganzas," "Leadership Development Weekends," and
> "Success Training Seminars.

> Defendants strongly encourage Distributors to attend these events,
> which often require Distributors to pay an attendance fee and/or
> purchase a minimum amount of product from Herbalife. Defendants
> craft the agendas and select the speakers who present at these events.
> Speakers are usually chosen from among the very small percentage
> of Herbalife participants who have reached the highest status levels
> of the Herbalife organization. The presentations made by the
> selected top Distributors repeatedly emphasize that Distributors are
> likely to earn substantial income through Herbalife, and that
> Distributors' income potential is limited only by their own efforts.

*See* Ex. 1 at ¶¶30-31.

## The STS

63.     The STS has a long history at Herbalife. During the tenure of Mr. Hughes, the STS (and events like it) were held up to three times a week at no cost to the distributor. In the years following Mr. Hughes' death – as the company first stagnated, and then turned all its efforts towards "work from home" lead generation systems – the STS was a slow growing, once a month, corporate sponsored event.

64.     One of Herbalife's original Distributors, Defendant Cody Morrow, gave an extensive presentation on the history and future of the STS at the 2013 "Future President's Team Retreat" in Boca Raton. According to that presentation, the growth arc of the STS substantially changed in 2009 when top members of the President's Team, spearheaded by Defendant Dan Waldron, "took ownership" of the STS event structure. Attached as **Exhibit 4** is a copy of that presentation.

65.     At the beginning of this decade, as the Company transitioned away from its reliance on "work from home" systems, the STS became increasingly important as a driver of recruitment. Herbalife's push for $1 billion in North American revenues, dubbed "Mission 1 Billion" by the company, was to be achieved by "riding the wave" of exponential STS growth.

66.     Edition No. 150 of *Herbalife Today*, a promotional magazine distributed by Herbalife, contained a cover article entitled, *STS 100K in 2011: Catch the Wave*. Attached as **Exhibit 5** is a copy of that Herbalife Today article.

> If you're wondering how to boost your Herbalife business, but you've yet to attend a Success Training Seminar (STS), now's the time! These crucial events provide you with the skills you need to take it to the next level. After all, with the right training, anything is possible, especially when it comes to setting new records, like being the first region ever to reach a billion dollars in sales!

67. The STS had become the foundation of Herbalife's intricately coordinated Circle of Success event cycle. Local meetings, nutrition clubs, fitness and weight loss challenges, social media posts – all of Herbalife's so-called "Daily Methods of Operation" – were now aimed at finding prospects to feed into the STS. From the same Herbalife Today article:

> That's why the STS's are the key to help make your business grow, and to helping others achieve success. "STS's are enough to make a new person say, 'I want to be part of this. I can do this!'" says Mark Matika, Executive President's Team 15K member, who has been an Herbalife Independent Distributor for more than 29 years.

*See id.*

68. Long scripted days of income claims accompanied by loud music, shouting, clapping, hugging, and crying, move the prospect toward "I can do this!" Just as importantly, the STS is critical to convincing people to keep pouring money into the scheme – a monthly reaffirmation of the life changing power of Herbalife's business opportunity.

69. Throughout 2011, Defendant Herbalife ran a "Catch the Wave" promotion which included monthly training calls with President's Team members who espoused the primacy of the STS as a business building strategy. Herbalife ran a similar promotion in 2012 – "Ride the Wave" – which also included monthly President's Team conference calls.[4]

70. Herbalife did reach $1 billion in North American sales by catching and riding the wave of STS growth. The 2013 Morrow Presentation suggested that for North America to reach $2 billion in revenues, STS attendance would need to be doubled.

71. Herbalife's STS system is owned and controlled by a web of Defendant connected entities. There are currently more than sixty ever-changing U.S. based STS websites registered to various distributors. Some of the site registrations are private or registered to mid-level proxies,

---

[4] "Level Ten Herbalife Leaders sharing STS success secrets to take your business to Level Ten! Ride the momentum of the Herbalife STS Wave!" *See* **Exhibit 6**.

but many are registered to one of the President's Team members controlling a local area for Herbalife:

- STSMiami.com is registered to Defendant Jorge de la Concepcion
- STSOrlando.com is registered to Defendant Sandy Gioiosa
- BostonSTS.com is registered to Herbalife board member Defendant Jim Tartol
- DallasSTS.com is registered to Defendant Dan Waldron
- OrangeCountySTS.com is registered to Defendant Cody Morrow
- SanDiegoSTS.com is registered to Cody Morrow's son Nick Morrow

72.     STS tickets are purchased online over these sites or can be purchased onsite with cash or credit. For example, attendees of the Central Florida STS previously submitted payment to Defendant Tommy and Sandy Gioiosa's "Gioiosa Marketing" for event tickets. Currently the tickets are being sold through an entity called "OrlandoSTS."

73.     Miami STS tickets are purchased from Telos LLC, a Florida limited liability company managed by President's Team member Alcides Mejia Jr., son of Defendant Alcides Mejia. Event advertisements instruct prospective attendees to purchase tickets by making a deposit directly into "Telos LLC account# 898030257080." Meanwhile, Defendant Jorge de la Concepcion registered a "Miami STS, LLC" in Florida, listing himself as "manager."

74.     While STS events are effectively owned by top distributors, they are staffed by a large "Production Team" of business opportunity participants. These individuals are cajoled into volunteering their time to setup audio equipment and chairs, hang banners, assemble welcome kits, and make shakes for the VIP tables.



(Posted to the Miami STS Facebook page March 8, 2016)

75.     At Circle of Success events, attendees are encouraged to buy tickets for future STS events in bulk packages of between five and twenty tickets. STS tickets and STS ticket packs are non-refundable.

### Leadership Development Weekend

76.     Leadership Development Weekends ("LDW"), currently held in April and October, are large regional events sponsored and sold by Defendant Herbalife in some ten cities across the country. The weekend long events cost $75 – $110 to attend and require most participants to travel and stay two nights in a hotel.

77.     The LDW offers the same basic content as the STS, but larger venues and bigger crowds add to the emotional impact of the event. LDW featured speakers are chosen from a small subset of the STS speakers, a list that includes all of the Individual Defendants.

78.     Upon information and belief, Defendant Herbalife compensates Individual Defendants to act as featured speakers at these events.

79.     But like the STS, the LDW is staffed by a Production Team of business opportunity participants working uncompensated behind the scenes to produce the very events they are paying to attend.

80.     LDW event tickets are non-refundable.

### January Spectacular

81.     The January Circle of Success event is a hybrid of the STS and LDW. The events tend to be larger, more expensive, and are often held over two days.

82.     Prior to 2015, the event was called "January Spectacular" and it was sponsored and sold directly by Defendant Herbalife. But recently "the leadership" has absorbed the event into the STS system and renamed it "January Kickoff." Tickets are now purchased from the same shifting list of top distributor-related entities and individuals who sell STS tickets to Circle of Success participants.

83.     Both January Spectacular and January Kickoff tickets are non-refundable.

### Extravaganza

84.     Extravaganza is billed as "the BIGGEST and MOST IMPORTANT event to attend" on the Circle of Success calendar.  *See* **Exhibit 7**.  The $120 annual event is attended by some 20,000 business opportunity participants, and is produced and sold directly by Defendant Herbalife.

85.     The event features similar content to the STS and LDW. Presentations and panel discussions are hosted by the same small subset of speakers utilized at the LDWs, but Extravaganzas also feature Defendant Herbalife's corporate executives.

86.     The excitement generated by so many Circle of Success participants concentrated in one location is often cited favorably by Herbalife's executives when speaking to analysts and

stock market investors. On Herbalife's second quarter 2017 earnings conference call for example, CEO Rich Goudis deflected an analyst's question about a decrease in North American sales by referencing the national event.

> "But listen, we came out of July Extravaganza with 21,000 people.
> And we were all extremely moved by the enthusiasm and excitement
> in the business. It was apparent. It was visible. You could hear it."

87.     Extravaganza attendance is pushed aggressively by speakers at Circle of Success events throughout the year. Extravaganza tickets are available for purchase at STS and LDW registration tables as much as six months prior to the event.

88.     Extravaganza attendance requires air travel and a multi-night hotel stay for the vast majority of attendees.

89.     Extravaganza tickets are non-refundable.

### Making the Sale

90.     There are hundreds of Circle of Success events held across the country each year, conducted in both English and Spanish. Each delivers substantially similar content, carefully orchestrated by Herbalife, in a substantially similar format; and each centers around the allegedly spectacular financial success of the "special guest" speakers. Speakers tell the audience that they can achieve the same level of success themselves simply by continuing to attend events.

91.     Advertising and promotion of the upcoming Circle of Success event begins with a one page flier that is distributed at the current month's STS. The flier is then posted to the leadership controlled STS website for the area and on social media pages managed and controlled by that same leadership.

92.     Most fliers tell the brief story of a person who was once lost in the normal struggle of human existence; that has since been set free from the bondage of work and uncertainty via the "anyone can do this" power of the Herbalife business opportunity:

- Just by recommending the nutrition to my circle of influence and my local community, I was generating over $4000 extra. In January 2013, after another amazing event, I was so blown away by the testimonies that I decided to quit my job and take this business to the next level. [Karim Ali, 2016 Miami STS]

- I quit my internship @ the states attorneys office and decided to ditch law school to pursue the Herbalife business opportunity full time! My first check was $61 and two years later I earn over $7,000 + every single month! [Maigan Graham, 2014 Phoenix STS]

- Now the lifestyle is truly incredible, enjoying financial freedom traveling the world. [Michael Burton, 2013 Miami STS]

- Lisa Arnold was able to go from a zero dollar income to a 6 figure income in 12 months and she will be sharing in detail exactly how she did so! [Lisa Arnold, 2015 Boston STS]

- They both had great results using the products and when their parttime income reached $5000 a month, Laura quit her job as a banker and Mike left his job in non-profit fundraising… "We are truly living our dreams!" [Mike and Laura Curtis, 2013 Denver STS]

- After doing Herbalife for just 21 months they were able to reach President's Team, along with Jorge's parents!!!!! The most important part is that they are able to stay at home with their kids and spend every moment with them because of the lifestyle they have earned! [Disney & Jorge de la Concepcion, 2015 Tampa Bay STS]

- Four months after I signed up I decided to take a leap of faith, so I fired my bosses and put Nursing school on hold for life and it's been the best decision I've ever made. [Ximena Betancourt-Mejia, 2016 Palm Beach STS]

- Within 3 weeks she attended her first STS and that help launch her business to making over $8000 a month within 90 days. [Launa Rasch, 2012 Denver STS]

- In the first 10 weeks Tim made more part-time than he did full time… "I hit a six-figure income in 3 years, and now I earn more per month working the hours I choose around my family than I used to make in one year as a Marine! [Tim Hendricks, 2015 Chicago STS]

- I attended a training just like the success training seminar I will be at with all of you, and loved the positive energy. That day was life changing. I copied what they taught me and put it into action right away, and within a few months was able to go full time with Herbalife. [Karen Feiger-Kolehmainen, 2014 Palm Beach STS]

Attached hereto as **Composite Exhibit 8** is a sampling of these STS fliers.

