# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:17-cv-23429-MGC-JG

JEFF RODGERS, *et al.*,

      Plaintiffs,

vs.

HERBALIFE LTD., *et al.*,

      Defendants.

_____/

### HERBALIFE'S MOTION TO DISMISS PLAINTIFFS' COMPLANT PURSUANT TO FED. R. CIV. PROC. 12(b)(6)

Defendants Herbalife Ltd., Herbalife International, Inc., and Herbalife International of America, Inc. (collectively, "Herbalife" or "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), move to dismiss all of the claims alleged in Plaintiffs' Complaint for failure to state claims upon which relief can be granted.[1]  In support of this Motion, Herbalife submits the following Memorandum of Law.

## I.    INTRODUCTION

Half of the named Plaintiffs in this putative class action are asserting claims that were fully and finally adjudicated and released in the 2015 class action settlement in *Bostick v. Herbalife*.  Plaintiffs Patricia Rodgers, Jeff Rodgers, Izaar Valdez, and Felix Valdez were settlement class members in *Bostick*.[2]  These four Plaintiffs are subject to the broad release in *Bostick*, which, among other things, precludes them from bringing claims premised on allegations that Herbalife engaged in "false and/or misleading advertising" or that Herbalife

---

[1]  This Motion is subject to, and without waiver of, Defendants' arguments that the parties' disputes must be submitted to binding arbitration, and without waiver of Defendants' alternative argument that this case should be transferred to the Central District of California, where it should be dismissed for failure to state a claim upon which relief may be granted. [ECF No. 62; ECF No. 63].

[2]  To the extent that any of the Rodgers and Valdez Plaintiffs' claims survive the *Bostick* release, the claims brought by *all eight named Plaintiffs* are subject to arbitration.  ECF No. 62.

operated a "fraudulent scheme." The Rodgers and Valdez Plaintiffs' claims fall squarely within the scope of the *Bostick* release, and are therefore barred.

All of the Plaintiffs also fail to allege facts sufficient to sustain each of their claims. First, Plaintiffs cannot allege the most basic elements of a RICO claim. The Complaint does not, and cannot, allege the existence of a distinct enterprise, as opposed to the ordinary business affairs of Herbalife and its distributor network. Nor do Plaintiffs allege a cognizable injury to their business or property, but instead seek losses stemming from a failed business opportunity, an expectancy interest that is not recoverable under RICO.

Plaintiffs' allegations of wire fraud fail to meet Rule 9(b)'s heightened pleading standard. Plaintiffs merely cite puffery found in social media posts, fliers, and pep talks given at in-person presentations, without specifying which particular Defendant, if any, made these statements or whether Plaintiffs even viewed or heard these statements. Plaintiffs do not even attempt to delineate which of these alleged statements form the basis for their wire fraud claim, but instead expect Herbalife and the Court to sift through these alleged statements, including hundreds of pages of exhibits (mostly consisting of photos and generic fliers), and connect the dots themselves. Neither the length of Plaintiffs' Complaint nor its broad class allegations are a substitute for specificity as to the named Plaintiffs.

Plaintiffs' Florida Deceptive and Unfair Trade Practices Act (FDUTPA) claim and remaining state law claims for unjust enrichment and negligent misrepresentation, which are subject to Rule 9(b) because they are grounded in fraud, are not pled with the requisite specificity. Plaintiffs' FDUTPA claim fails because Plaintiffs do not allege that Defendants engaged in deception or an unfair trade practice, as they readily admit they knew exactly what to expect at each event they attended. Plaintiffs also impermissibly seek consequential damages under their FDUTPA claim, *i.e.*, what they expected to earn in pursuing the Herbalife business opportunity.

Finally, under their unjust enrichment claim, Plaintiffs do not allege with specificity the benefits they inequitably conferred on Defendants. Plaintiffs' claim for negligent misrepresentation also fails for the same reasons that their wire fraud claim does.

## II.      RELEVANT FACTUAL BACKGROUND

### A.      Plaintiffs' Allegations

Each of the Plaintiffs is an Herbalife distributor or the spouse of a distributor.  ECF No. 1 (Complaint) at ¶¶ 26, 149, 151, 164, 179, 182, 193; ECF No. 63-2 (Declaration of Roxane Romans), Exhs. A-G.   Plaintiffs all contend that they attended numerous Herbalife-sponsored events, at which misrepresentations were made regarding the viability of the Herbalife business opportunity.  ECF No. 1 at ¶¶ 3, 26, 147.  Plaintiffs allege primarily that they were pitched a "guaranteed pathway to attaining life changing financial success," and were encouraged to "attend every event" in order to achieve such success.  ECF No. 1 at ¶¶ 2, 9.  Plaintiffs allege that they have been attending such events since as early as 2008.  *Id.* at ¶¶ 149, 183.  Plaintiffs seek as damages not only the cost of attending events, but also money spent in pursuing what they deem to be a "fraudulent and illusory" business opportunity.  *Id.* at ¶¶ 163, 173, 181, 190.  Based on these allegations, Plaintiffs bring claims under the federal RICO statute and FDUTPA, along with common law claims for unjust enrichment and negligent misrepresentation.

### B.      Plaintiffs Patricia Rodgers, Jeff Rodgers, Izaar Valdez, and Felix Valdez Released Their Claims in the Class Action Settlement in *Bostick v. Herbalife*.

