UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-cv-23429-MGC

JEFF RODGERS, et. al.,
individually and on behalf of
all others similarly situated,

      Plaintiffs,

vs.

HERBALIFE LTD., et. al.

      Defendants.

_____/

**DEFENDANTS' JOINT REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION**

**I.     INTRODUCTION.**

There is no "tangled web" here. The basic facts establishing Plaintiffs' unambiguous obligation to arbitrate are straightforward. Over the last decade, the Plaintiffs all decided that they wanted to become Herbalife Distributors. To do so, they (or their spouses) signed Distributor Agreements. Four of the Plaintiffs (Cody Pyle, Felix Valdez, and Jennifer and Michael Lavigne) signed Distributor Agreements that contain express arbitration provisions. All of the Plaintiffs executed Distributor Agreements expressly incorporating by reference Herbalife's Distributor Rules of Conduct (the "Rules") and the Sales and Marketing Plan (the "Marketing Plan"), which set forth the terms and conditions under which a Distributor operates an Herbalife Distributorship. The Rules and the Marketing Plan were expressly subject to change (with discretion limited to comply with California law).

In August 2013, Herbalife amended the Rules to add an arbitration provision (the "Arbitration Provision"), which was then amended several times over the next four years. After August 2013, all of the Plaintiffs operated their distributorships by purchasing products and earning commissions. Now, **over four years later**, Plaintiffs seek to evade application of the Arbitration Provision.

Plaintiffs' arguments to avoid arbitration do not hold water.  First, Plaintiffs cannot escape the fact that an Arbitrator, not this Court, must resolve their numerous challenges to arbitration.  Second, the terms of use on Herbalife's website do not override Herbalife's other policies and agreements to which Distributors are bound.  Third, the Arbitration Provision complies with applicable California law and is fully enforceable.  Fourth, Herbalife's settlement in *Bostick* does not preclude it from ever arbitrating Plaintiffs' claims.  And fifth, Plaintiffs' claims against the Individual Defendants fall within the scope of the Arbitration Provision, and Plaintiffs are equitably estopped from avoiding arbitration.

## II.     AN ARBITRATOR MUST DECIDE PLAINTIFFS' CHALLENGES.

The Arbitration Provision in the Rules was in effect for **four years** before Plaintiffs' asserted their claims in this case.  [*See* ECF No. 62-2; ECF No. 84-1.]  During that period, the Arbitration Provision clearly stated that all disputes with Herbalife were subject to arbitration, including those arising out of or relating to a Distributor's relationship with other Distributors.  [*Id.*]  There is no doubt that the Arbitration Provision applies here.  Three of the Plaintiffs actually signed up as Distributors after the Arbitration Provision was already in effect in the Rules (and their Distributor Agreements).[1]  All of the Plaintiffs executed Distributor Agreements that expressly incorporate the most current form of the Rules by reference.  And all of the Plaintiffs operated their distributorships by purchasing products and earning commissions, under the Rules, **for years after the Arbitration Provision was adopted**.  [*See* ECF No. 62-3 ¶¶ 6-8, 10-11; ECF No. 82-2 ¶¶ 4-5.].

Importantly, throughout that time, the Arbitration Provision has expressly and unmistakably delegated arbitrability challenges to an Arbitrator: "**As explained in the AAA Rules, the arbitrator shall determine the scope and enforceability of this Arbitration Agreement, and the arbitrability of any disputes**" (the "Delegation Provision").  [ECF No. 62-2, Exh. G § 12.7 (emphasis added); *see also id.*, Exh. D § 12(1)(b), (4)(f).]  Rule 7 of the AAA Rules also explicitly provides that an Arbitrator (not a court) must rule on "**any objections with respect to the existence, scope, or validity of the arbitration agreement** or to the arbitrability of any claim," and Rule 7 gives an Arbitrator "**the power to determine the existence or validity of a contract of which an arbitration clause forms a part**."