93.     Very few of the preceding examples have any sort of associated income disclaimer;

and those that do are mostly unreadable, or are half superimposed over the image of a luxury car.

Plaintiffs have collected more than a hundred examples of this type of blatantly deceptive marketing.

94.     Publication of intentionally misleading STS fliers to leadership-controlled STS websites is only step one of the promotional process. Defendants conspire to promote the STS across all channels of modern communication, including but not limited to Facebook, Snapchat, Instagram, YouTube, Twitter, Zoom, and WhatsApp.

95.     In a training video distributed by Defendant Herbalife, Defendant Amy Hendricks tells distributors that event promotions should focus on the uniqueness of the featured speaker. "It's all about the story, and promoting the trainer themselves," says Hendricks.

96.     Each month Defendants distribute, or cause to be distributed, hundreds of thousands of fraudulent messages about Circle of Success events across the wires. These messages persuade participants to attend these events – and to pump yet more money into the Herbalife scheme – in the vain hope of achieving the rapid success being advertised.

97.     Defendants expect and encourage their Circle of Success promotional messages to be remixed and echoed across the wires via the social media accounts of event participants. Each event flier published by Defendants generates thousands of clone publications in the months leading up to the event.

98.     For example, the flier for the October 3 – 5, 2014, LDW in Jacksonville was originally published to Defendant Herbalife's various websites. Regional leadership then republished the flier over their event websites and social media feeds.  *See* **Exhibit 9**.

99.     In the final step, hopeful distributors repackaged the flier and passed it along through the wires to their own social networks.



"If you are serious about growing your business and making an impact in your community YOU WILL BE THERE!!!!"

100.    Although tickets for LDWs and Extravaganzas are purchased directly from Defendant Herbalife, it is the Individual Defendants that are primarily responsible for the marketing and promotion of the events. These regional and national events are promoted from the STS stage and over the same online and social media channels that "the leadership" use to promote the STS.

**<u>Attend Every Event</u>**

101.    Circle of Success events present the same basic content month after month, year after year, yet Herbalife's business opportunity participants are nevertheless exhorted to "attend every event." Attending *every* event is presented as the path to success walked by all of the company's leading lights; a duplicable pattern that anyone can use to achieve the same results.

102.    A June 25, 2016, post by the area leadership to the "Miami STS" Facebook page conveyed the standard message: "ALWAYS attend the events, the one you miss us[*sic*] the one you need the most!"

103.    Events are time consuming, expensive, and highly repetitive – but Herbalife business opportunity participants are expected to attend them all.

104.    Defendant Lori Baker frequently uses her social media feeds to remind her downline that attending all Circle of Success events is the key to attaining life changing success in the Herbalife business opportunity. In a January 12, 2017 post Defendant Baker converted the "attend every event" mantra *ad nauseam* into something like a mathematical formula:

> Super-EZ Success Formula: Work on Yourself + Attend Every Event + Qualify for Everything + Bring People with You = Living the Life YOU Want …
>
> #ItWouldBeSuperSadToGetLeftBehindWhenItsThisSuperEZ

105.    In an April 30, 2015 Facebook post, Defendant Baker made the proposition even simpler for the members of her downline. The post, a popular Herbalife meme featuring Defendants Mark Addy and Enrique Carrillo, was shared more than sixty times after it was posted by Defendant Baker:



106.    According to their biography in a 2009 issue of *Herbalife Today,* President's Team members Amber and Jason Wick replaced their incomes as engineers by working the Herbalife business opportunity. Their alleged keys to success:

> Attend every event possible.
> Bring as many people as you can.
> Qualify for everything you can at events.

*See* **Exhibit 10**.

107.    May 25, 2017 Defendants Jorge and Disney de la Concepcion posted a promotion for the upcoming Miami STS to their popular Instagram feed. The post reminded members of their downline that event attendance was mandatory:

> "For those of you serious Herbalife Distributors in Miami, I'll tell you like we tell our team; Events/Trainings are non negotiable!"

*See* **Exhibit 11**.

108.    A May 29, 2017, post by President's Team member Heather Gregg, posted to the private Facebook group for members of Defendant Mark Matika's downline (which includes Plaintiffs Jeff and Patti Rodgers), declares event attendance to be the "FASTEST WAY TO GROW."

> "THE pathway to advancing in the business can ONLY be done by attending the events and bringing people with you.
>
> Be SURE you have your calendar filled with the dates of all events first… then plan everything else around those dates."

*See* **Exhibit 12**.

109.     A private website (ready2gonow.com) for members of Defendants Carol and Ron Rosenau's downline organization makes available documents and instructions for executing a success plan referred to as the "2 − 4 − 1 Plan." The "2 − 4 − 1 Plan" is pitched as a one year path

from new Herbalife member to the President's Team, and it centers around attending all Circle of Success events.

110.    Plan participants are expected to sign a contract that states within the first paragraph: "Attending these events is ESSENTIAL TO SUCCESS in working the 2-4-1 Plan." The plan also contains this graphic to remind participants that attendance breeds success:



*See* **Exhibit 13**.

111.    Many Defendants require distributors to sign similar monthly contracts as a condition of working as a "Nutrition Coach" out of area Nutrition Clubs controlled by that member. These agreements usually have monthly event "attendance requirements," as discussed in a YouTube video published by Defendant Amber Wick's organization.[5]

112.    A video recording from the October 26 – 29, 2011, Extravaganza was later distributed as a "training DVD" to attendees of the 2012 January Spectacular, including Plaintiffs.

---

[5] *Available at* https://youtu.be/B91mlvRmL5U

113.     The DVD shows Defendant Wick hosting a panel discussion about succeeding with Herbalife Nutrition Clubs in front of thousands of Herbalife business opportunity participants. Wick introduces Defendants Sam and Amy Hendricks, telling the audience that Sam and Amy built their fast-growing Herbalife paycheck by relying on the Circle of Success and by working their business "event, to event, to event." Wick says that, "for every person you get to an event, you can expect your check to go up by a certain amount."

114.     Defendants Sam and Amy Hendricks tell the audience that there is a direct correlation between the number of people you bring to the events and your position in Herbalife's compensation plan. Bring ten new distributors with you to Circle of Success events and that, "equals President's Team," according to Defendant Sam Hendricks. Hendricks says that distributors should be careful to "language" their event invitations such that the prospect will think they have no choice but to attend if they want to pursue the Herbalife business opportunity.

115.     On October 11, 2013, during Herbalife's Extravaganza weekend, Defendant Jillian Addy gave a presentation to thousands of Herbalife distributors detailing the staggering growth of her and her husband's organization since their 2009 switch to focusing on working "event to event:"



116.     Ms. Addy charts out a "Systematic Flow from Fitcamps Into HLF Events," for which she credits an 800% increase in compensation over four years. A similar story is told company-wide, month after month, at event after event; Herbalife's top North American distributors credit their entire operations on the Circle of Success event cycle.

117.     Defendant Herbalife also consistently emphasizes the essential nature of event attendance. For example, the "Herbalife Lead" program allocates prospects generated by Herbalife's website and direct marketing efforts to qualifying distributors. Attendance at four Circle of Success events, at least two of them corporate-sponsored events, is required to be eligible for the program. *See* **Exhibit 14**.

118.     While Herbalife ceded the financing and operation of the STS system to top distributors, the company retains significant control. The full curriculum for the STS event is provided to Individual Defendants by Defendant Herbalife via myherbalife.com. Under a section titled, "Building Your Business -- Approved Trainings for Meetings" the company describes the STS as the "mother of all group meetings" and prescribes the materials to be used when presenting it. *See* **Exhibit 15**.

119.     The suggested agenda provided with the event materials lays out the whole STS day with great specificity. Events all across the country follow this agenda to the minute. *See* **Exhibit 16**.

120.     The Herbalife provided agenda calls for featured presenters to close the day with a fifteen-minute discussion of the "Action Steps" participants should take upon leaving:

> "Key piece: next steps, next meeting (STS, LDW)
>
> Strive to qualify for everything, consistency, plugging into the
>
> Cycle of Success and bringing people with you to the next events!"

*Id.*

121.     According to Defendant Herbalife's agenda, the key takeaway message of these events is to keep qualifying for, and attending, these events.

122.     It costs more than $600 per year in ticket prices alone to "attend every event."

**Qualify for Everything**

123.     "Qualification" is an idea deeply embedded within the synthetic subculture that Defendants cultivate to keep Herbalife business opportunity participants ensnared in unnecessary spending. "Qualification" is Herbalife parlance for meeting the bulk purchasing and recruiting requirements arbitrarily established by both Herbalife and the Individual Defendants.



(photo taken by Herbalife distributor at the October 2013 Extravaganza in Las Vegas)

124.     Herbalife's compensation and commission structure encourages participants to progress up a ladder of clearly delineated ranks. According to Herbalife, "qualifying" for a new rank, an achievement recognized with great fanfare at Circle of Success events, correlates with an

increased earning potential. The more you recruit, the more you are compensated for those you have already recruited.

125.    There are eight compensation levels between a new Herbalife recruit and the vaunted President's Team. In recent years, Herbalife has added four additional "recognition levels" to the stairway. Recognition levels are qualifications celebrated with pins and certificates at Circle of Success events, but which do not actually have an effect on a distributor's compensation.

126.    But "qualification" also refers to bulk purchases made in order to satisfy requirements which are tied directly, and exclusively, to the Circle of Success. These qualifications are completely detached from the compensation scheme. When Herbalife's business opportunity participants are daily entreated to "qualify for everything," it is this ceremonial event qualification which is usually being referenced.



127.   A photo posted to Facebook by an Herbalife distributor shows Defendant Tommy Gioiosa, appearing at a January 29, 2017 Circle of Success event in Philadelphia, standing beneath a sign reading, "CHANGING PEOPLE'S LIVES."

128.   "I always qualify for everything ... no matter what," reads the PowerPoint presentation displayed on the monitor in front of Gioiosa. "Get as many people to qualify for all the events with you."

129.   At Circle of Success events participants can qualify for "advanced" trainings, mentoring sessions, dinner with guest speakers, special photo opportunities, and "VIP seating and treatment" while at the event.



(January 24, 2017 Instagram post by Erika Martin, ranking agent of Defendants Jorge and Disney de la Concepcion)

130.   VIP qualifiers are positioned at the front of the venue, usually seated at tables where they are served – and conspicuously consume – Herbalife products throughout the event. During the hours-long seminars frequent reference is made to the accomplishment and import of being seated at the VIP tables. VIP qualifiers are said to be signaling the seriousness of their commitment to their downline members, and to "the leadership."