#### 1.      The Scope of the *Bostick* Action Subsumes the Allegations in this Case.

In 2015, Herbalife settled *Bostick v. Herbalife Int'l of America, Inc., et al.*, No. cv-13-02488 (C.D. Cal.), a nationwide class action brought by Herbalife distributors.  Like the Plaintiffs here, the *Bostick* Plaintiffs alleged primarily that Herbalife had misrepresented to them that if they "put in the time, effort, and commitment," they could successfully pursue the Herbalife business opportunity.  ECF No. 61-1 (Request for Judicial Notice) at ¶ 1.  Additionally, the *Bostick* complaint, like the Complaint here, alleged that such misrepresentations were made at Herbalife-sponsored events.  *See*, *e.g.*, *id*. at ¶ 32, ¶ 146, ¶ 166 ("You only have to put in the hard work along with the dedication, patience and discipline, attributes you can learn at the events"); ¶¶ 174-177 (describing alleged misrepresentations made at Herbalife "Extravaganza" events), ¶ 214 (alleging Herbalife encouraged distributors to put money towards attending "Training events/seminars"); ¶ 302(f) (alleging that at "[t]raining and events, such as the Extravaganza, . . . Herbalife distributors made material false

representations regarding the 'business opportunity' and the success that a distributor could get through Herbalife by purchasing products and recruiting others to do the same.").

**C.    The Rodgers and Valdez Plaintiffs Released Their Claims in the *Bostick* Settlement.**

The class action settlement that the *Bostick* court approved defines the "Settlement Class" as "all persons who are or were Herbalife members or distributors in the United States at any time from April 1, 2009 to December 2, 2014." ECF No. 61-3 at ¶ 3. The settlement excludes those Herbalife distributors who signed an arbitration agreement with Herbalife during or after September 2013 (when Herbalife began incorporating arbitration clauses directly into its distributorship agreements). *Id.*

Plaintiffs Patricia Rodgers, Izaar Valdez, and Felix Valdez are *Bostick* class members, because each of them is alleged to have been, and in fact was, an Herbalife distributor during the *Bostick* class period. ECF No. 1 at ¶¶ 149-156, 161, 183, 189-90; ECF No. 63-2 at ¶¶ 2, 6-7, Exhs. A, F, G. Plaintiff Jeff Rodgers, who is alleged to have pursued the Herbalife business opportunity under his wife's distributorship, is also a *Bostick* class member because the *Bostick* judgment is binding on any agents or representatives of the Settlement Class members. ECF No. 1 at ¶¶ 155-63; ECF No. 61-3 at ¶ 12.

The release contained in the *Bostick* judgment broadly provides that Herbalife is released from "all claims . . . known or unknown" ***as of September 18, 2015***[3] that:

- Were or could have been asserted in *Bostick*; and

- "[A]re based upon, arise out of, or reasonably relate to," among other things: (1) "any actual, potential or attempted recruitment of any Herbalife member during the Class Period;" (2) "***any allegation that***, during the Class Period, Herbalife engaged in any acts of unfair competition; ***false and/or misleading***

---

[3]    While the Final Judgment in *Bostick* was issued on June 17, 2015, the "Effective Date" of the *Bostick* settlement, as defined in the Stipulation of Settlement, occurred when the Final Judgment became "final," specifically when the "time for the filing or noticing of any appeal from the Court's Final Judgment" expired. ECF No. 61-2 at ¶ 1.7.3. The *Bostick* judgment became final when the objectors to the settlement waived their right to appeal the denial of their motion for reconsideration of the court's order granting final approval. The court denied objectors' motion for reconsideration on August 18, 2015. ECF No. 61-4 at 1. The objectors' deadline to appeal the order denying their motion was 30 days later, on September 17, 2015. *See* Fed. R. App. Proc. 4(a)(1)(A). Thus, the Final Judgment became "final" on September 18, 2015.

> *advertising*; or operated any type of illegal, pyramid, endless chain, or ***fraudulent scheme***;" and (3) "any of the facts, schemes, transactions, ***events***, matters, occurrences, acts, disclosures, statements, ***misrepresentations, omissions***, or failures to act ***that have been or could have been alleged or asserted in the Action***."

ECF No. 61-3 at ¶ 12 (emphasis added).

The *Bostick* release further provides that:

> As of the Effective Date, all Released Parties shall conclusively be deemed to have acknowledged that the Released Claims include claims, demands, rights, liabilities, suits, or causes of action, ***known or unknown***, as of the Effective Date. The Releasing Parties ***nonetheless release all such claims***. Each Settlement Class Member, ***whether or not such Settlement Class Member executes and delivers a Claim Form***, is bound by this Judgment, including, without limitation, the Release set forth above. All Releasing Parties shall further, as of the Effective Date, ***conclusively be deemed to have waived the rights afforded by California Civil Code Section 1542***, and any similar statute or law, or principle of common law, of California or any other jurisdiction.

*Id.* at ¶ 15 (emphasis added).[4]  The Rodgers and Valdez Plaintiffs do not allege that any misrepresentations were made to them after the effective date of the *Bostick* settlement.

## III.   ARGUMENT

### A.   The Rodgers and Valdez Plaintiffs' Claims are Barred by the *Bostick* Class Action Settlement Release.

#### 1.   The *Bostick* Settlement Agreement is Governed by California Law, Which Broadly Construes Settlement Releases.

The Stipulation of Settlement in *Bostick* provides that "[t]he rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of California."  ECF No. 61-2 at ¶ 12.10.  In the Eleventh Circuit, choice-of-law provisions are "presumptively valid," and the burden falls on the party opposing enforcement of the clause "to demonstrate why it should not be enforced." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 223 F.3d 1275, 1280 (11th Cir. 2000).[5]

---

[4]   The *Bostick* release expressly excludes from its scope claims not at issue here, namely claims arising out of the purchase of Herbalife stock, bonuses for the sale of certain products owed by Herbalife to its distributors, or any allegation that an Herbalife product was defective. ECF No. 61-3 at ¶ 12.

[5]   Unless otherwise noted, internal quotation marks and citations have been omitted.