---

[1] Felix Valdez's 2008 Distributor Agreement also contained an arbitration provision.

2

The Delegation Provision could not have been more "clear and unmistakable." Indeed, the simple incorporation of the AAA Rules into an arbitration provision, without more, is a clear and unmistakable agreement that "the arbitrator should decide whether the arbitration clause is valid." *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005). Here, the Arbitration Provision **both** incorporates the AAA Rules **and** expressly delegates authority to an arbitrator.[2]

Moreover, the Delegation Provision is not "independently unconscionable." Although some courts have held that "[e]ven if a delegation of arbitrability is clear and unmistakable it may be found unenforceable," that is only true if "the delegation itself is unconscionable." *See, e.g.*, *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 419 (N.D. Cal. 2015). In other words, the unconscionability defense must relate specifically to the delegation clause itself, separate and apart from the rest of the Arbitration Provision. Plaintiffs do not even argue that the Delegation Provision is independently unconscionable; indeed, it is not.

In *Saravia*, the court found a delegation clause to be independently unconscionable where (1) incorporation of the AAA Rules was the "sole basis" for delegation; (2) all arbitration proceedings were in the company's hometown; (3) claimants were required to pay half of the arbitration fees; and (4) the company was entitled to recover its attorneys' fees. 310 F.R.D. at 420-22. The Delegation Provision here, however, contains none of those hallmarks: (1) the delegation is explicit and the AAA Rules provide a secondary basis for delegation; (2) arbitration proceedings occur in the Distributor's home county; (3) Herbalife pays all arbitration fees for claims under $75,000; and (4) Herbalife is not entitled to recover its attorneys' fees.[3] [*See* ECF No. 62-2, Exh. G § 12; *see also id.* Exh. D § 12.]

---

[2] Plaintiffs' assertion that the question of "unconscionability" is not delegated to an Arbitrator—because "arbitrability" is ambiguous—is puzzling. The text of the Delegation Provision is not limited to "arbitrability" but also encompasses all determinations of "scope," "enforceability," "existence," and "validity." [ECF No. 62-2, Exh. G § 12.7; *id.* Exh. D]; *see Terminix*, 432 F.3d at 1332 (incorporation of the AAA Rules is a clear and unmistakable agreement that the arbitrator must decide issues "with respect to the existence, scope or validity of the arbitration agreement").

[3] Plaintiffs are really challenging the Arbitration Provision's **enforceability**, not that they "never actually agreed to be bound." Only the latter argument could potentially be a basis for challenging delegation to the Arbitrator. *See, e.g.*, *Bruni v. Didion*, 160 Cal.App.4th 1272,

3

### III. EVEN IF THE COURT CONSIDERS PLAINTIFFS' CHALLENGES TO ARBITRATION, NONE OF THEM ARE LEGALLY SUSTAINABLE.

#### A. The Terms of Use of Herbalife's Website Do Not Preempt All Agreements With Plaintiffs.

Plaintiffs strain credibility when they assert that the terms of use contained on Herbalife's website (the "Terms") supersede all other policies and agreements between the parties. Indeed, Plaintiffs themselves admit that the Terms do not "apply to this dispute"—and for good reason. [ECF No. 86 at 10, n.17.] The Terms have a narrow application; they simply "set[] forth the legal terms and conditions governing [the] use of [Herbalife's] website" and the purchase of products and services through the website. [ECF No. 86-8 at 1.] In contrast, Plaintiffs' claims here relate to their operations and compensation as Distributors, which are governed by the Rules. In fact, if the Terms really did apply to this dispute, then Plaintiffs would be bound by the Terms' 90-day limitations period, which would bar all of Plaintiffs' claims.