131.     VIP and other qualification requirements vary by event and location. For example, in 2016:

•    Miami STS VIP qualification required "10,000 Personal Volume Points" (roughly $5000 worth of purchases) in the preceding month

•    Spanish language Miami STS VIP qualification required 2500 Personal Volume Points in the preceding month

•    Tampa Bay STS VIP qualification required 7500 Personal Volume Points the preceding month

•    Silver VIP qualification for the Orlando LDW required an accumulation of 25,000 Total Volume Points during the four months preceding the event

•    Silver VIP qualification for the Atlanta Extravaganza also required an accumulation of 25,000 Total Volume Points during the four months preceding the event



Keep an eye on your progress

Check your progress toward exciting events and promotions with our trackers. You're only a click away!

(July 10, 2017 screen capture inside myherblife.com)

132.     Herbalife's members only website, myherbalife.com, has a "Qualification Status" tracking system to allow distributors to see the progress they have made toward Circle of Success event qualifications.



(July 10, 2017 screen capture inside myherblife.com)

133.    Qualification for "advanced trainings," like the "Supervisor School" portion of the STS training or the "Supervisor Workshop" portion of the LDW event, require a participant to hold the rank of Supervisor in Herbalife's marketing plan.  Supervisor is the rank at which Herbalife business opportunity participants can start earning commissions on their recruiting. This level can be attained by achieving 2500 personal volume points in each of two consecutive months. Once achieved, the rank can be held for up to a year without further action.

134.    But at most Circle of Success events, access to the "advanced" Supervisor trainings is only available to participants who have satisfied their buying quotas in the immediately preceding months.

135.    Qualification and recognition at monthly events works in conjunction with the marketing plan levels to continually convince Plaintiffs that there is reason to invest in one more months' worth of qualifying volume. But as the rewards offered for attaining these "recognition levels" and "qualifications" are non-pecuniary, Defendants are able incentivize onerous monthly purchase requirements at no additional cost to themselves.

136.    A search for the hashtag #qualifyforeverything on the social media site Instagram returns more than 4000 posts; mostly posted by hopeful Herbalife distributors repeating the lessons taught by company leadership.



"Our Secret? Use the products. Wear the brand. Talk to people. Qualify for EVERYTHING. Never miss an event. Take people with you.

(September 5, 2015 Instagram post by Miami President's Team member Fabiola Barinas)

137.    When Herbalife's North American business opportunity participants place orders with the company, many are purchasing Circle of Success qualifications as much as they are wholesale products to resell. They have been fraudulently induced into the belief that "qualify for everything" is a strategy for earning limitless income in Herbalife, when the reality is that it is only a strategy for rapidly losing income.

### Mutual Control and Benefit

138.    Herbalife's Circle of Success is the product of a close association between Herbalife and its highest-ranking Distributors. While none of the Defendants will claim ownership over the enterprise that produces and profits from these events, both Herbalife and its top Distributors rely on the Circle of Success to perform core functions of their individual operations.

139.     The Individual Defendants profit directly from the sale of Circle of Success event tickets, and from speaking fees received for appearing at Circle of Success events. The reputations of the Individual Defendants are significantly strengthened by being routinely held out as Herbalife's most successful distributors. These Defendants rely on the Circle of Success to recruit new distributors, to retain current distributors, and to keep all distributors making bulk purchases that will translate into increased commission checks.

140.     Defendant Herbalife profits directly from the sale of the regional and national Circle of Success event tickets. The stunning stories of rapid financial success peddled at these events are at the heart of the pitch for the Herbalife business opportunity. Circle of Success events use deceit and misrepresentation to recruit new participants into Herbalife's fraudulent proposition, and to keep those participants (like Plaintiffs) locked in a cycle of mandatory monthly purchases.

141.     Over the past decade, individual events grew larger under "leadership ownership" and expanded to new locations like Jacksonville, Lakeland, and Fort Lauderdale – areas that would have been too small to merit attention under the corporate control regime. The Morrow Presentation, discussed above, outlines the steps for starting an STS in a new area, with an emphasis on working together toward "common goals."

142.     The "Herbalife Distributors' Code of Honor," available for download on Herbalife's member only website myherbalife.com, provides some additional guidance on cooperation:

> "In order to establish a successful Herbalife business in a city, country or region, Distributors should seek to unite their efforts, regardless of the upline or downline they belong to. This includes business and joint event planning, speaker exchange and support as required. Productive cooperation will elevate your business and help it flourish. You should take every opportunity to demonstrate that we are united in our goals as one Herbalife family."

143.    The "Herbalife family" puts on its joint Circle of Success events utilizing standardized presentations decks, scripts, and agendas. Local leaders are instructed to work together and stick with the approved materials because, "everything works."

144.     Another document published to the member only site myherbalife.com titled "SPEAKER GUIDELINES: For use at all Herbalife Events," mandates that featured speakers present their PowerPoint presentations to Herbalife for inspection three weeks prior to the event. This "allows time for sales representatives, branding specialists and legal to review" the presentation's content. Speakers who miss the deadline, "risk not being permitted to present." *See* **Exhibit 17**.

145.    After STS events, local leadership report back to Herbalife with a record of event attendees, registration lists, and the amount of company provided product remaining. *See* **Exhibit 18**.

146.    Circle of Success events require the close collaboration of Herbalife and the Individual Defendants. All Defendants are currently reliant on the ongoing scheme for their U.S. revenues.

## PLAINTIFFS

147.    Representative Plaintiffs have collectively attended more than 150 Circle of Success events, each spending more than a year trapped in a cycle of manipulation calculated to produce financial loss.

148.    Plaintiffs are hardworking, diligent, conscientious citizens who were ensnared into an aggressively fraudulent scheme by Defendants' exploitation of their trust, their hope, and their vulnerability.

**Jeff and Patricia Rodgers**

149.     Patti attended her first large Herbalife recruiting event on January 22 – 23, 2011; traveling 140 miles to Herbalife's "January Spectacular" in Orlando. The event featured one of Herbalife's top distributors, Defendant Susan Peterson, as its keynote speaker.

150.     Defendant Peterson convincingly claimed that the Herbalife business opportunity offered a certain path to financial freedom for anyone willing to invest the time, money, and energy. Patti committed herself to vigorously pursuing the Herbalife business opportunity.

151.     Patti's husband Jeff Rodgers had a successful career as a construction estimator.

152.     In March 2011, Patti brought Jeff to a Circle of Success event in Daytona Beach.

153.     Shortly thereafter, Jeff suffered a serious stroke which cost him his job – and his sense of stability. While Jeff was still recovering from this health crisis, the Rodgers attended a Circle of Success event from July 8 – 10, 2011 in Jacksonville.

154.     That weekend, Defendant Amber Wick gave a version of her standard Herbalife testimonial. She and her husband, Defendant Jason Wick, claimed that they spent many long years with a stagnant Herbalife business. Amber Wick explained that once the couple started working their business by funneling prospects into the "Circle of Success," everything changed. Jason and Amber claimed they were now living a life of total financial freedom and empowerment, and that anyone willing to "duplicate" their model was sure to achieve the same liberation.

155.     Over the next few years Jeff and Patti Rodgers – like thousands of other class members similarly situated – were convinced by an onslaught of guarantees that if they modeled the methods of leaders like Defendants Wick, Addy, Bickerstaff, Baker, Carrillo, Jones, and De la Concepcion, and worked the Herbalife business "event to event," lasting success was the certain outcome.

156.    The Rodgers rarely missed another event for the duration of their four-year involvement with Herbalife; attending more than fifty events, sometimes at a rate of two a week, and doing everything President's Team members told them was necessary to achieve financial independence. Even though they were losing money every month, Jeff and Patti continued to attend monthly Herbalife events where they were exhorted to double down their efforts with the guarantee that the pot of gold at the end of the rainbow was just within reach.

157.    The Rodgers were so convinced that their formulaic participation in the Herbalife Circle of Success would eventually pay dividends that they moved to Miami from Jacksonville at the urging of Defendant Ron Rosenau.

158.    In their pursuit of the Herbalife business, they cashed out a retirement account and a settlement annuity, sold jewelry, moved into shared housing, and borrowed money from family members on more than one occasion.

159.    The Rodgers followed the instructions of company "mentors" and "planned their lives around the Herbalife calendar." As a result, Patti was attending an Herbalife event on the day her mother died. Trips to visit grandchildren were postponed while the couple's dwindling resources were used to attend expensive Herbalife events.

160.    The constant promotion of the next big event, each promising to be the key to success; and their constant attendance of those highly charged emotional events, kept their false hopes at a steady boil.

161.    The Rodgers attended almost every event from 2011 – 2015. During these events, they heard each of Defendants Wick, Addy, Carrillo, Jones, and De la Concepcion make the same misrepresentations as Peterson, Wick, Gioiosa, and Rosenau before them: remain dedicated to the Circle of Success, and you will become rich like us.

162.    Yet religious adherence to the Circle of Success did not lead to financial success for Jeff and Patti Rodgers. They didn't quit Herbalife; after years of fruitless toil, they simply ran out of money to lose.

163.    Not accounting for their time, the Rodgers lost more than $100,000 pursuing Herbalife's fraudulent and illusory business opportunity. At least $20,000 of those loses stem directly from their participation in the Circle of Success event cycle.

### Michael and Jennifer LaVigne

164.    Mike and Jen LaVigne started using Herbalife products to lose some weight and improve their health. Jen works in emergency services. Mike is a veteran of the U.S. Army and is the IT director for Coshcoctan County, Ohio.

165.    At the January 17, 2015 "January Kickoff" in Columbus, they paid $50 each to hear Defendant Christopher Reese. Advertising for the event, distributed over the OhioSTS.com website, as fliers and posters in Nutrition Clubs, and across all forms of social media, tied event attendance to a half-million-dollar yearly income.



"Within 60 days we had attended 4 separate Herbalife Training events. Looking back this was THE KEY, that gave us a huge vision of what was possible through Herbalife, which inspired us to make the decision to NEVER GIVE UP… [T]he couple's income averages over $45K per month. They live in a beautiful custom home with a brand new 2015 Corvette Stingray in the driveway."

166.    At the event, Mike and Jen were told that they could build a large income around their own already busy schedules. To succeed they need only "attend every event," and "NEVER GIVE UP."

167.    In a January 30, 2015, YouTube video posted by Defendant Amber Wick, her husband Jason Wick promotes his appearance at the following month's Ohio STS. "And then we started plugging in to the event. And the key was, we started bringing people with us to events, and that's what we've done for twelve-and-a-half years guys."[6]

---

[6] *Available at* https://youtu.be/QM1VzMEGfwQ.

168.    At the event, Defendant Wick delivered the message that the Wick's huge organization was built around working "event to event."