Under California law, the release in the *Bostick* settlement deserves the broadest possible treatment.  First, because the *Bostick* settlement releases "all claims . . . known or unknown, as of the Effective Date," it constitutes a "standard general release" and "includes claims that are not expressly enumerated in the release."  ECF No. 61-3 at ¶ 12; *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 587 (2010).  Moreover, where, as here, "a settlement's text demonstrates a clear intent to release unknown claims, such a release is valid."  *Basco v. Toyota Motor Corp.*, No. CV 09-6307-GHK (RZX), 2011 WL 13127142, at *8 (C.D. Cal. Nov. 30, 2011); ECF No. 61-2 at ¶ 8.2 (expressly waiving the protections afforded by Cal. Civ. Code § 1542).[6]

In addition, releases such as the one approved in *Bostick* "are not to be shorn of their efficiency by any narrow, technical, and close construction . . . . If parties intend to leave some things open and unsettled, their intent so to do should be made manifest."  *Villacres*, 189 Cal. App. 4th at 589 (quoting *United States v. Wm. Cramp & Sons Co.*, 206 U.S. 118, 128 (1907)); ECF No. 61-3 at ¶ 12 (excluding from the scope of the *Bostick* release claims not at issue here).

### 2.    The Rodgers and Valdez Plaintiffs' Claims Fall Within the Scope of the *Bostick* Release.

The *Bostick* judgment fully settles and releases the claims brought by the Rodgers and Valdez Plaintiffs because they are *Bostick* class members (or their agents or representatives), bound by the broad release in that action.  Each of them was an Herbalife distributor during the *Bostick* class period, April 1, 2009 to December 2, 2014.  *See* ECF No. 1 at ¶¶ 149-156, 161, 183, 189-90; ECF No. 63-2 at ¶¶ 2, 6-7, Exhs. A, F, G.[7]  Jeff Rodgers, who is alleged to have pursued the Herbalife business opportunity under his wife's distributorship, is a *Bostick*

---

[6]    That section of the California Civil Code provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

[7]    The Court may consider the distributorship agreements entered into between, on the one hand, Patricia Rodgers, Izaar Valdez, and Felix Valdez, and on the other, Herbalife, because the agreements are "central" to their claims and their authenticity is undisputed.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("[R]elationship-forming contracts are central to a plaintiff's claim.").  The agreements also reflect what the Complaint already alleges, that these three Plaintiffs were Herbalife distributors during the *Bostick* class period.

class member as well because the *Bostick* judgment is binding on any agents or representatives of the Settlement Class members.  ECF No. 1 at ¶¶ 155-63; ECF No. 61-3 at ¶ 12; *see, e.g.*, *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (upholding application of forum selection and choice of law clauses to individuals where their interests in the dispute were "completely derivative" of their spouses who agreed to such clauses).

Each of these Plaintiffs alleges that he or she attended Herbalife events prior to September 18, 2015, the effective date of the *Bostick* settlement, and none alleges attendance at any events after the effective date.  *See, e.g.*, ECF No. 1 at ¶¶ 149, 152-53, 156, 161, 189.  It is at these events that Plaintiffs contend misrepresentations were made regarding the viability of the Herbalife business opportunity.  *See, e.g.*, *id.* at ¶¶ 2, 3, 9.  These allegations fall squarely within the scope of the *Bostick* release, which, among other things, broadly covers allegations of "false and/or misleading advertising" or that Herbalife operated a "fraudulent scheme." ECF No. 61-3 at ¶ 12.

The *Bostick* release therefore bars the claims brought by these four Plaintiffs because (1) the misrepresentations alleged in *Bostick* also form the basis for Plaintiffs' Complaint, (2) the original *Bostick* complaint alleged RICO claims identical to the ones Plaintiffs bring here, and (3) the *Bostick* settlement compensated class members for the very losses Plaintiffs seek here.

> ### a.   The Misrepresentations Alleged in *Bostick* Form the Basis for Plaintiffs' Complaint.

The misrepresentations Plaintiffs allege were made at certain events are identical to those the *Bostick* plaintiffs alleged had occurred at these very same events.  *Compare* ECF No. 1 at ¶ 3 (encouraging distributors to "'attend every event' if they want to be successful") ¶ 6 ("If you go to all of the events, you qualify for everything – you will get rich"); ¶¶ 84-89 (describing the "Extravaganza" events, alleging that "attendance is pushed aggressively") to ECF No. 61-1 at ¶ 32, ¶ 146, ¶ 166 ("You only have to put in the hard work along with the dedication, patience and discipline, attributes you can learn at the events"); ¶¶ 174-77 (describing alleged misrepresentations made at Herbalife "Extravaganza" events), ¶ 214 (alleging Herbalife encouraged distributors to put money towards attending "Training events/seminars"); ¶ 302(f) (alleging that at "[t]raining and events, such as the Extravaganza, . . . Herbalife distributors made material false representations regarding the 'business

opportunity' and the success that a distributor could get through Herbalife by purchasing products and recruiting others to do the same.").

Not only "could" Plaintiffs' allegations "have been asserted" in *Bostick* – they are allegations that in fact ***were asserted*** in *Bostick* and later released in the *Bostick* judgment.  ECF No. 61-3 at ¶ 12; *see Bonita Villas Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-21887CIVSEITZOSUL, 2010 WL 2541763, at *3 (S.D. Fla. June 23, 2010) (dismissing claim for fraudulent misrepresentation arising out of a similarly broad settlement release). Moreover, Plaintiffs essentially allege the "promotion of an inherently fraudulent business opportunity, in which the Herbalife Defendants know participants have no reasonable chance of success."  ECF No. 1 at ¶ 372.  ***This same allegation*** formed the basis for the *Bostick* complaint, thereby barring Plaintiffs' claims here.  *See* ECF No. 61-1 at ¶ 269 (alleging as fraudulent "the touted, yet non-existent, Herbalife 'business opportunity' for everyone, including but not limited to Herbalife's massive advertising campaign."), ¶ 271 ("Herbalife has made numerous misleading representations about the business opportunity of Herbalife and the income that a recruit or a distributor can realize by becoming a distributor and participating in the scheme.").