Undeterred, Plaintiffs point to the integration clause in the Terms and argue that the Terms "expressly supersede all prior agreements between the parties." [ECF No. 86 at 10.] But even that clause recognizes that there are "Other Policies" incorporated by reference, and the integration clause expressly applies only to the "subject matter" of the Terms—*i.e.* **the use of the website**. Indeed, as explained by Herbalife employee Roxane Romans, the Terms are just one of many terms and conditions under which a Distributor must operate a distributorship. [ECF No. 81-1 at 73:12-74:16, 125:5-24.] As such, the fact that Herbalife may seek—under the Terms—to litigate, rather than arbitrate, claims relating to the use of the website does not abrogate its right to arbitrate in all other instances. *See, e.g.*, *Sargon Enters., Inc. v. Browne George Ross LLP*, 15 Cal.App.5th 749, 767-68 (2017) (party to arbitration agreement may "elect to initiate a civil action," rather than arbitrate for "many legitimate reasons" without "forfeiting the right to arbitrate").

Accepting Plaintiffs' contrary interpretation of the Terms would abrogate the Rules (and all other agreements and policies), including Plaintiffs' rights to purchase products and earn commissions as provided in the Rules and the Marketing Plan. General terms

---

1284-85 (2008) (court decides claims of fraud, forgery, unauthorized execution, or successor-in-interest questions).

governing the use of a website do not, and cannot, preempt the parties' more specific contract governing operation of a distributorship, especially given the thousands of dollars in products ordered and commissions earned by the Plaintiffs pursuant to the Rules in the years since the Arbitration Provision was enacted.  [ECF No. 62-3 ¶¶ 6-8, 10-11; ECF No. 82-2 ¶¶ 4-5]; *accord Prouty v. Gores Tech. Grp.*, 121 Cal.App.4th 1225, 1234 (2004) (holding that specific provisions supersede contradictory general provisions).  Undoubtedly, such preemption was not the intent of the parties.  Plaintiffs' citation to *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) ("*Dasher I*") is therefore inapposite.  In *Dasher I*, the parties entered into an **entirely new version of the sole agreement** between them, which clearly indicated the parties' intent to supersede the prior version of that agreement.  745 F.3d at 1117-18.  Because the new and superseding version of **that agreement** did not mention arbitration, the 11th Circuit (applying North Carolina law) held that the parties abrogated their right to arbitration under the earlier version of the agreement.  *Id.*  That is not what happened here.

        **B.**    **The Arbitration Provision is Enforceable.**

All of the Plaintiffs—even the few that joined Herbalife before the Arbitration Provision was adopted—purchased product and earned commissions as Distributors **for years after the Arbitration Provision was adopted**.  Under the circumstances, there is nothing illusory or unconscionable about requiring Plaintiffs to arbitrate their claims here.

        **1.**    **The Arbitration Provision is Not Illusory.**

A unilateral right to amend an arbitration provision does **not** render a provision illusory, so long as it is "subject to limitations, such as fairness and reasonable notice." *Harris v. Tap Worldwide, LLC*, 248 Cal.App.4th 373, 385 (2016) (holding that an arbitration provision in an employee handbook that could be unilaterally amended was not illusory where amendments only applied proactively with thirty days' notice).  In fact, it is well-established California law that "[a]n arbitration agreement that expressly **exempts** all claims, accrued or known, from contract changes is **valid and enforceable**," even without notice. *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal.App.4th 1425, 1465 (2012) (emphasis added).

The Arbitration Provision mirrors the "valid and enforceable" language required by California law.  The 2014 Arbitration Provision (relevant only to Izaar Valdez) and the 2016

Arbitration Provision (relevant to all other Plaintiffs) provide that amendments do not apply "**to claims that have accrued or are otherwise known** to Herbalife at the time of the amendment." [ECF No. 62-2, Exh. D § 12(7) (emphasis added); *id.*, Exh. G § 12.9 (emphasis added).][4] The Arbitration Provision therefore contains the necessary savings language to prevent it from being illusory.[5] Moreover, California law does not require notice, Herbalife did provide notice of the changes. [*See* ECF No. 62-2, Exhs. B, E, and H.][6]