169.    For the next year and a half, Mike and Jen endeavored to attend every event; attending every local, regional and national event. Below is a list of the events the LaVignes attended over the course of their time pursuing the Herbalife business opportunity.

| Event | Date | Location | Speaker |
|---|---|---|---|
| January Kickoff | January 17, 2015 | Columbus, Ohio | Christopher Reese |
| STS | February 21, 2015 | Columbus, Ohio | Jason Wick |
| STS | March 21, 2015 | Columbus, Ohio | Larry Hulsey |
| LDW | April 10 – 12, 2015 | Lansing, Michigan | Garrain Jones<br>Laura Curtis |
| STS | May 16, 2015 | Columbus, Ohio | Donte & Trina Andry |
| STS | June 20, 2015 | Columbus, Ohio | Local leadership / BTC |
| Extravaganza | July 10 – 12, 2015 | St. Louis, Missouri | Various |
| STS | August 15, 2015 | Columbus, Ohio | Kelli Davis |
| STS | September 12, 2015 | Columbus, Ohio | Dan Hayes |
| LDW | October 23 – 25, 2015 | Detroit, Michigan | Graeme Edwards |
| STS | November 14, 2015 | Columbus, Ohio | Lisa Arnold |
| STS | December 12, 2015 | Columbus, Ohio | Local leadership / BTC |
| January Kickoff | January 15 – 17, 2016 | Detroit, Michigan | Nick Matika |
| STS | February 20, 2016 | Columbus, Ohio | Brook Kirwin |
| STS | March 19, 2016 | Columbus, Ohio | Carlos Prieskorn |
| LDW | April 15 – 17, 2016 | Detroit, Michigan | Enrique Carrillo |
| STS | May 13, 2016 | Columbus, Ohio | Keyon Owens |
| STS | June 25, 2016 | Columbus, Ohio | Ryan Baker |
| Extravaganza | July 22 – 24, 2016 | Atlanta, Georgia | Various |

170.    At every event, Mike and Jen were told that they must attend every event. Business opportunity participants who wanted to be successful were instructed to plan their lives around the Circle of Success event schedule.

171.    Tickets for the next event, and for the regional and national events, were aggressively sold throughout the day at all the local and regional events.

172.   Participants were subjected to what was dubbed "punishment" for missing events. "Punishment" included: pestering, public shaming, not being able to work out of local Nutrition Clubs, and being forced to perform cleaning services for other clubs.

173.   On top of their significant Herbalife losses, the LaVignes lost more than $5000 attending Circle of Success events.

### Cody Pyle

174.   Cody Pyle attended his first Circle of Success event November 15, 2014 in Norman, Oklahoma.

175.   The November 2014 STS in Norman featured guest speaker Samantha Clayton, a former Olympic athlete and employee of Defendant Herbalife. The event also featured dozens of testimonials and distributors were continually reminded that attending events was the key to achieving success.

176.   By November 2016, after two years under continuous pressure to "attend every event," Cody Pyle had attended twenty-six Circle of Success events, as detailed below.

| Event | Date | Location | Speakers |
|---|---|---|---|
| STS | November 15, 2014 | Norman, OK | Samantha Clayton |
| Kickoff | January 24 – 25, 2015 | Dallas | Various |
| STS | February 21, 2015 | Oklahoma City | Hermes Jones-Parra |
| STS | March 21, 2015 | Oklahoma City | Brad Harris |
| LDW | April 10 – 11, 2015 | Dallas | Dennis Dowdell<br>Laura Holloway |
| STS | May 16, 2015 | Oklahoma City | Maurice & Sandra Smith |
| STS | June 20, 2015 | Oklahoma City | Dan Waldron |
| STS | August 15, 2015 | Oklahoma City | John Heiss |
| Success University Summit | September 26 – 27, 2015 | Dallas | |
| LDW | October 10, 2015 | Dallas | Juan Mendoza |
| STS | November 14, 2015 | Oklahoma City | Caley Carroll |
| STS | December 12, 2015 | Oklahoma City | Matt Rushbrook |
| Kickoff | January 16, 2016 | Oklahoma City | Sheriff Taiwo |

| Success University Summit | January 31, 2016 | Las Vegas | Dan Waldron Joseph McClendon III David Bevan |
|---|---|---|---|
| STS | February 20, 2016 | Oklahoma City | JJ Makowski |
| STS | March 26, 2016 | Oklahoma City | Keyon Owens |
| LDW | April 10, 2016 | Dallas | Garrain Jones, Enrique Carrillo Amber Wick |
| STS | May 15, 2016 | Oklahoma City | Geri & Diego Gutierrez |
| Nutrition Club Training | June 4, 2016 | Oklahoma City | Amber Wick, Brad Harris, Kris Bickerstaff, Tim Files |
| STS | June 25, 2016 | Oklahoma City | Nicole Lakin |
| Extravaganza | July 8 – 10, 2016 | Long Beach | Various |
| STS | August 13, 2016 | Oklahoma City | Khalil Blakey |
| STS | September 10, 2016 | Oklahoma City | Larry & Heather Hulsey |
| LDW | October 22 – 23, 2016 | Dallas | Alexis Pelfrey, Zac Tartol |
| STS | November 12, 2016 | Oklahoma City | Celeste Richmond |
| Nutrition Club Training | November 19, 2016 | Dallas | Amber Wick, Brad Harris, Kris Bickerstaff, Tim Files |

177.    Defendant Dan Waldron, like many other Defendants, added his own expensive regional and national events to the Circle of Success. Events dubbed "Herbalife Success University," and "Nutrition Club Training," offered a more aggressive version of the standard pitch. Profits from these large-scale events flowed directly into the coffers of Defendant Waldron.

178.    Diligent attendance at every event was not delivering any success for Cody Pyle. And at each of these events, speaker after speaker touted the necessity of qualifying VIP for events if one truly wanted to have life changing success with the Herbalife business opportunity. Attendees were told that there would be a direct correlation between VIP qualifications and the size of their Herbalife paychecks.

179.    Over Cody's two-year involvement with Herbalife he averaged 2451 in personally purchased volume points per month. But for three consecutive months beginning February 2016,

Mr. Pyle purchased almost triple that amount of volume in a conscious effort to "qualify for everything" at events as per instructed.



| Month | Personally Purchased Volume |
|---|---|
| 2016/12 | 418.75 |
| 2016/11 | 1,791.90 |
| 2016/10 | 3,107.11 |
| 2016/09 | 1,787.82 |
| 2016/08 | 2,367.05 |
| 2016/07 | 1,930.27 |
| 2016/06 | 3,879.52 |
| 2016/05 | 3,787.24 |
| 2016/04 | 6,021.71 |
| 2016/03 | 6,552.56 |
| 2016/02 | 6,456.76 |
| 2016/01 | 2,828.17 |
| 2015/12 | 878.40 |
| 2015/11 | 1,422.46 |
| 2015/10 | 2,728.55 |
| 2015/09 | 1,548.92 |
| 2015/08 | 2,924.62 |
| 2015/07 | 1,296.85 |
| 2015/06 | 1,230.75 |
| 2015/05 | 615.77 |
| 2015/04 | 1,228.05 |
| 2015/03 | 1,478.95 |
| 2015/02 | 1,078 |
| 2015/01 | 1,465.57 |
| 2014/12 | 592.05 |

180.    But VIP qualification, like event attendance, did *nothing* to help Cody succeed at the Herbalife business opportunity.

181.    Cody lost approximately $30,000 pursuing Herbalife's fraudulent and illusory business opportunity. $11,600 of those losses can be directly attributed to his travel to, and attendance of, Circle of Success events.

## Izaar and Felix Valdez

182.    Izaar Valdez and her father, Felix Valdez, have spent almost a decade trying to achieve the success promised by Herbalife's President's Team members from Circle of Success stages across the country.

183. From the stage of a 2008 Herbalife STS in Miami, Izaar and Felix were told that they would be making $500,000 per year in Herbalife, that they would be able to purchase homes using all cash, and that their family's future would be secure for generations.

184. Izaar and Felix are U.S. citizens who immigrated to Miami from the Dominican Republic. Felix lives in Miami and has been operating his own construction company here since 1993. Tens of thousands of hard-earned dollars were drained from Mr. Valdez's real business, and sunk into Herbalife's illusory business.

185. Izaar Valdez is an administrative assistant who has worked the Herbalife business opportunity in both Miami, Florida and Elizabeth, New Jersey.

186. Izaar and Felix were in the downline organization of Defendant President's Team members Guillermo and Claudia Rasch. Like many others in Herbalife's Latino market, Felix and Izaar were instructed by their upline to participate in continuous "training systems." The systems associated with Defendant Guillermo Rasch had the Valdezes attending tri-weekly events costing up to $200 per month.

187. At the tri-weekly events and the monthly Circle of Success events, distributors were continually reminded that event attendance was crucial to achieving success in Herbalife.

188. Izaar and Felix attended dozens of Circle of Success events. They paid cash to President's Team members for those events, including for some of Defendant Herbalife's corporate sponsored events.

189. Twelve thousand people, including Izaar, attended Herbalife's Extravaganza Latina in Atlantic City, New Jersey between October 16 – 19, 2014. Defendants collectively produce Spanish language Circle of Success events that run in parallel to English events in cities with dense populations of new immigrants.

190.     Izaar lost more than $3,500 attending Circle of Success events in 2014. That same year, while working her business from dawn to dusk, she spent more than $10,000 purchasing Herbalife products in order to "qualify for events" and move up in the Herbalife marketing plan.

191.     Izaar's husband left her and her three children in desperation over her continuous Herbalife losses. When she sought advice from her "mentors" about the collapse of her family, Defendants Guillermo and Claudia Rasch told her to stay the course, to continue to make the necessary purchases, and to attend all the necessary events – this was no time to give up.

192.     Circle of Success organizers categorize skeptical family members as stumbling blocks to be avoided and forgotten on the path to infinite success. This January 18, 2015 Facebook event post by Omar Lorenzo, one of Defendant Guillermo Rasch's ranking agents, sadly illustrates this pervasive message.





**Jennifer Ribalta**

193.    Jen was recruited into Herbalife's "opportunity" directly by Defendant Tommy Gioiosa. She was convinced by Defendant Gioiosa to attend her first Circle of Success event in February of 2011.

194.    At that event, like every other Circle of Success event, presenters preached about the importance of attending Circle of Success events in order to guarantee success as an Herbalife distributor.

195.    Jen was drafted into the event "Production Team" by Defendant Sandy Gioiosa. Production Team duties require an average of eight hours unpaid labor per event and often mean an extra night away from home. But working long hours on the event does not free you from your obligation to pay for the event. Jen usually paid for Circle of Success events by giving cash directly to Defendant Tommy Gioiosa.

196.    In her first year, Jen attended events in Daytona Beach, Jacksonville, Orlando, and Las Vegas. She was also expected to attend smaller weekly recruiting meetings held at Defendant Gioiosa's Nutrition Club, where she was paying $100 per month for the right to work behind the counter uncompensated.

197.    On September 26, 2012 Defendant Sandy Gioiosa hosted a call to promote the upcoming Extravaganza to members of her, mostly Florida-based, downline. Defendants Amber Wick and Dani Edwards were presented as "special guests" and were introduced as two of the company's fastest growing, top earning, distributors.

198.    On that call, Defendant Dani Edwards states that Extravaganza attendance "completely transformed" her life, allowing her to build up what she called "legacy" wealth in just five years. She says she knows many people are "putting together every single penny that they have," to be able to attend the event. She claims it will be worth overcoming any "excuse" not to

attend, including; insufficient funds, an unsupportive spouse, a job, or the need to take care of children. Whatever a person's financial or emotional position, Defendant Dani Edwards claims that, "it is vital that you do whatever you have to do to get to this event."