> ### b.   The Original *Bostick* Complaint Alleged RICO Claims Identical to the Ones Plaintiffs Bring Here.

The original *Bostick* complaint brought several claims under RICO, including alleged violations of §§ 1962(c) and (d), which subsume the RICO claims brought by Plaintiffs here. The *Bostick* complaint alleged, as Plaintiffs do here, an enterprise consisting of Herbalife and its "beneficiaries" and "promoters," including some of the Individual Defendants named in this action.  ECF No. 67-1 (Second Request for Judicial Notice) at ¶¶ 11, 236.  The *Bostick* complaint also alleged, as Plaintiffs do here, that the purpose of the enterprise was to:

> (1) earn money through fraudulent means, (2) entice individuals to become Herbalife distributors, (3) entice individuals to purchase products from Herbalife, (4) entice individuals to recruit others to become Herbalife distributors and profit off those recruits' purchases of Herbalife products, and (5) reap large profits for themselves based on false representations.

> *Id*. at ¶ 239; *compare* ECF No. 1 at ¶ 347 (alleging the same).

The *Bostick* complaint also asserted wire fraud as a predicate for its RICO claims, alleging that misrepresentations regarding the Herbalife business opportunity and the "wealth

that a recruit or Herbalife distributor could achieve" were transmitted through e-mail, videos, and websites.  ECF No. 67-1 at ¶¶ 253, 254, 257; *compare, e.g.,* ECF No. 1 at ¶¶ 68, 93, 96, 124, 155 (alleging the same).

Plaintiffs' RICO claims are barred here because they were asserted in the "complaints" filed in *Bostick* and were later released in the *Bostick* judgment.  ECF No. 61-3 at ¶ 12.[8]

### c.   The *Bostick* Settlement Compensated Class Members for the Very Losses Plaintiffs Seek Here.

As in *Bostick*, Plaintiffs here allege that Herbalife's business opportunity is not "viable," and they seek damages for money they lost pursuing this allegedly "fraudulent and illusory" opportunity, including alleged losses stemming from the purchase of Herbalife products.  ECF No. 1 at ¶¶ 3, 26, 163, 179, 181, 190; ECF No. 61-1 at ¶ 3 (alleging *Bostick* plaintiffs "failed because they were doomed from the start.").  The *Bostick* settlement compensated class members *for these very losses*, allocating $17,500,000 in cash awards to class members who either (a) purchased Herbalife products for the purpose of resale, and were unable to sell such product for at least the cost of purchase; *or* (b) sought to return product that fell outside of Herbalife's one-year return policy.  ECF No. 61-2 at ¶ 4.1.  Importantly, regardless of whether or not Plaintiffs filed a claim and received a settlement payment in *Bostick*, they are still bound by its release.  ECF No. 61-3 at ¶ 15. ("Each Settlement Class Member, *whether or not such Settlement Class Member executes and delivers a Claim Form*, is bound by this Judgment, including, without limitation, the Release . . . .") (emphasis added).[9]

---

[8]   The *Bostick* plaintiff conceded that his RICO claims should be dismissed.  It is irrelevant, however, that Plaintiffs here may have later discovered facts that form the basis for their claims, as the *Bostick* settlement releases all claims that "were brought or could have been brought in the complaints in this Action *without regard to the subsequent discovery or existence of such different or additional facts.*"  ECF No. 61-2 at ¶¶ 8.2-8.3 (emphasis added); *see Basco*, 2011 WL at *8 (dismissing class action RICO claim despite plaintiffs' contention that the "claim was unknown at the time of settlement.").

[9]   The Rodgers and Valdez Plaintiffs are also barred from bringing their claims under the doctrine of *res judicata*.  Under California law (which governs the *Bostick* settlement), *res judicata* applies where "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding."  *Moreno v. Lane Bryant, Inc.*, No. CV1009329GAFFMOX, 2011 WL 13217973, at *4 (C.D. Cal. Jan. 25, 2011) (dismissing action because plaintiff, a member in a prior class

**B.      All Plaintiffs' RICO Claims (Counts I and II) Fail.**

In order to state a section 1962(c) violation of civil RICO, a plaintiff must allege that the defendant: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016). Moreover, "a civil [RICO] plaintiff must also show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Id.* (quoting 18 U.S.C. § 1964(c)).

All of the Plaintiffs' RICO claims under sections 1962(c) (conducting the affairs of an enterprise) and (d) (conspiracy) should be dismissed because Plaintiffs do not sufficiently allege: (1) the existence of an enterprise, (2) the predicate act of wire fraud with particularity, (3) that the alleged misrepresentations amount to more than mere puffery, (4) that the purported misrepresentations proximately caused their injuries, or (5) a cognizable injury to their business or property.

**1.      Plaintiffs Fail to Allege the Existence of a Distinct RICO Enterprise.**

Plaintiffs do not, nor can they, allege the existence of a distinct RICO enterprise because "in an association-in-fact enterprise, a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation." *Ray*, 836 F.3d at 1355; *see Burstein v. First Penn-Pac. Life Ins. Co.*, No. 01-985-CIV, 2002 WL 34186960, at *6 (S.D. Fla. Feb. 12, 2002) ("Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under § 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents or members."); *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (affirming dismissal of RICO claim for failure to plead distinct enterprise, holding that the complaint "does not adequately allege that [Defendants] were conducting the affairs of [an enterprise], as opposed to their own affairs.").

Plaintiffs here run afoul of this rule because they plead an association-in-fact enterprise consisting entirely of Herbalife and some of its own distributors. *See* ECF No. 1 at ¶¶ 4, 138,

---

action settlement, was bound by its release, which broadly encompassed the claims asserted by plaintiff). As explained above, each of these elements is met here.

206-325 (alleging that Herbalife "and its highest ranking members (including the Individual Defendants) jointly produce and sell these events in close association," and that the Individual Defendants are Herbalife's "top distributors," two of whom, John Tartol and Leslie Stanford, allegedly served on Herbalife's Board of Directors).