It is sophistry for Plaintiffs to argue that their claims were known to Defendants in 2013 in an effort to escape application of the Arbitration Provision. Only four named Plaintiffs (Jeff and Patricia Rodgers, Felix Valdez, and Izaar Valdez) had even signed up as Distributors by 2013.[7] Those four Plaintiffs cannot possibly argue that their claims accrued and were known to Defendants in 2013; if that were true, their claims would be barred by the applicable statutes of limitations. Further, Plaintiffs misconstrue Herbalife's arguments

---

[4] For a brief period after it was first enacted, the Arbitration Provision did not expressly provide that amendments would not apply to accrued or known claims. [*Compare* ECF No. 62-2, Exh. A § 29 *with id.* Exh. D § 12(6).] But even that early version (which Defendants are **not** seeking to enforce here) is not illusory. The right to amend only applied "on a prospective basis." [ECF No. 62-2, Exh. A at 63.] Also, "[a] unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant [of good faith and fair dealing] so that changes do not apply to such claims." *Peleg*, 204 Cal.App.4th at 1465.

[5] Plaintiffs argue that retroactivity language in some of the Distributor Agreements negates the impact of the savings language in the Rules. [ECF No. 86 at 8.] Plaintiffs are confusing the issues. That retroactivity language relates to the scope of the arbitration provision to which the parties agreed at the time those Distributors enrolled, and has no application to subsequent amendments. [*See* ECF No. 62-2, Exh. J at 7-8; *id.*, Exh. L at 7-8.]

[6] Plaintiffs submitted *Dasher v. RBC Bank (USA)*, 882 F.3d 1017 (11th Cir. Feb. 13, 2018) as supplemental authority. [ECF No. 90.] In *Dasher*, however, the Eleventh Circuit (applying North Carolina law) upheld a denial of a motion to compel arbitration where the company had attempted to amend the operative contract **during litigation** and **retroactively enforce it** to the **then-pending claims**. 882 F.3d at 1023-26. Further, the company there unilaterally imposed the amendment by sending it directly to the plaintiff—even though he was represented by counsel—and then took his non-response as consent. *Id.* That set of facts is not remotely applicable here.

[7] Although Jennifer Ribalta was a Distributor prior to 2013, she was excluded from the *Bostick* settlement because she is a Global Expansion Team or "GET" member, one of the highest-achieving groups of Distributors. [*See* ECF No. 63 at 5 n.3.]

6

in its Motion to Dismiss. Herbalife never argued that these Plaintiffs' claims were known to anyone, let alone Herbalife, in 2013. [*See* ECF No. 70 at 3-5.] Instead, Herbalife argued that these Plaintiffs' claims were barred by the *Bostick* release, because that release extended to "all claims … known or **unknown**" as of **September 18, 2015**. [*Id.* at 4.] Whether Plaintiffs' claims accrued or were known in 2013 is not at issue in determining whether they were within the scope of the *Bostick* release.

### 2. The Arbitration Provision is Not Unconscionable.

Under California law, Plaintiffs must show both procedural and substantive unconscionability. *See Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012). "[P]rocedural unconscionability requires oppression or surprise" and substantive unconscionability requires terms "so one-sided as to shock the conscience." *Id.* There has been no oppression or surprise here, where Distributors are (and always have been) required to follow the Rules in order to earn commissions and purchase products from Herbalife. As to substantive unconscionability, Plaintiffs' only cited authority, *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, **has been expressly reversed by the Ninth Circuit**, which correctly noted that even a seemingly unfettered right to modify (which Herbalife does not have) is not unconscionable because of the implied covenant of good faith and fair dealing. 2018 WL 832864, at *1 (9th Cir. Feb. 13, 2018).