199.     Defendant Amber Wick claims on that call that attending Extravaganza, "absolutely changed the course of our entire lives," and insists that people "find a way" to attend even if it means putting the year's most expensive event on a credit card like she and Defendant Jason Wick had done at the beginning of their Herbalife careers – a time during which they were already so deeply indebted that the thought of putting another $1000 on a credit card made Wick "want to throw up."

200.     Both Wick and Edwards describe finding a way to attend Extravaganza at a time when they certainly could not afford to attend, and the massive life changing success that resulted from that reckless decision. If you want the health, the wealth, the lifestyle, even the ability to help those in need, then you must attend the Circle of Success events. "You can't help the poor if you are one of them," say both Edwards and Wick during the hour-long pitch.

201.     Jen attended the 2012 Extravaganza in Long Beach the following month as instructed, and she attended the 2013 Extravaganza in Las Vegas. In between, she attended local and regional events across Florida. In fact, Jen Ribalta attended a Circle of Success event every month for 38 consecutive months, "volunteering" to work Production Team at some 30 of those events.

202.     Over the course of her involvement with Herbalife, Jen spent more than $15,000 attending Circle of Success events.

## DEFENDANTS

203.    **Defendant Herbalife, Ltd**. is a Cayman Island corporation with its principal place of business in Los Angeles, California.  Herbalife, Ltd. is a publicly held corporation traded on the New York Stock Exchange as "HLF."

204.    **Defendant Herbalife International, Inc**. is a Nevada corporation with its principal place of business in Los Angeles, California.   At all relevant times, Defendant Herbalife International, Inc. was an indirect, wholly-owned subsidiary of Herbalife, Ltd.

205.    **Defendant Herbalife International of America, Inc**. is a Nevada corporation with its principal place of business in Los Angeles, California.   At all relevant times, Defendant Herbalife International of America, Inc., was a wholly-owned subsidiary of Herbalife International, Inc. and an indirect, wholly-owned subsidiary of Herbalife, Ltd.

206.    **Defendant Susan Peterson** is a resident of Houston, Texas, and has long been one of Herbalife's top earning distributors. Peterson controls a downline organization which includes thousands of Class members, and several of this action's Class representatives. Defendant Peterson has stacked members of her family into her downline. Her son John Peterson, a resident of Miami Beach, is an agent and proxy of his mother's organization.

207.    Defendant Susan Peterson is a featured guest speaker at Circle of Success events across the country, including many appearances in this District at events attended by Plaintiffs in the past four years. At these appearances, Peterson repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

208.    Examples of Defendant Peterson's direct involvement in the scheme are attached hereto as **Exhibit 19**.

209.    Through her membership and participation in secretive Strategy and Planning Committees, Defendant Peterson exerts control over the Circle of Success enterprise.

210.    **Defendant Leslie Stanford** is a resident of Englewood, Colorado, and is a former member of Defendant Herbalife's Board of Directors. Stanford is one of Herbalife's top earning distributors and has reached the highest level of the company's marketing and compensation plan.

211.    Defendant Leslie Stanford is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances, Stanford repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

212.    Defendant Stanford organizes and controls Circle of Success events held in the Rocky Mountain region. Examples of Defendant Stanford's direct involvement in the scheme are attached hereto as **Exhibit 20**.

213.    Through her membership and participation in Defendant Herbalife's secretive Strategy and Planning Committees, Defendant Stanford exerts control over the Circle of Success enterprise.

214.    **Defendant John Tartol** is a resident of Malibu, California, and is a current member of Defendant Herbalife's Board of Directors. Defendant Tartol is one of Herbalife's top earning distributors and has stacked at least twelve members of his family into high ranking positions in his downline organization. All of these members, who dub themselves the "Tartol Dynasty," are agents and proxies of Defendant John Tartol's organization.

215.    Defendant John Tartol is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances Tartol repeatedly

claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

216.    Defendant Tartol organizes and controls the Circle of Success events held in the New England region. Examples of Defendant Tartol's direct involvement in the scheme are attached hereto as **Exhibit 21**.

217.    Through his membership and participation in Defendant Herbalife's secretive Strategy and Planning Committees, and through his position on the Board of Directors, Defendant Tartol exerts control over the Circle of Success enterprise.

218.    **Defendant Dan Waldron** is a resident of Plano, Texas, and is one of Defendant Herbalife's top earning distributors. Waldron is upline of class representative Cody Pyle, and of thousands of other Class members across the country. Defendant Waldron has stacked members of his family into his Herbalife downline. Those family members, such as President's Team member Keegan Cervin, are agents and proxies of Defendant Waldron's organization.

219.    Defendant Dan Waldron is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances, Waldron repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

220.    Defendant Waldron organizes and controls the Circle of Success events held in the Texas/Oklahoma region and has added his own expensive events to the schedule for members of his nationwide organization. Examples of Defendant Waldron's direct involvement in the scheme are attached hereto as **Exhibit 22**.

221.    Through his membership and participation in Defendant Herbalife's secretive Strategy and Planning Committees, Defendant Waldron exerts control over the Circle of Success enterprise.

222.    Top distributors credit Waldron with loosening Defendant Herbalife's exclusive control over the event system and for the ultimate formation of the distributor cartel-controlled Circle of Success system as it exists today.

223.    **Defendant Fernando "Nani" Rancel** maintains a residence in Stamford, Connecticut, and is one of Defendant Herbalife's top earning distributors.

224.    Though most of his appearances are outside the country, Defendant Rancel is a featured guest speaker at Circle of Success events within the United States, most frequently in this District. At these appearances Rancel repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. An example of Defendant Rancel's direct involvement in the scheme is attached hereto as **Exhibit 23**.

225.    Through his membership and participation in secretive Strategy and Planning Committees, Defendant Rancel exerts control over the Circle of Success enterprise.

226.    Upon information and belief, Defendant Fernando Rancel was a primary participant in a scheme to use stacked Herbalife accounts to move massive amounts of money out of Venezuela's collapsing currency. Some proceeds of that scheme have been invested into Florida real estate.

227.    **Defendant Paulina Riveros** is a resident of Miami, Florida, and is one of Defendant Herbalife's top earning distributors. Upon information and belief, Defendant Riveros is associated with large amounts of money flowing out of Venezuela through stacked Herbalife accounts.

228.    Defendant Riveros is a featured guest speaker at Spanish language Circle of Success events across the country, including appearances in this District. At these appearances Riveros repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendant Riveros' direct involvement in the scheme are attached hereto as **Exhibit 24**.

229.    Through her membership and participation in secretive Strategy and Planning Committees, Defendant Paulina Riveros exerts control over the Circle of Success enterprise.

230.    **Defendants Gabriel and Emma Sandoval** are residents of Nipomo, California, and are two of Defendant Herbalife's top earning distributors. The Sandovals have stacked members of their family into their Herbalife downline. Those family members, like President's Team member Karla Sandoval, are agents and proxies of Gabriel and Emma Sandoval's organization.

231.    Defendant Sandovals are featured guest speakers at both English and Spanish language Circle of Success events across the country, including many appearances in this District. At these appearances, the Sandovals repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

232.    Defendants Gabriel and Emma Sandoval organize and control the Circle of Success events held in the central California area. Examples of the Defendant Gabriel and Emma Sandoval's direct involvement in the scheme are attached hereto as **Exhibit 25**.

233.    Through their membership and participation in secretive Strategy and Planning Committees, the Sandovals exert control over the Circle of Success enterprise.

234.    **Defendants Michael and Debi Katz** are residents of Leeds, Utah, and are two of Herbalife's top earning distributors.

235.     Defendants Michael and Debi Katz are featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances, Defendants repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

236.     Defendants Michael and Debi Katz organize and control the Circle of Success events held in Southwest region. Examples of Defendants Michael and Debi Katz's direct involvement in the scheme are attached hereto as **Exhibit 26**.

237.     Through their membership and participation in secretive Strategy and Planning Committees, Defendants Michael and Debi Katz exert control over the Circle of Success enterprise.

238.     **Defendant Dennis Dowdell** is a resident of Aliso Viejo, California, and is one of Defendant Herbalife's original, and highest earning, distributors. Dowdell played a key role in convincing other top distributors to focus their efforts on building their organizations around the Circle of Success event system.

239.     Defendant Dowdell is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances Dowdell repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

240.     Defendant Dennis Dowdell organizes and controls the Circle of Success events held in the Southern California area. Examples of Defendant Dowdell's direct involvement in the scheme are attached hereto as **Exhibit 27**.

241.     Through his membership and participation in secretive Strategy and Planning Committees, Defendant Dowdell exerts control over the Circle of Success enterprise.

242.    **Defendant Cody Morrow** is a resident of Grass Valley, California, and is one of Defendant Herbalife's original, and highest earning distributors. Defendant Cody Morrow has stacked members of his family into his Herbalife downline. Those family members, like President's Team member Nick Morrow, are agents and proxies of Defendant Cody Morrow's organization.

243.    Defendant Cody Morrow is a featured guest speaker at Circle of Success events across the country, including some appearances in this District. At these appearances, Morrow repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

244.    Defendant Morrow organizes and controls the Circle of Success events held in the Southern California area.

245.    Through his membership and participation in secretive Strategy and Planning Committees, Defendant Morrow exerts control over the Circle of Success enterprise.

246.    **Defendant Mark Matika** is a resident of Drexel Hill, Pennsylvania, and is one of Defendant Herbalife's top earning distributors. Defendant Matika has stacked members of his family into his Herbalife downline. Those family members, like President's Team member Nick Matika, are agents and proxies of Defendant Mark Matika's organization.

247.    Defendant Matika is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances Matika repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

248.    Defendant Matika organizes and controls the Circle of Success events held in Pennsylvania, Delaware, and parts of New Jersey. Examples of Defendant Matika's direct involvement in the scheme are attached hereto as **Exhibit 28**.

249.    Through his membership and participation in secretive Strategy and Planning Committees, Defendant Matika exerts control over the Circle of Success enterprise.

250.    **Defendant Enrique Carrillo** is a resident of Houston, Texas, but built much of his Herbalife organization working out of Las Cruces, New Mexico. Carrillo is an in-demand Circle of Success speaker, having featured at an event nearly every month during the relevant period. Defendant Carrillo's success story casts him as a college dropout with a record of drunk driving who suddenly made good and became one of Herbalife's all-time highest earning distributors. Carrillo's story is oft repeated by Herbalife distributors at events around the world.

251.    Defendant Carrillo is a featured guest speaker at Circle of Success events across the country, including appearances in this District at events attended by Plaintiffs. At these appearances, Carrillo repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendant Carrillo's direct involvement in the scheme are attached hereto as **Exhibit 29**.