As such, Plaintiffs' allegations *amount to nothing more* than a claim that Herbalife's business model, as executed by Defendants, is purportedly fraudulent. *See id.* at ¶¶ 7, 26, 29, 34 (contending that Herbalife's rules are stacked against Plaintiffs, and that as a result, there "is no viable retailing opportunity"). Plaintiffs therefore fail to allege an enterprise that is distinct from Herbalife's business and the ordinary channels through which it sells its products and recruits distributors. *See Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1340 (S.D. Fla. 2015), *aff'd*, 836 F.3d 1340 (11th Cir. 2016) ("Each party must be separate and distinct from the enterprise because RICO liability depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their own *affairs*.") (emphasis in original); *Kaczmarek v. Int'l Bus. Machines Corp.*, 30 F. Supp. 2d 626, 629–30 (S.D.N.Y. 1998) ("To the extent plaintiffs allege that the enterprise also included third party manufacturers, dealers and resellers, plaintiffs have failed to distinguish this association of entities from the typical and ordinary participants who act separately for the purpose of distributing any product."); *Walgreen*, 719 F.3d at 855 ("Representatives from the companies regularly communicated with one another . . . . This type of interaction, however, shows only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes of improperly filling [drug] prescriptions.").

### 2.    Plaintiffs Fail to Plead Wire Fraud With Particularity.

The elements of wire fraud are that the defendant: "(1) intentionally participate[d] in a scheme to defraud another of money or property and (2) use[d] the . . . wires in furtherance of that scheme." *In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1343 (S.D. Fla. 2001). A "'scheme to defraud'" entails the making of misrepresentations intended and reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* A claim for wire fraud is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Under Rule 9(b), plaintiffs pleading a wire fraud claim "must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person

responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).  The Complaint falls short on the first three requirements.

First, Plaintiffs fail to allege any misrepresentations with precision.  Plaintiffs purport to identify a laundry list of alleged statements, but do not identify which of these statements form the basis for their wire fraud claim (indeed, many of these alleged statements were apparently made orally, not over the wires).  ECF No. 1 at ¶¶ 61-62, 64, 66, 68, 77, 84, 90, 92.  Defendants and the Court cannot be forced to sift through the exhibits attached to the Complaint, which compile various fliers, social media postings, and photos, and speculate as to which statements amongst these various exhibits constitute the alleged misrepresentations on which Plaintiffs' RICO claims are premised.  Plaintiffs conclude by alleging that "[e]ach month Defendants distribute, or cause to be distributed, hundreds of thousands of fraudulent messages about Circle of Success events across the wires," a hopelessly vague allegation that plainly fails to meet the high pleading bar set by Rule 9(b).  *Id.* at ¶ 96.

Second, the Complaint fails to specify who made the alleged misrepresentations, instead impermissibly lumping all of the Defendants together.  *See Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2014 WL 1237685, at *5 (S.D. Fla. Mar. 26, 2014); *see id.* at ¶¶ 4, 54 (contending that all Defendants "jointly produce and sell" the events at issue and collectively "encouraged Plaintiffs and Class Members to attend a Circle of Success event every month."), ¶ 61 ("***Individual Defendants*** constantly reiterate . . ."), ¶ 68 ("Long scripted days of income claims accompanied by loud music, shouting, clapping, hugging, and crying . . . .) (emphasis added), ¶ 71 ("Herbalife's STS system is owned and controlled by a web of ***Defendant connected entities*** . . . .") (emphasis added), ¶ 84 ("Extravaganza is billed as 'the BIGGEST and MOST IMPORTANT event to attend' on the Circle of Success calendar."), ¶ 90 ("***Speakers*** tell the audience that they can achieve the same level of success themselves simply by continuing to attend events.") (emphasis added), ¶ 97 ("***Defendants*** expect and encourage their Circle of Success promotional messages to be remixed and echoed across the wires.") (emphasis added), ¶ 136 (referencing "more than 4000" Instagram posts).

It is impossible to glean from these allegations who allegedly made the cited statements. *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.").

Third, the Complaint fails to allege the "content and manner" in which these purported misrepresentations misled Plaintiffs in that it does not allege which, if any, statements Plaintiffs actually viewed or heard. *Brooks*, 116 F.3d at 1380 (affirming dismissal of RICO complaint for lack of specificity). Even where Plaintiffs attempt to plead that they were personally misled by certain misrepresentations, they fail to do so with the specificity required by Rule 9(b). *See, e.g.,* ECF No. 1 at ¶ 160 ("The constant promotion of the next big event, each promising to be the key to success; and their constant attendance of those highly charged emotional events, kept their false hopes at a steady boil.").

Plaintiffs' failure to specify how they were misled by these alleged misrepresentations is fatal to their RICO claims. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (affirming dismissal of RICO claim on these grounds); *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008) (dismissing RICO claim because "[p]laintiffs do not allege how Defendants relied on the false representations. The pleading of the mail and wire fraud predicate acts therefore does not satisfy the Rule 9(b) requirement to plead fraud with particularity.").

### 3. The Misrepresentations Alleged in the Complaint Amount to Non-Actionable Puffery, Not Fraud.

Puffery cannot form the basis for a wire fraud claim. *See Am. Dental,* 605 F.3d at 1292 (dismissing RICO claim because the alleged misrepresentations "amount at most to puffery, not fraud."); *United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir. 1996), *overruled on other grounds* by *United States v. Svete*, 556 F.3d 1157 (11th Cir. 2009) ("For example, 'puffing' or 'sellers' talk' is still not actionable under the mail fraud statute."). Puffery is characterized by "vague, highly subjective claims as opposed to specific, detailed factual assertions." *Earthcam, Inc. v. Oxblue Corp.*, No. 1:11-CV-02278-WSD, 2012 WL 12836518, at *5 (N.D. Ga. Mar. 26, 2012); *see also Marty v. Anheuser-Busch Companies*, LLC, 43 F. Supp. 3d 1333, 1342 (S.D. Fla.