With no way to establish traditional unconscionability, Plaintiffs are left arguing that the Arbitration Provision is unconscionable as to the Plaintiffs who signed up before the Distributor Agreement contained an arbitration provision—because they purportedly never assented to it or signed it.[8] [ECF No. 86 at 16-18.] But well-established California law holds that "[a] signed agreement [to arbitrate] is not necessary ... and a party's acceptance may be implied in fact." *Pinnacle*, 282 P.3d at 1224; *see also Craig v. Brown & Root, Inc.*, 84 Cal.App.4th 416, 420-22 (2000) (employee is bound by an arbitration agreement with an employer where the employee continues to work for the employer after it is enacted).

While Plaintiffs quibble over whether notice of the Arbitration Provision in the Rules was provided one month or three months after adoption, they completely ignore the fact

---

[8] Plaintiffs' unconscionability arguments—even if they had merit—cannot possibly apply to the four Plaintiffs (Cody Pyle, Felix Valdez, and Jennifer and Michael Lavigne) who signed up when an arbitration provision was in effect and in their Distributor Agreements.

that they each continued operating as Distributors **for years after the Arbitration Provision was adopted**. And none of them deny having notice of or access to the Rules. Their consent to arbitrate claims covered by the Arbitration Provision is thus implied in fact. *See Craig*, 84 Cal.App.4th at 420-22; *Asmus v. Pac. Bell*, 999 P.2d 71, 79 (Cal. 2000) ("Continuing to work after the policy termination and subsequent modification constituted acceptance of the new employment terms."); *Harris*, 248 Cal.App.4th at 384 (employee handbook arbitration provision was enforceable where plaintiff was offered employment under the handbook terms and "unequivocally accepted the offer … by commencing to work").

Even beyond any implied-in-fact acceptance, Plaintiffs' Distributor Agreements expressly incorporated the Rules (in their most up-to-date form) by reference. It is only this second, **additional** form of consent that Plaintiffs even attempt to challenge, relying on *Badie v. Bank of Am.*, 67 Cal.App.4th 779 (1998). In *Badie*, a bank sought to unilaterally add a retroactive ADR clause to its customers' credit account agreements. *Id.* at 785-87. The modification provision allowed the bank to change "any" term. *Id.* at 800. But the original agreement did not address dispute resolution at all—only matters integral to the bank-customer relationship. Thus, the agreement was not "sufficient to put a customer on notice" that dispute resolution was "among the 'terms' of the agreement that the Bank [had] the right to change." *Id.* at 801. The court invalidated the ADR clause because it was not "one of those things concerning which the parties intended to contract." *Id.* at 801.

By contrast, Plaintiffs' original contracts (Distributor Agreements and incorporated Rules) governed the entire relationship between Distributors and Herbalife. And those Distributor Agreements—even the ones that did not contain an arbitration provision—**actually addressed the method and forum for dispute resolution**; therefore, that topic was "one of those things concerning which the parties intended to contract."

C. **Defendants Are Not Barred From Enforcing the Arbitration Provision as a Result of Herbalife's Settlement in *Bostick*.**

Plaintiffs misconstrue Herbalife's position in *Bostick*, but even that does not save their arguments.[9] The *Bostick* action was filed on April 8, 2013, **at a time when neither**

---

[9] Plaintiffs' judicial estoppel argument based on *Bostick* does not concern Plaintiffs Cody Pyle, Felix Valdez, and Jennifer and Michael Lavigne who are separately bound by the

8

**Herbalife's Distributor Agreements nor its Rules contained an arbitration provision**. [ECF No. 67-1.]  Arbitration provisions were later added to Herbalife's Distributor Agreements and Rules in August 2013, several months after the *Bostick* action commenced and the parties had engaged in motion practice.  [ECF No. 62 at 4.]  The *Bostick* settlement excluded Herbalife distributors who signed an arbitration agreement after the initiation of the *Bostick* action.  [ECF No. 61-3 at 3.]