252.    Defendant Carrillo has stacked members of his family into his Herbalife downline. Those family members, like President's Team member Bernadette Carrillo, are agents and proxies of Defendant Enrique Carrillo's organization.

253.    Through his membership and participation in secretive Strategy and Planning Committees, Defendant Carrillo exerts control over the Circle of Success enterprise.

254.    **Defendants Mark and Jill Addy** are residents of Playa Vista, California, and are two of Defendant Herbalife's top earning distributors.

-56-

255.     Defendants Mark and Jill Addy are featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances, they repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

256.     Defendants Mark and Jill Addy help to organize and control the Circle of Success events held in the Southern California region.

257.     Through their membership and participation in secretive Strategy and Planning Committees, Defendants Mark and Jill Addy exert control over the Circle of Success enterprise.

258.     **Defendant Garrain Jones** is a resident of Studio City, California, and is one of Defendant Herbalife's top earning distributors. Defendant Jones claims that over a few short years, the Herbalife business opportunity took him from homelessness to incredible wealth.

259.     Defendant Garrain Jones is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances Jones repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

260.     Defendant Jones helps organize and control the Circle of Success events held in the Southern California area. Examples of Defendant Jones' direct involvement in the scheme are attached hereto as **Exhibit 30**.

261.     Through his membership and participation in secretive Strategy and Planning Committees, Defendant Jones exerts control over the Circle of Success enterprise.

262.     **Defendants Jorge and Disney de la Concepcion** are residents of Miami, Florida, and are two of Defendant Herbalife's top earning distributors – who ascended to the highest rungs of Herbalife's compensation plan faster than any other distributors in the company's history. The

couple claims to have reached Herbalife's top pay rungs so rapidly by using social media to attract people into the Circle of Success.

263.    Defendants Jorge and Disney are part of a large stacked downline that contains many of their friends and family members. Those family members, like Jorge de la Concepcion Sr., are agents and proxies of Defendant Jorge and Disney's organization.

264.    Defendants Jorge and Disney are frequently featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances, Jorge and Disney repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of the De la Concepcion's direct involvement in the scheme are attached hereto as **Exhibit 31**.

265.    Defendants Jorge and Disney organize and control the Circle of Success events held in Miami. Through their membership and participation in secretive Strategy and Planning Committees, Defendants Jorge and Disney de la Concepcion exert control over the Circle of Success enterprise.

266.    **Defendants Alcides and Miriam Mejia** are residents of Miami, Florida, and are two of Defendant Herbalife's top earning distributors. Alcides and Miriam have stacked members of their family into their Herbalife downline. Those family members, like President's Team member Andres Mejia, are agents and proxies of Alcides and Miriam Mejia's organization.

267.    Defendants Alcides and Miriam Mejia are featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances Defendants repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

268.     The Mejias organize and control the Circle of Success events held in South Florida. Examples of Defendants' direct involvement in the scheme are attached hereto as **Exhibit 32**.

269.      Through their membership and participation in secretive Strategy and Planning Committees, the Mejias exert control over the Circle of Success enterprise.

270.     **Defendants Carol and Ron Rosenau** are residents of Miami, Florida, and are two of Defendant Herbalife's top earning distributors.

271.     The Rosenaus are frequently featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances Carol and Ron Rosenau repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendants Carol and Ron Rosenau's direct involvement in the scheme are attached hereto as **Exhibit 33**.

272.     Through their membership and participation in secretive Strategy and Planning Committees, Defendants Carol and Ron Rosenau exert control over the Circle of Success enterprise.

273.     **Defendants Amber and Jason Wick** are residents of Destin, Florida, and are two of Defendant Herbalife's highest paid, fastest growing distributors.

274.     Defendants Amber and Jason Wick are featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances, the Wicks repeatedly claim that attending Circle of Success events is the key to having success in Herbalife's illusory business opportunity. All Class representatives, and most Class members, have attended a Circle of Success event featuring Amber Wick promoting the vital importance of event attendance for aspiring business opportunity seekers.

275.    Defendants Amber and Jason Wick organize and control Circle of Success events held in the Minnesota area.

276.    Through their membership and participation in secretive Strategy and Planning Committees, Defendants Amber and Jason Wick exert control over the Circle of Success enterprise.

277.    **Defendants Graeme and Danielle Edwards** are residents of Miami, Florida, and are two of Defendant Herbalife's top earning distributors.

278.    Defendants Graeme and Danielle Edwards are featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances, the Edwards repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendants Graeme and Danielle Edward's direct involvement in the scheme are attached hereto as **Exhibit 34**.

279.    Through their membership and participation in secretive Strategy and Planning Committees, Defendants Graeme and Danielle Edwards exert control over the Circle of Success enterprise.

280.    **Defendants Sam and Amy Hendricks** are residents of Mankato, Minnesota, and are two of Defendant Herbalife's top earning distributors.

281.    Defendants Sam and Amy Hendricks are frequently featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances, Sam and Amy Hendricks repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

282.    Defendants Sam and Amy Hendricks organize and control the Circle of Success events held in the Minnesota area. Examples of Defendants Sam and Amy Hendricks' direct involvement in the scheme are attached hereto as **Exhibit 35**.

283.    Through their membership and participation in secretive Strategy and Planning Committees, Defendants Sam and Amy Hendricks exert control over the Circle of Success enterprise.

284.    **Defendants Tommy and Sandy Gioiosa** are residents of Ormond Beach, Florida, and are two of Defendant Herbalife's top earning distributors. Defendant Tommy Gioiosa recruited Plaintiff Jen Ribalta into the Herbalife business and played a key role in recruiting Plaintiff Jeff Rodgers.

285.    Defendants Tommy and Sandy Gioiosa are featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances, the Gioiosa Defendants repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

286.    Defendants Tommy and Sandy Gioiosa organize and control the Circle of Success events held in the Central Florida area. Examples of Defendants Tommy and Sandy Gioiosa's direct involvement in the scheme are attached hereto as **Exhibit 36**.

287.    Through their membership and participation in secretive Strategy and Planning Committees, Defendants Tommy and Sandy Gioiosa exert control over the Circle of Success enterprise.

288.    **Defendant Jennifer Micheli** is a resident of Orlando, Florida, and is one of Defendant Herbalife's top earning distributors. Defendant Micheli has stacked various members

of her family into her Herbalife downline. Those family members, like sons Dominic and Matt Micheli, are agents and proxies of Defendant Jennifer Micheli's organization.

289.    Defendant Jennifer Micheli is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances Micheli repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendant Micheli's direct involvement in the scheme are attached hereto as **Exhibit 37**.

290.    Defendant Jennifer Micheli organizes and controls the Circle of Success events held in Daytona Beach. Through her membership and participation in secretive Strategy and Planning Committees, Defendant Micheli exerts control over the Circle of Success enterprise.

291.    **Defendant's Guillermo and Claudia Rasch** are residents of Miami, Florida, and are two of Defendant Herbalife's top earning distributors. Defendants Guillermo and Claudia Rasch recruited and were upline of Plaintiffs Izaar and Felix Valdez.

292.    Defendant Guillermo Rasch is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances Rasch repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendant Guillermo and Claudia Rasch's direct involvement in the scheme are attached hereto as **Exhibit 38**.

293.    Defendants Guillermo and Claudia Rasch help organize and control the Spanish language Circle of Success events held in the South Florida area.

294.    Through their membership and participation in secretive Strategy and Planning Committees, Defendants Guillermo and Claudia Rasch exert control over the Circle of Success enterprise.

295.    **Defendant Ryan Baker** is a resident of Zanesville, Ohio, and is one of Defendant Herbalife's top earning distributors. Defendant Ryan Baker is part of a stacked downline that includes multiple members of his family. Those family members, like brother Austin Baker and sister Corrinne Baker, are agents and proxies of Defendant Ryan Baker's organization.

296.    Plaintiffs Mike and Jen LaVigne were part of Defendant Ryan Bakers downline organization.

297.    Defendant Ryan Baker is a featured guest speaker at Circle of Success events across the country. At these appearances Defendant Baker repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendant Baker's direct involvement in the scheme are attached hereto as **Exhibit 39**.

298.    Defendant Ryan Baker organizes and controls the Circle of Success events held in the Central Ohio area. Through his membership and participation in secretive Strategy and Planning Committees, Defendant Baker exerts control over the Circle of Success enterprise.

299.    **Defendant Kris Bickerstaff** is a resident of Oklahoma City, Oklahoma, and is one of Defendant Herbalife's top earning distributors. Defendant Bickerstaff is part of the large organization run by Defendant Dan Waldron. Plaintiff Cody Pyle was recruited into Bickerstaff's Herbalife downline based on claims made by Bickerstaff.

300.    Defendant Kris Bickerstaff is a featured guest speaker at Circle of Success events across the country, including several appearances in this District. At these appearances Bickerstaff repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

301.    Defendant Bickerstaff organizes and controls the Circle of Success events held in Oklahoma. Examples of Defendant Bickerstaff's direct involvement in the scheme are attached hereto as **Exhibit 40**.

302.    Through his membership and participation in secretive Strategy and Planning Committees, Defendant Bickerstaff exerts control over the Circle of Success enterprise.

303.    **Defendant Bradley Harris** is a resident of Kansas City, Kansas, and is one of Defendant Herbalife's top earning distributors.

304.    Defendant Brad Harris is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances Harris repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

305.    Defendant Brad Harris organizes and controls the Circle of Success events held in several different states. Examples of Defendant Harris' direct involvement in the scheme are attached hereto as **Exhibit 9**.

306.    Through his membership and participation in secretive Strategy and Planning Committees, Defendant Harris exerts control over the Circle of Success enterprise.

307.    **Defendant Paymi Romero** is a resident of Elmsford, New York, and is one of Defendant Herbalife's top earning distributors. Defendant Romero, like the De la Concepcion Defendants, claims that she reached Herbalife's top pay rungs so rapidly by using social media to attract people into the Circle of Success.

308.    Defendant Romero is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances Paymi Romero

repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

309.    Defendant Romero helps organize and control the Circle of Success events held in the New York / New Jersey area. Examples of Defendant Romero's direct involvement in the scheme are attached hereto as **Exhibit 41**.

310.    Through her membership and participation in secretive Strategy and Planning Committees, Defendant Romero exerts control over the Circle of Success enterprise.

311.    **Defendant Arquimedes Valencia** is a resident of Staten Island, New York, and is one of Defendant Herbalife's top earning distributors. Defendant Valencia is part of a large stacked downline which includes many members of his family. Those family members, like President's Team member Roger Valencia, are agents and proxies of the larger Valencia organization.

312.    Defendant Arquimedes Valencia is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances, Valencia repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendant Valencia's direct involvement in the scheme are attached hereto as **Exhibit 42**.

313.    Through his membership and participation in secretive Strategy and Planning Committees, Defendant Valencia exerts control over the Circle of Success enterprise.

314.    **Defendant Lori Baker** is a resident of Spring Hill, Florida, and is one of Defendant Herbalife's top earning distributors.