2014) ("[G]eneral, subjective, unverifiable claims are mere puffery that cannot" constitute false advertising).

The alleged misrepresentations in the Complaint are classic puffery, and fall outside the ambit of the RICO statute.  *See, e.g.,* ECF No. 1 at ¶ 66 ("[W]ith the right training, anything is possible . . . ."), ¶ 68 ("I can do this !"), ¶ 84 ("the BIGGEST and MOST IMPORTANT event to attend"), ¶ 86 ("[W]e were all extremely moved by the enthusiasm and excitement in the business."), ¶ 92 (identifying various personal testimonials from distributors).  These allegations are not "specific, quantifiable statements of fact," but rather "amount[] to nothing more than . . . enthusiastic subjective claim[s], the type that ordinary consumers are accustomed to in the commercial marketplace."  *Marty*, 43 F. Supp. 3d at 1342; *Hill v. Celebrity Cruises, Inc.*, No. 09-23815-CIV, 2011 WL 5360629, at *7 (S.D. Fla. Sept. 19, 2011), *report and recommendation adopted in part, rejected in part on other grounds,* No. 09-23815-CIV, 2011 WL 5360247 (S.D. Fla. Nov. 7, 2011).

Moreover, Plaintiffs do not allege that Defendants guaranteed they would earn a specific sum of money in pursuing the Herbalife business opportunity, but rather contend that they generally expected to achieve some kind of financial success.  Such an allegation constitutes puffery and cannot form the basis for a wire fraud claim, as it "is not binding as a legal obligation or promise."  *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342-43 (S.D. Fla. 2011), *aff'd,* 483 F. App'x 568 (11th Cir. 2012) (finding statements such as "the loan was a good deal for her" and "that the value of the Plaintiff's home would continue to rise and she would not have a problem refinancing" to constitute puffery); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1111 (11th Cir. 2001) ("[C]laims of surgical success in medical journals and popular magazines seem more akin to puffing than actionable misrepresentations."); *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1341 (S.D. Fla. 2012) ("[M]any of the alleged statements on which Plaintiffs rely—that the purchase price for the timeshare was reasonable, that the units were worth more than what Wyndham was charging for them, that Defendants' management and maintenance fees were reasonable, and that the units were desirable—are nothing more than opinions, or puffery, and do not constitute actionable fraud.").

### 4. Plaintiffs Fail to Allege That the Purported Misrepresentations Proximately Caused Their Injuries.

In order to state a claim under RICO, "Plaintiffs must assert that defendants' alleged racketeering activity proximately caused their injuries." *Wilson v. EverBank, N.A.*, No. 14-CIV-22264, 2015 WL 1600549, at *2 (S.D. Fla. Apr. 9, 2015); *see Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 3 (2010) ("[T]he compensable injury flowing from a [RICO] violation . . . necessarily is the harm caused by [the] predicate acts."). Here, although the Complaint compiles several alleged statements made on social media, various websites, in fliers, and at in-person events, such statements are not only pled without the requisite specificity, but Plaintiffs altogether fail to allege that they even viewed or heard these alleged misrepresentations. *See, e.g.,* ECF No. 1 at ¶¶ 61-62, 64, 66-68, 75, 77, 84, 86, 90, 92, 99, 104-105, 107-108, 127, 129, 136. It is not sufficient under RICO to simply cut and paste various "popular" Facebook and Instagram posts or perform a search on social media sites for certain Herbalife "hashtags" without alleging that Plaintiffs actually viewed these purported misrepresentations and that these misrepresentations proximately caused their alleged injuries. *See, e.g., id.* at ¶¶ 105, 107, 136. Plaintiffs' RICO claims therefore must be dismissed because Plaintiffs "do not allege that they received or read the communications at issue" and therefore "have not alleged that their injuries were proximately caused by [Defendants'] alleged [wire] fraud." *Wilson*, 2015 WL at *6.

### 5. Plaintiffs Improperly Seek Recovery for an Expectancy Interest Under RICO.

In order to have standing to sue under RICO, a plaintiff must allege a "concrete financial loss." *Keeton v. Gynecare Worldwide*, No. 15-20442-CIV, 2016 WL 2753866, at *3 (S.D. Fla. Jan. 29, 2016), *report and recommendation adopted sub nom. Keeton v. Johnson & Johnson*, No. 15-20442-CIV, 2016 WL 2753667 (S.D. Fla. Mar. 31, 2016) (citing *Regions Bank v. J.R. Oil Co.,* 387 F.3d 721, 728 (8th Cir.2004)). Therefore, "[a]llegations of an injury to a mere expectancy interest or an intangible property interest are insufficient to state a RICO injury." *Id.*

For example, in *Amarelis v. Notter Sch. of Culinary Arts, LLC*, No. 6:13-CV-54-ORL-31KRS, 2014 WL 5454387, at *2 (M.D. Fla. Oct. 27, 2014), Plaintiffs alleged that Defendants, a for-profit culinary school and its owner, operated a RICO enterprise by misrepresenting the amount of income a student could expect to earn after graduation, as well

as the school's job placement rate.  The court dismissed the RICO claim, holding that the plaintiffs failed to allege a "concrete financial loss" because the allegation that the plaintiffs "were injured by receiving an education that did not meet their expectations and by experiencing lower than expected career prospects" is an "expectancy interest[]" that does not "give rise to [an] actionable RICO injury."  *Id.* at *6.