The objectors to the *Bostick* settlement contended that, to the extent Herbalife sought to enforce the new arbitration provision in the Distributor Agreements **retroactively** against Distributors who had joined Herbalife and asserted claims prior to its adoption, then no Herbalife Distributors could be part of a settlement class or have standing to represent such a class.  [ECF No. 86-2 at 5; ECF No. 86-9 at 10:7-14.]  Herbalife responded that it did not seek to enforce the arbitration provision in the Distributor Agreements retroactively against Distributors whose claims in *Bostick* already had been asserted in the pending litigation before the arbitration provision went into effect.  The Herbalife statements that are quoted in Plaintiffs' opposition brief reflect only this uncontroversial position.

In any case, the elements of judicial estoppel are not met here.  First, Herbalife's position that the Arbitration Provision in the Rules binds Plaintiffs is not "clearly inconsistent" with any position it took in *Bostick*.  [ECF No. 86 at 15.]  The prospective enforcement of the Arbitration Provision, with respect to claims asserted more than three years after the provision was added to the Rules, was never at issue in *Bostick*.  Second, Herbalife did not mislead the *Bostick* court "to get a favorable settlement approved." *Id*.  To the contrary, a more favorable settlement for Herbalife would have included the new Herbalife Distributors who had signed arbitration agreements during the *Bostick* litigation, as evidenced by the fact that these Distributors are now bringing claims against Herbalife based on allegations similar to those raised in *Bostick*.  [ECF No. 70 at 3-4.]  Third, Herbalife will not gain an "unfair advantage" based on its purportedly inconsistent positions.  [ECF No. 86 at 15.]  The four Plaintiffs who are *Bostick* class members, and therefore released their claims brought in this action, were members of the *Bostick* class **prior** to Herbalife's adoption of an

---

arbitration agreements they signed.  Moreover, judicial estoppel would apply only to Herbalife, not the Individual Defendants.

9

arbitration provision. [*See* ECF No. 70 at 3-5; ECF No. 63-2 at 5, 37, 42, 53.] Herbalife did not attempt to assert (nor could it have) an arbitration provision retroactively in connection with those Plaintiffs' claims, as those claims had already been raised in federal court before any such provision existed. With respect to the several Plaintiffs who signed arbitration agreements after the commencement of the *Bostick* action, Herbalife agreed to exclude them from the *Bostick* settlement. In other words, Herbalife has not selectively enforced the Arbitration Provision in the Rules to preserve any benefit from the *Bostick* settlement.

### D. Plaintiffs Are Equitably Estopped from Avoiding Arbitration with the Individual Defendants.[10]

Plaintiffs cherry-pick a few phrases from case law to attempt to limit equitable estoppel to breach of contract actions. That effort is unavailing. *See, e.g.*, *Molecular Analytical Sys. v. Ciphergen Biosys., Inc.*, 186 Cal.App.4th 696, 715 (2010) (whether claims are "cast in tort rather than contract does not avoid the arbitration clause"). Indeed, California law permits a non-signatory to an arbitration agreement to compel arbitration when either (1) the signatory must rely on the terms of a written agreement with an arbitration provision to assert its claims against the non-signatory; or (2) the signatory alleges "substantially interdependent and concerted misconduct between a nonsignatory and a signatory," which is intimately connected with the underlying agreement." *Goldman v. KPMG LLP*, 173 Cal.App.4th 209, 219, 221 (2009). Both of those avenues are present here.

First, despite Plaintiffs' arguments to the contrary, their contracts with Herbalife (the Rules and the Marketing Plan) are the **only** basis for Plaintiffs' claims that Defendants misled them into believing that they would earn substantial money as Distributors if they attended Herbalife events. Second, Plaintiffs do not dispute—and thus impliedly concede—that their claims against the Individual Defendants are based on allegations of interdependent misconduct (*i.e.*, operation of a RICO enterprise) between them and Herbalife that is intimately connected to the Rules and the Marketing Plan. [*See* ECF No. 62 at 16-17.] Plaintiffs are thus equitably estopped from avoiding arbitration with the Individual Defendants.

---

[10] Plaintiffs do not dispute that their claims against the Individual Defendants are within the scope of the Arbitration Provision. [ECF No. 62 at 12-14.]