315.    Defendant Baker is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances, Baker repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting

success in Herbalife's business opportunity. Examples of Defendant Lori Baker's direct involvement in the scheme are attached hereto as **Exhibit 43**.

316.   Through her membership and participation in secretive Strategy and Planning Committees, Defendant Baker exerts control over the Circle of Success enterprise.

317.   **Defendant Manuel Costa** is a resident of Miami, Florida, and is one of Defendant Herbalife's top earning distributors.

318.   Defendant Costa is a featured guest speaker at Circle of Success events across the country, including many appearances in this District. At these appearances, Costa repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

319.   Defendant Costa helps organize and control the Spanish language Circle of Success events held in various areas. Examples of Defendant Costa's direct involvement in the scheme are attached hereto as **Exhibit 44**.

320.   Through his membership and participation in secretive Strategy and Planning Committees, Defendant Costa exerts control over the Circle of Success enterprise.

321.   **Defendant Christopher Reese** is a resident of Rocklin, California, and is one of Defendant Herbalife's top earning distributors.

322.   Defendant Reese is a featured guest speaker at Circle of Success events across the country, including some appearances in this District. At these appearances, Reese repeatedly claims that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity.

323.    Defendant Reese organizes and controls the Circle of Success events held in Sacramento, California. An example of Defendant Reese's direct involvement in the scheme is attached hereto as **Exhibit 45**.

324.    Through his membership and participation in secretive Strategy and Planning Committees, Defendant Reese exerts control over the Circle of Success enterprise.

325.    **Defendants Mark and Jenny Davis** are residents of Jacksonville, Florida and are two of Defendant Herbalife's top earning distributors.

326.    Defendants Mark and Jenny Davis are featured guest speakers at Circle of Success events across the country, including many appearances in this District. At these appearances, Defendants Mark and Jenny Davis repeatedly claim that attending all Circle of Success events is necessary and that it will lead directly to lasting success in Herbalife's business opportunity. Examples of Defendants Mark and Jenny Davis' direct involvement in the scheme are attached hereto as **Exhibit 46**.

327.    Through their membership and participation in secretive Strategy and Planning Committees, Defendants Mark and Jenny Davis exert control over the Circle of Success enterprise.

328.    All conditions precedent to this action have been met, waived or are otherwise excused.

## **CLASS ALLEGATIONS**

329.    This action is brought by Plaintiffs as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

330.    Plaintiffs seek relief under 18 U.S.C. §1962, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and for unjust enrichment and negligent misrepresentation on behalf of themselves and a nationwide class (the "Class") defined as:

> All persons who purchased tickets to and attended at least two Circle of Success events from 2009 until the present, in pursuit of Herbalife's business opportunity.

331. Excluded from the Class are the Defendants, past or present members of Herbalife's President's Team, their employees, proxies, and family members.

332. The members of the Class are so numerous that joinder of the Class members in a single action is impracticable. The members of the Class number in the hundreds of thousands and can be readily identified through Defendants' records.

333. There are numerous, substantial questions of law and fact common to all Class members relating to Defendants' Circle of Success scheme, which was directed and implemented in the same or similar manner toward the members of the Class. The common questions include but are not limited to:

1) Whether Herbalife committed wire fraud by implementing, facilitating, and participating in the Circle of Success enterprise using the common methods described herein;

2) Whether wire fraud committed by Herbalife constitutes a pattern of racketeering activity;

3) The extent to which Herbalife exerted mutual control over the alleged racketeering enterprise;

4) The extent to which Herbalife's revenues, and Individual Defendants' income, are reliant on the activities of the racketeering enterprise;

5) Whether Defendants engaged in a conspiracy to commit wire fraud through the Circle of Success enterprise using the common methods described herein;

6) Whether Defendants' conduct constitutes an unlawful, unfair and fraudulent business practice under Florida law;

7) Whether Defendants intentionally withheld material information about the likelihood and ability of Plaintiffs' obtaining the promised results and monetary returns from pursuing the Herbalife business opportunity;

8) Whether Defendants failed to disclose that President's Team members built their downlines by using now banned methods;

9) Whether Defendants failed to disclose the high cost of attracting new recruits to the Herbalife business opportunity;

10) The extent to which Defendants intentionally misrepresented that the Herbalife business opportunity could be successfully pursued at little cost;

11) Whether a substantial portion of the income claimed by President's Team members is derived from laundering the proceeds of other criminal operations through the scheme;

12) Whether Distributor Defendants stacked their downlines with empty proxies to facilitate their top-down manipulation of the compensation scheme;

13) Whether Defendants failed to disclose that Distributor Defendants stacked their downlines with empty proxies to facilitate their top-down manipulation of the compensation scheme;

14) Whether Defendants fraudulently represented that qualifying for, and attending, events was the key to success in the Herbalife business opportunity;

15) Whether Defendants repeatedly misrepresented that the only way to fail at Herbalife is to quit;

16) Whether Defendants used the Circle of Success to misrepresent that the children and family members of the President's Team had achieved success through the Circle of Success;

17) Whether Defendants knowingly presented financial success testimonials from people who were not having financial success;

18) Whether Defendants' disclaimers were legally insufficient given the net impression created by Defendants' activities, and the explicit, intentional disavowal by Defendants and/or proxies of the substance of those disclaimers;

19) Whether Defendants' Circle of Success events were inherently fraudulent and/or exploitative;

20) Whether Defendants' coordinated sales and marketing tactics as they relate to Circle of Success events were inherently fraudulent and/or exploitative;

21) Whether Defendants took affirmative actions to fraudulently conceal the harm from the Class;

22) Whether Plaintiffs and Class members conferred a benefit on the Herbalife Defendants through their Circle of Success purchases, participation, and unpaid labor relating to the Circle of Success events;

23) Whether the benefits conferred by the Plaintiffs and Class members on the Herbalife Defendants were made at Plaintiffs' and Class members' expense, such that Herbalife Defendants' retention of the benefits is unjust;

24) Whether Herbalife Defendants misrepresented material facts by presenting false information and omitting material information concerning the Circle of Success event cycle to the Plaintiffs, including but not limited to misrepresenting that

attendance at all Circle of Success events would guarantee success, omitting the material fact that Plaintiffs could not succeed simply by doing what the Defendants told Plaintiffs, and omitting the material fact that Defendants achieved "success" by means other than those represented to the Plaintiffs;

25) Whether Herbalife Defendants knew or should have known that these representations were false;

26) Whether Herbalife Defendants intended to induce Plaintiffs to act on the misrepresentations, including by attending Circle of Success events;

27) Whether Plaintiffs relied upon Herbalife Defendants' misrepresentations by expending substantial money, time, and effort to attend Circle of Success events;

28) Whether Herbalife Defendants' misrepresentations caused injury to the Plaintiffs;

29) Whether Plaintiffs' reliance on Herbalife Defendants' misrepresentations was reasonable;

30) Whether Plaintiffs and Class members are entitled to damages, which damages are ascertainable by common proof and methods of proof;

31) The proper measure of damages for Defendants' violations of law.

334.    These and other questions of law and fact are common to the Class, and predominate over any questions affecting only individual class members. These questions are susceptible to common proof and methods of proof because Defendants' pattern of activity with respect to the centrally orchestrated Circle of Success scheme was consistent among Plaintiffs and Class members. Defendants used standardized, coordinated methods and sales materials to deceive the Plaintiffs. Plaintiffs' allegations, if proven, will necessarily prove harm to the Class. Accordingly, the Class is sufficiently cohesive to warrant adjudication by representation.

335.    Plaintiffs' claims are typical of the Class in that Plaintiffs suffered monetary damages attending Circle of Success events after Defendants represented that such purchases were required to have success with the Herbalife opportunity. Defendants withheld the same essential information detailed above from the Plaintiffs and the Class. Defendants used the same and/or substantially similar, false marketing materials and implemented the same and/or substantially similar manipulative tactics to exploit the Plaintiffs' and the Class members' inferior informational position, impressing upon them the Herbalife fiction that they could achieve success with the Herbalife opportunity by attending the Circle of Success events, when in fact this was demonstrably false.

336.    Plaintiffs will fairly and adequately represent the interests of the Class, in that Plaintiffs' interests are fully aligned with those of the Class. Plaintiffs were all damaged in the same or similar manner, by the same or similar methods, used by Defendants to injure the Class. Plaintiffs have retained counsel who is experienced and skilled in complex class-action litigation.

337.    A class action is superior to other methods for the fair and efficient adjudication of the controversy given that the size of the Class, which is in the hundreds of thousands, makes joinder of all Class members a practical impossibility.

338.    Class action treatment will permit a large number of similarly-situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort, evidence, and expense that a multitude of individual actions would engender. The potential for nearly identical claims makes certification desirable, as many individuals might otherwise be left without a viable means to pursue their claims for injuries arising from the Circle of Success scheme. All, or substantially all, of the issues in this case are amenable to class resolution. Conversely, failure to certify the Class could result in a multitude of

individual lawsuits involving the same core issues, concerning the same or similar types of standardized documentation, with the potential for disparate results in cases that are substantially the same and both factually and legally intertwined. Such separate actions would result in the expenditure of unnecessary time and resources by the courts and by all parties, including Defendants. Furthermore, many of the Plaintiffs and Class members could not afford to bring individual actions against the Defendants. Denial of class treatment in this case would likely deny numerous Class members a remedy and the opportunity to be heard.

339. The class action would be manageable because it centers around the coordinated Circle of Success enterprise, with common key issues, documents, witnesses and experts, all, or a majority of which are susceptible to treatment on a class basis in a single forum. On the other hand, denial of class treatment would create a series of unmanageable, protracted lawsuits.

340. The centrality of Florida in the Circle of Success enterprise and the fact that a substantial amount of the relevant conduct has taken place in Florida warrants application of Florida substantive law to all of Plaintiffs' and Class members' claims. Alternatively, however, Plaintiffs' state law claims are readily susceptible to Class treatment by categorization into cohesive subclasses based on similarities in state laws that would otherwise apply.

## CAUSES OF ACTION

### COUNT I: CONDUCTING THE AFFAIRS OF A RACKETEERING ENTERPRISE – RICO 18 U.S.C. § 1962(C)

341. Plaintiffs incorporate by reference and reallege all allegations in the above paragraphs.

342. This cause is asserted against the all Defendants, and all Defendants are "persons" for purposes of 18 U.S.C. § 1962.

343. The Defendants violated RICO and Plaintiffs were injured as a result.

344.     Each Defendant is a "person" capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. Section 1961(3).

345.     Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the preceding paragraphs and as further described below.

346.     The Circle of Success is a continuous and continuing association-in-fact enterprise consisting of Herbalife and approximately 100 leadership level members of its President's Team. The modern formulation of the Circle of Success began in 2009 when Herbalife relinquished "ownership" of the STS level event to members of "the leadership."