Plaintiffs lack standing under RICO here for the same reason.  Plaintiffs allege that they have "spent thousands of dollars attending [Circle of Success] events, *[and] have received no benefit from doing so*, despite Defendants' continuous barrage of guarantees to the contrary."  ECF No. 1 at ¶ 7 (emphasis added).  In effect, Plaintiffs contend that they hoped to earn more in pursuing "Herbalife's fraudulent and illusory business opportunity," just like the plaintiffs in *Amarelis* hoped to earn a higher income with a degree from defendant's school.  Plaintiffs therefore seek an expectancy interest that is not actionable under RICO.  *Id.* at ¶¶ 163, 173, 181; *see Amarelis*, 2014 WL * at 2; *Keeton*, 2016 WL at *3.

### 6. Plaintiffs Also Fail to Adequately State a Claim for RICO Conspiracy.

Plaintiffs' claim for RICO conspiracy under § 1962(d) also fails because, as explained above, they have not sufficiently alleged a substantive violation of RICO.  *See Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1365–66 (S.D. Fla. 2015) ("First and foremost, because Plaintiffs have failed to adequately state a claim under section 1962(c), the Court must necessarily find that Plaintiffs failed to state a claim for civil conspiracy under the RICO statutes.").

Plaintiffs' RICO conspiracy claim also fails independently because the Complaint does not sufficiently allege that Defendants either "agreed to the overall objective of the conspiracy" or "agreed to commit two predicate acts."  *Am. Dental Ass'n*, 605 F.3d at 1293.  Instead, Plaintiffs contend merely that "Defendants have agreed and conspired to violate 18 U.S.C. § 1962(c) as set forth above in violation of 18 U.S.C. § 1962(d).  Defendants have intentionally conspired and agreed to directly, and indirectly, conduct and participate in the conduct of the affairs of the Circle of Success enterprise through a pattern of racketeering activity."  This conclusory allegation is insufficient to establish the existence of an agreement to violate RICO.  *See Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1294 (S.D. Fla. 2008) ("These are the kinds of 'formulaic recitations' of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient."); *Elof Hansson Paper & Bd., Inc. v. Caldera*,

No. 11-20495-CIV, 2011 WL 13115561, at *7 (S.D. Fla. Sept. 6, 2011) ("Plaintiff offers only the vague, conclusory statements that 'Defendants agreed to conduct or participate' and that they 'willfully combined conspired, confederated and agreed together to violate [Section 1962(c)].' This is not enough.").

**C.    Plaintiffs' State Law Claims Fail.**

**1.    Plaintiffs Fail to State a Claim Under the Florida Deceptive and Unfair Trade Practices Act (Count III).**

**a.    Legal Standard.**

In order to state a claim under FDUTPA, a plaintiff must plead: "(1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages." *BPI Sports, LLC v. Labdoor, Inc.*, No. 15-62212-CIV-BLOOM, 2016 WL 739652, at *4 (S.D. Fla. Feb. 25, 2016). A deceptive act "occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* Rule 9(b)'s heightened pleading standard applies to FDUTPA claims "based on deception or fraud." *Ellis v. Warner*, No. 15-10134-CIV, 2017 WL 634287, at *23 (S.D. Fla. Feb. 16, 2017). Plaintiffs have nevertheless failed to plead a FDUTPA claim with the specificity required by Rule 9(b).

**b.    Plaintiffs Fail to Adequately Plead That Defendants Have Engaged in Deception or an Unfair Practice.**

Plaintiffs' allegations do not establish that Defendants violated FDUTPA. First, as discussed above in Section III(B)(2)-(3), the misrepresentations alleged in the Complaint amount to mere puffery and are not pled with the requisite specificity. *Perret*, 889 F. Supp. 2d at 1342 (dismissing FDUTPA claim because "most of the alleged misrepresentations Plaintiffs rely upon are nothing more than opinion or puffery.").

Second, Plaintiffs fail to allege that the Herbalife "event cycle" is deceptive or constitutes an unfair practice. Quite the opposite, Plaintiffs admit that they knew what to expect at these events. Plaintiffs allege that each event "delivers substantially similar content . . . in a substantially similar format." ECF No. 1 at ¶ 90. Plaintiffs also allege that these events occur at regular intervals with set pricing. *Id.* at ¶¶ 55, 56, 76, 84. In other words,

Plaintiffs allege they attended these events month after month over a period of years, knowing ahead of time precisely what these events entailed. *Id.* at ¶ 147. The Complaint contains no allegations from which it can be inferred that a reasonable consumer would, equipped with this knowledge, be misled by such events. *Lombardo*, 124 F. Supp. 3d at 1287.

**c.   Plaintiffs Fail to Allege That Defendants' Conduct Proximately Caused Damages Recoverable Under FDUTPA.**

FDUTPA permits recovery for "actual damages," as opposed to consequential or special damages. *BPI Sports*, 2016 WL at *6. Actual damages under FDUTPA are defined as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010). Here, it appears that Plaintiffs seek as damages both the cost of attending Herbalife events and their purported losses in pursuing the Herbalife business opportunity. ECF No. 1 at ¶¶ 163, 173, 179, 181, 184. Neither alleged damage is sufficient to support a claim under FDUTPA.

First, Plaintiffs fail to adequately plead damages stemming from the attendance at events because they do not allege that there was any difference between the content presented at such events and the content they reasonably expected to be presented at such events. Nor can Plaintiffs make such a claim since, as noted above, Plaintiffs admit they knew full well what to expect at each event they attended. *See* ECF No. 1 at ¶¶ 55-56, 76, 84, 90, 147. In other words, Plaintiffs fail to allege that they did not receive that for which they bargained.