### IV. CONCLUSION.

For the foregoing reasons, Defendants respectfully urge the Court to compel Plaintiffs to arbitrate their claims rather than litigating in this forum.

Date:  March 14, 2018

Respectfully submitted,

**QUARLES & BRADY, LLP**
*Attorneys for Individual Defendants*
101 E. Kennedy Boulevard, Suite 3400
Tampa, FL  33602
Telephone:  (813) 387-0300
Facsimile:  (813) 387-1800

By:  */s/ Zachary S. Foster*
**ZACHARY S. FOSTER**
Florida Bar No. 111980
Zachary.Foster@quarles.com
**S. DOUGLAS KNOX**
Florida Bar No. 849871
Douglas.Knox@quarles.com

**QUARLES & BRADY, LLP**
*Attorneys for Individual Defendants*
Two North Central Avenue
Phoenix, AZ  85004
Telephone:  (602) 229-5200
Facsimile: (602) 229-5690

**KEVIN D. QUIGLEY**
Arizona Bar No. 015972
*Admitted Pro Hac Vice*
Kevin.Quigley@quarles.com
**EDWARD SALANGA**
Arizona Bar No. 020654
*Admitted Pro Hac Vice*
Edward.Salanga@quarles.com
**BRIAN A. HOWIE**
Arizona Bar No. 026021
*Admitted Pro Hac Vice*
Brian.Howie@quarles.com
**MICHAEL S. CATLETT**
Arizona Bar No. 025238
*Admitted Pro Hac Vice*
Michael.Catlett@quarles.com

**KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.**
*Co-Counsel for Herbalife Defendants*

        201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428

By: */s/ Todd A. Levine*
**TODD A. LEVINE**
Fla. Bar No. 899119
tlevine@klugerkaplan.com
**STEVE I. SILVERMAN**
Fla. Bar No. 516831
ssilverman@klugerkaplan.com
**ERIN E. BOHANNON**
Fla. Bar No. 90912
ebohannon@klugerkaplan.com


**BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW, P.C.**
*Co-Counsel for Herbalife Defendants*
1875 Century Park East
Suite 2300
Los Angeles, CA  90067
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

By: */s/ Mark T. Drooks*
**MARK T. DROOKS**
*Admitted Pro Hac Vice*
mdrooks@birdmarella.com
**PAUL S. CHAN**
*Admitted Pro Hac Vice*
pchan@birdmarella.com
**GOPI K. PANCHAPAKESAN**
*Admitted Pro Hac Vice*
gpanchapakesan@birdmarella.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing Reply in Support of Defendants' Joint Motion to Compel Arbitration was served electronically using the CM/ECF system, on March 14, 2018, on all electronic filing to all counsel or parties of record on the service list.

## SERVICE LIST

Etan Mark, Esq.
Donald J. Hayden, Esq.
Lara O'Donnell Grillo, Esq.
*Attorneys for Plaintiffs*
MARK MIGDAL & HAYDEN
80 S.W. 8th Street, Suite 1999
Miami, FL, 33130
don@markmigdal.com
lara@markmigdal.com
etan@markmigdal.com

Mark T. Drooks, Esq.
Paul S. Chan, Esq.
Gopi K. Panchapakesan, Esq.
*Attorneys for Herbalife Defendants*
(pending admission *pro hac vice*)
BIRD MARELLA
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
mdrooks@birdmarella.com
pchan@birdmarella.com
gpanchapakesan@birdmarella.com

Steve I. Silverman, Esq.
Todd A. Levine, Esq.
Erin E. Bohannon, Esq.
*Co-Counsel for Herbalife Defendants*
KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.
201 South Biscayne Boulevard, Suite 2700
Miami, FL 33131
ebohannon@klugerkaplan.com
tlevine@klugerkaplan.com
ssilverman@klugerkaplan.com

    /s/ Zachary S. Foster
    Attorney

QB\50978745.7