347.     The Circle of Success produces and sells expensive monthly events whose primary purpose is to:

- disseminate misleading and fraudulent income claims
- recruit new members into the fraudulent business opportunity scheme
- increase the investment and engagement of those already ensnared in the scheme

348.     The Circle of Success has a presence in most states, and it plays a central role in the business model of a multi-billion dollar publicly traded company. Herbalife and Individual Defendants actively participate in, and promote, this fraudulent enterprise across the several states. The enterprise is engaging in, and affecting, interstate commerce.

349.     Defendants jointly conduct, manage, and control the affairs of the Circle of Success enterprise.

350.     The Individual Defendants are organized into regional hierarchies and closely control who appears on the Circle of Success stage in their own regions. These Defendants decide when and where to expand the enterprise into new markets. They set the "qualification" price for the events. And they control some event content directly by presenting themselves as the "special guest" speakers.

351.    Defendant Herbalife controls the event calendar, slotting the local STS events in around its own schedule of larger corporate sponsored events. Herbalife dictates a standardized curriculum for Circle of Success events, and controls the many trademarks used in those "approved" presentations. Herbalife lays out a to-the-minute STS agenda which is followed rigidly in most areas.

352.    All Defendants jointly affect the strategic direction of the Circle of Success enterprise through meetings of the various Strategy & Planning Committees; which consist of top level President's Team members and Herbalife corporate executives.

353.    Defendant Herbalife and Individual Defendants together decided that Herbalife would relinquish ownership of the STS in order to reinvigorate recruiting in the North American market.

354.    The Circle of Success is a vehicle used by Defendants to carry out a pattern of racketeering activity. All Defendants engaged in a pattern of racketeering activity by continuously, repeatedly, and over a protracted period; participating in a scheme and artifice to defraud in violation of 18 U.S.C. § 1343.

355.    By transmitting and causing others to transmit, by means of wire in interstate commerce, writings, signs, signals, pictures and sounds, all in furtherance of, and for the purposes of, executing a scheme or artifice to defraud.

356.    With these acts, Defendants have collectively persuaded hundreds of thousands of victims to invest substantial sums into attending events which are held out as the secret to becoming financially successful in a fraudulent scheme to which Defendants know financial success is not possible.

357.     Herbalife and each of the Individual Defendants had a duty to disclose that there was no correlation between event attendance and success.

358.     The predicate acts of wire fraud are related because they have the same or similar purpose, they target the same victims, and they have the same result: hundreds of millions of dollars flowing from the Plaintiff class into the coffers of Herbalife and its top few President's Team distributors.

359.     The conduct complained of herein has been repeated thousands of times between January 2009 and the date of filing. Further, the acts complained of herein project into the future with a threat of repetition as the event cycle continues every month in dozens of locations around the country.

360.     As a direct and proximate result of the Defendants' pattern of racketeering activity, Plaintiff Class was injured in their business and property. Each Plaintiff was induced by reason of Defendants' misrepresentations, omissions, and blatant untruths – to surrender valuable consideration in order to participate in the inherently fraudulent scheme promoted by the Defendants' racketeering enterprise.

WHEREFORE, Plaintiffs demand that judgment be entered against the Defendants, jointly and severally, in favor of Plaintiffs and the Class members as follows:

1. Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

2. Awarding Plaintiffs and the Class recoverable damages in an amount to be determined at trial, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs;

3.   Granting such further relief as this Court deems just and proper.

## COUNT II: CONSPIRACY TO CONDUCT THE AFFAIRS OF A RACKETEERING ENTERPRISE – 18 U.S.C. § 1962(D)

361.   Plaintiffs incorporate by reference and reallege all allegations in the above paragraphs.

362.   This cause is asserted against all Defendants.

363.   Defendants have agreed and conspired to violate 18 U.S.C. § 1962(c) as set forth above in violation of 18 U.S.C. § 1962(d). Defendants have intentionally conspired and agreed to directly, and indirectly, conduct and participate in the conduct of the affairs of the Circle of Success enterprise through a pattern of racketeering activity.

364.   Defendants knew that their predicate acts of wire fraud were part of a pattern of racketeering activity and agreed to the commission of those acts to further their scheme to defraud hopeful business opportunity participants.

365.   As a direct and proximate result of Defendants' conspiracy, and the multiple overt acts taken by all Defendants in furtherance of that conspiracy, Plaintiffs have been injured in their business and property. Plaintiffs invested substantial sums of time and money qualifying for, and attending, fraudulent Circle of Success events.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendants, jointly and severally, in favor of Plaintiffs and the Class members as follows:

a.   Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

b.   Awarding Plaintiffs and the Class recoverable damages in an amount to be determined at trial, including an award of trebled damages as consistent

with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable

attorneys' fees, prejudgment interest, post-judgment interest, and costs;

c.   Granting such further relief as this Court deems just and proper.

**COUNT III: DECEPTIVE AND UNFAIR TRADE PRACTICES – FLA. STAT. §§ 501.201 – 501.213**

366.   Plaintiffs incorporate by reference and reallege all allegations in the above

paragraphs.

367.   This cause is asserted against the Herbalife Defendants.

368.   Plaintiffs are consumers within the meaning of Fla. Stat. § 501.203(7).

369.   The Herbalife Defendants engaged in trade or commerce within the meaning of Fla.

Stat. § 501.203(8).

370.   A substantial amount of the activities relevant to this Complaint took place in

Florida, which is a nerve center of activity for the Circle of Success enterprise.

371.   Florida Statutes Section 501.204(1) declares unfair methods of competition, and

unfair or deceptive acts or practices in the conduct of any trade or commerce, to be unlawful.

372.   The Herbalife Defendants' promotion of an inherently fraudulent business

opportunity, in which the Herbalife Defendants know participants have no reasonable chance of

success, is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to

consumers in breach of public policy.

373.   At Circle of Success events, Herbalife materially misrepresents: i) the cost

associated with pursuing the Herbalife business opportunity scheme, ii) the likelihood of achieving

substantial success, iii) the manner in which those who have been successful in the scheme have

achieved that success, iv) the value to the participant of "attending every event" and "qualifying

for everything."

374.    These and other material misrepresentations alleged herein are likely to mislead a consumer acting reasonably; and to cause persons to pay consideration, or to make investments, into an illusory business opportunity.

375.    The Herbalife Defendants have willfully engaged in the acts and practices alleged above when they knew or should have known that said acts and practices were deceptive and unfair.

376.    The Herbalife Defendants' misrepresentations have caused Plaintiffs actual damages.

377.    Unless the Herbalife Defendants are permanently enjoined from engaging further in the acts and practices alleged, the continued activities of Herbalife Defendants will result in irreparable injury to the public for which there is no adequate remedy at law.

378.    Pursuant to Fla. Stat. §§ 501.211(1) and 501.2105, Plaintiff is entitled to recover from the Herbalife Defendants the reasonable amount of attorneys' fees Plaintiffs have incurred in representing their interests in this matter.

WHEREFORE, Plaintiffs demand that judgment be entered against the Herbalife Defendants, jointly and severally, in favor of Plaintiffs and the Class members as follows:

a.    Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

b.    Awarding Plaintiffs and the Class recoverable damages in an amount to be determined at trial, including an award of trebled damages, compensatory and actual damages, and reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs pursuant to Fla. Stat. § 772.11;

c.    Granting such further relief as this Court deems just and proper

**COUNT IV: UNJUST ENRICHMENT**

379.     Plaintiffs incorporate by reference and realleged all allegations in the above paragraphs.

380.     Plaintiffs conferred a benefit on the Herbalife Defendants by engaging in tens to hundreds of hours in unpaid labor to Plaintiffs' detriment and to the sole benefit of the Herbalife Defendants. Plaintiffs further conferred a benefit on the Herbalife Defendants by purchasing tickets to Circle of Success events as detailed in this Complaint, and by recruiting other Herbalife members through Circle of Success events, for Herbalife Defendants' financial benefit.

381.     The Herbalife Defendants voluntarily accepted, retained and had knowledge of the benefits conferred on them by the Plaintiffs. In fact, the Herbalife Defendants encouraged the Plaintiffs to confer those benefits on the Herbalife Defendants based on patently false representations that Plaintiffs' labor and monetary contributions would benefit Plaintiffs.

382.     The circumstances are therefore such that it would be inequitable for the Herbalife Defendants to retain the benefits conferred upon them by the Plaintiffs without paying the value thereof to the Plaintiffs. Specifically, the Herbalife Defendants conned Plaintiffs into benefitting the Defendants by using the same or materially similar representations and methods, and by exploiting the same informational advantage, giving Plaintiffs the false expectation that Plaintiffs would benefit from their participation in the Circle of Success events. Instead, the Herbalife Defendants knowingly benefited at Plaintiffs' expense.

WHEREFORE, Plaintiffs demand that judgment be entered against the Herbalife Defendants, jointly and severally, in favor of Plaintiffs and the Class members as follows:

a.   Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

  b. Awarding Plaintiffs and the Class recoverable damages in an amount to be determined at trial, including compensatory and actual damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs;

  c. Granting such further relief as this Court deems just and proper.

## <u>COUNT V</u>: NEGLIGENT MISREPRESENTATION

383. Plaintiffs incorporate by reference and reallege all allegations in the above paragraphs.

384. The Herbalife Defendants misrepresented material facts by presenting false information and omitting material information concerning the Circle of Success event cycle to the Plaintiffs, including but not limited to misrepresenting that attendance at all Circle of Success events would guarantee success, omitting the material fact that Plaintiffs could not succeed simply by doing what the Herbalife Defendants told Plaintiffs, and omitting the material fact that they achieved "success" by means other than those represented to the Plaintiffs.

385. The Herbalife Defendants knew or should have known that these representations were false, or alternatively made the misrepresentations to Plaintiffs without knowledge of truth or falsity.

386. The Herbalife Defendants intended to induce Plaintiffs to act on the misrepresentations, including by attending Circle of Success events.

387. Plaintiffs each reasonably and justifiably relied upon the Herbalife Defendants' misrepresentations by expending substantial money, time, and effort to attend Circle of Success events.

388. The Herbalife Defendants' misrepresentations caused injury to the Plaintiffs acting in justifiable reliance on the misrepresentations.

WHEREFORE, Plaintiffs demand that judgment be entered against the Herbalife Defendants, jointly and severally, in favor of Plaintiffs and the Class members as follows:

d.   Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

e.   Awarding Plaintiffs and the Class recoverable damages in an amount to be determined at trial, including compensatory and actual damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs;

f.   Granting such further relief as this Court deems just and proper

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all issues so triable.

DATED:          September 18, 2017                Respectfully submitted,

MARK MIGDAL & HAYDEN
80 S.W. 8th Street
Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/ Etan Mark*
       Etan Mark, Esq.
       Florida Bar No. 720852
       etan@markmigdal.com
       Donald J. Hayden, Esq.
       Florida Bar No. 097136
       don@markmigdal.com
       Lara O'Donnell Grillo, Esq.
       Florida Bar No. 37735
       lara@markmigdal.com
       eservice@markmigdal.com

AND

       Jason Jones, Esq.
       Ohio State Bar No. 0095384
       jason@jonesatlaw.com