Second, to the extent Plaintiffs seek as losses their "large monthly purchases of Herbalife product," they fail to allege the "difference in the market value" between the products they purchased and the products they expected to receive. *See* ECF No. 1 at ¶¶ 3, 163, 179, 181; *Rodriguez*, 38 So. 3d at 180. Plaintiffs do not allege that the products they purchased were not delivered in adequate condition, nor do they allege that they were unable to sell, consume, or return such products. To the extent Plaintiffs instead seek the profits they expected to earn through the pursuit of the Herbalife business opportunity, *i.e.*, the sale of Herbalife product, such damages are not recoverable under FDUTPA. *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *6 (S.D. Fla. May

16, 2016) ("[C]onsequential damages, including lost profits, cannot be recovered under FDUTPA.").[10]

## 2. Plaintiffs Fail to Plead Sufficient Facts Supporting a Claim for Unjust Enrichment (Count IV).

To state a claim for unjust enrichment, a plaintiff must allege that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Plaintiffs fail to allege any of these elements with the specificity required by Rule 9(b). *See Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013) (holding unjust enrichment claim is subject to Rule 9(b) where it is based on "alleged fraudulent representations and omissions").

First, Plaintiffs vaguely allege that they conferred the benefit of "hundreds of hours in unpaid labor" on Defendants. ECF No. 1 at ¶ 380. Plaintiffs, however, fail to allege what this "labor" entailed, how this labor benefited Defendants beyond their purchase of products for resale, or how Defendants "accepted and retained" this alleged benefit.

Second, Plaintiffs do not allege how they inequitably conferred a benefit on Defendants through the purchase of event tickets. Indeed, Plaintiffs do not allege that they were denied attendance at such events or were otherwise deprived of hearing the content they expected to hear at such events.

Third, Plaintiffs do not plead the lack of an adequate legal remedy, as is required for an unjust enrichment claim, because they "seek recovery for the exact same wrongful conduct as in their consumer fraud act claim." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1237 (S.D. Fla. 2007). As in their FDUTPA claim, Plaintiffs contend in their unjust enrichment claim that Herbalife gave them "the false expectation that Plaintiffs would benefit from their participation in the Circle of Success events." ECF No. 1 at ¶ 382. The claims are therefore impermissibly duplicative of each other. *See id.* ("If Pfizer's marketing scheme is misleading, and if the plaintiffs have been damaged by such scheme, then the plaintiffs have a remedy at law as a properly pled claim under the consumer fraud acts or for negligent

---

[10] To the extent Plaintiffs seek to recover treble damages under their FDUTPA claim, there is no statutory basis for such a request.

misrepresentation."); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012) ("Despite Plaintiff's contention that her unjust enrichment claim is an alternative to her FDUTPA claim, Plaintiff seeks recovery for the exact same wrongful conduct as in her FDUTPA claim. Thus, if Defendant's sale of honey was deceptive, misleading or unlawful, causing damage to Plaintiff, she has an adequate remedy under Florida law.").[11]

### 3. Plaintiffs' Claim for Negligent Misrepresentation (Count V) Fails for the Same Reasons That its Claim for Wire Fraud Fails.

Rule 9(b)'s heightened pleading requirements also apply to claims for negligent misrepresentation. *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1360 (S.D. Fla. 2016). As discussed above in Section III(B)(2)-(3), the Complaint's allegations of fraud fail to meet these requirements because Plaintiffs do not plead (1) the precise misrepresentations on which their fraud claim is premised, (2) the circumstances surrounding the alleged misrepresentations (*i.e.*, the time, place, and person responsible for making the alleged misrepresentations), (3) that they relied on or were misled by the alleged misrepresentations, and (4) statements that amount to more than mere puffery. *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1334 (S.D. Fla. 2007) ("To state a claim for negligent misrepresentation . . . a plaintiff must plead some injury which resulted to the plaintiff by acting in justifiable reliance upon the defendant's misrepresentation."); *McGee v. Cook*, No. 8:09-CV-2543-T-27TGW, 2011 WL 13143441, at *3 (M.D. Fla. Mar. 30, 2011) (dismissing negligent misrepresentation claim where complaint improperly "lump[ed] all Defendants together."); *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012) (holding negligent misrepresentation claim cannot be based on puffery).[12]

## IV. CONCLUSION

Based on the foregoing, Herbalife respectfully urges the Court to grant its Motion and dismiss the Complaint with prejudice.

---

[11] Plaintiffs also should not be permitted to plead a claim for unjust enrichment in the alternative because the claim "relies on the factual predicate common to all [their] claims." *Weaver v. Mateer & Harbert, P.A.*, No. 5:09-CV-514-OC-34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012), *aff'd*, 523 F. App'x 565 (11th Cir. 2013).

[12] To the extent Plaintiffs seek attorney's fees under their negligent misrepresentation and unjust enrichment claims, there is no statutory or contractual basis for such a request.

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.**
*Co-Counsel for Herbalife Defendants*
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428

By:  */s/ Todd A. Levine*
**STEVE I. SILVERMAN**
Fla. Bar No. 516831
ssilverman@klugerkaplan.com
**TODD A. LEVINE**
Fla. Bar No. 899119
tlevine@klugerkaplan.co
**ERIN E. BOHANNON**
Fla. Bar No. 90912
ebohannon@klugerkaplan.com


**BIRD   MARELLA   BOXER   WOLPERT NESSIM DROOKS LINCENBERG & RHOW, P.C.**
*Co-Counsel for Herbalife Defendants*
1875 Century Park East
Suite 2300
Los Angeles, CA  90067
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

By:*/s/ Mark T. Drooks*
**MARK T. DROOKS**
*Admitted Pro Hac Vice*
mdrooks@birdmarella.com
**PAUL S. CHAN**
*Admitted Pro Hac Vice*
pchan@birdmarella.com
**GOPI K. PANCHAPAKESAN**
*Admitted Pro Hac Vice*
gpanchapakesan@birdmarella.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December **22**, 2017, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF and served on Etan Mark, Esq., Donald J. Hayden, Esq., and Lara O'Donnell Grillo, Esq. Attorneys for Plaintiffs, MARK MIGDAL & HAYDEN, 80 S.W. 8th Street, Suite 1999, Miami, FL, 33130 via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Todd A. Levine*

Todd A. Levine, Esq.