UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 1:17-cv-23429-MGC-JG**

JEFF RODGERS, *et al.*,

    Plaintiffs,

vs.

HERBALIFE LTD., *et al.*,

    Defendants.

_____/

**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION
TO TRANSFER VENUE TO THE CENTRAL DISTRICT
OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A)**

**I.    INTRODUCTION**

Defendants have moved to transfer venue of this action to the Central District of California on two separate grounds. Plaintiffs' Response in Opposition to Defendants' Joint Motion to Transfer Venue [D.E. 98] fails to overcome either basis for transfer.

First, four of the Plaintiffs (Patricia Rodgers, Jeff Rodgers, Izaar Valdez, and Jennifer Ribalta) entered into Herbalife Distributorship Agreements that contain an undisputedly valid forum selection clause, selecting California as the exclusive forum for resolving all disputes related to their distributorships.[1] Defendants seek to transfer venue on that basis. These Plaintiffs now argue their Distributorship Agreements are irrelevant because their attendance at "Circle of Success" events was supposedly unrelated to their distributorships and their pursuit of the Herbalife business opportunity pursuant to their distributorships. Plaintiffs' position defies both logic and their own allegations. Each of these Plaintiffs attended these events as Herbalife distributors—a status they obtained by virtue of their

---

[1] The other four Plaintiffs, Jennifer Lavigne, Michael Lavigne, Cody Pyle, and Felix Valdez, entered into Distributorship Agreements containing an arbitration provision. Defendants have moved to compel arbitration as to these Plaintiffs, and as to all of the other named Plaintiffs, because Herbalife's Rules of Conduct, to which all Herbalife distributors are bound, contain an arbitration provision. [D.E. 62]. Defendants' Joint Motion to Transfer Venue has been filed in the alternative, and without waiving their Joint Motion to Compel Arbitration, to the extent any of the Plaintiffs are not ordered to arbitration.

Distributorship Agreements—purportedly to attain "life changing financial success with the multi-level marketing *business opportunity*" provided by Herbalife. Only Herbalife distributors can participate in its business opportunity program, and in this lawsuit Plaintiffs are seeking to recover their purported losses in pursuing this opportunity.[2] The Distributorship Agreements (and their forum selection clause) are therefore central to, and clearly encompass, the alleged conduct in this case.

Plaintiffs also ask the Court not to enforce the forum selection clause because Florida is the supposed "nerve" center of this case. But Florida's principal connection to this case is simply as Plaintiffs' preferred forum. Plaintiffs seek to certify a nationwide class action, and allege attendance at events across the country. This case is fundamentally about the propriety of Herbalife's business practices, something that California, where Herbalife is headquartered, has a far greater interest than Florida in adjudicating.

Second, Herbalife has moved to transfer *this entire action* under 28 U.S.C. § 1404(a) for reasons of judicial economy and the interest of justice, because four of the Plaintiffs (Patricia Rodgers, Jeff Rodgers, Izaar Valdez, and Felix Valdez) released their claims in the *Bostick* class action settlement, and *all of the Plaintiffs' claims* potentially implicate the FTC consent decree upon which Plaintiffs rely extensively in the Complaint.[3] The District Court for the Central District of California retains exclusive jurisdiction over the construction and enforcement of both the *Bostick* judgment and FTC consent decree. Maintaining any part of this action in Florida creates the risk of inconsistent rulings in this case and in future cases that may implicate either related action.

Plaintiffs argue that a transfer of this entire action to the Central District of California would inconvenience those Plaintiffs who reside in Florida. Again, Plaintiffs exaggerate Florida's connection to this case. Of the four individuals who did not agree to forum selection clauses, *only one* is from Florida. The other three are from Ohio and Oklahoma.

Ultimately, in the face of overwhelming evidence supporting a transfer, Plaintiffs cannot articulate a good faith reason as to why this case should remain in the Southern

---

[2]   Plaintiffs admit that the forum selection clause "cover[s] the purchase of Herbalife's product and pursuit of its so-called business opportunity." [D.E. 98 at 6].

[3]   Defendants have separately moved to dismiss these four Plaintiffs' claims on the ground that they are barred by the *Bostick* settlement release. [D.E. 70 at 3-9; D.E. 68 at 14-15].

District of Florida. If this Court does not compel arbitration of any portion of this case, any remaining portion should be transferred to the Central District of California.

## II. ARGUMENT

### A. Plaintiffs Patricia Rodgers, Jeff Rodgers, Izaar Valdez, and Jennifer Ribalta Must Litigate Their Claims in California Pursuant to a Valid Forum Selection Clause.

#### 1. *Atlantic Marine* Governs These Four Plaintiffs' Claims.

*Atlantic Marine* provides that where the parties have agreed to a valid forum selection clause, a motion to transfer venue under § 1404(a) should be denied "only under extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). In such cases, a court must afford the plaintiff's choice of forum "no weight," and "should not consider arguments about the parties' private interests." *Id.* at 63. Therefore, "a district court may consider arguments about public-interest factors only." *Id.* at 64. Plaintiffs invite the Court to ignore *Atlantic Marine* as to the four Plaintiffs who signed agreements containing a forum selection clause simply because they have made the tactical decision to join a lawsuit with other Herbalife members who did not sign one. That is not what the cases provide.

Defendants do not seek to enforce the forum selection clause against all eight Plaintiffs, just the four who signed agreements containing such a clause. *Atlantic Marine* plainly governs the claims brought by the latter group, as even the cases Plaintiffs cite make clear. *See Elite Advantage, LLC v. Trivest Fund, IV, L.P.*, No. 15-22146-CIV, 2015 WL 4982997, at *9 (S.D. Fla. Aug. 21, 2015) (finding that *Atlantic Marine* "applies to the claims brought by" the plaintiff who entered into a forum selection clause, and "under the modified analysis of *Atlantic Marine*," that plaintiff "has not come anywhere near demonstrating the 'extraordinary circumstances *unrelated to the convenience of the parties*' required for the Court to deny transfer in accordance with a valid forum-selection clause.") (quoting *Atlantic Marine*, 517 U.S. at 62) (emphasis added).[4]

---

[4] The remaining cases cited by Plaintiffs in support of their contention that *Atlantic Marine* does not apply here involve motions to sever and transfer. These cases are inapposite because Defendants do not seek severance, but instead seek to transfer this ***entire action*** under the traditional § 1404(a) analysis.

> **2.  Plaintiffs' Claims Fall Within the Scope of the Broad Forum Selection Clause Contained in Their Distributorship Agreements.**

Plaintiffs Patricia Rodgers, Jeff Rodgers,[5] Izaar Valdez, and Jennifer Ribalta do not challenge the validity of the forum selection clause contained in their Distributorship Agreements with Herbalife, which provides that "any claim shall be resolved exclusively" in state or federal court in Los Angeles, California. Nor can they dispute that each of them was an Herbalife distributor while attending the events alleged in the Complaint. [D.E. 63 at 10-11]. Rather, they disingenuously contend that their claims fall outside the scope of the clause because their claims purportedly concern the Herbalife "event system," not their distributorships. A simple review of their own Complaint, however, reveals otherwise.

Plaintiffs themselves allege that this case is fundamentally about purported misrepresentations that Herbalife and the Individual Defendants made to the Plaintiffs about the nature of the Herbalife business opportunity—an opportunity that is available only to Herbalife distributors.[6] *See* [D.E. 1 at ¶ 3] ("Herbalife ***business opportunity participants*** are told that they must 'attend every event' if they want to be successful; and that they must 'qualify' for special treatment at these events by making large monthly purchases of Herbalife's products) (emphasis added); [*Id*. at ¶ 6] ("Defendant Mark Addy concisely stated the mantra that is used to deceive thousands of ***Herbalife distributors*** and potential recruits in the U.S. every year: 'If you go to all the events, you qualify for everything – you will get rich.'") (emphasis added); [D.E. 63-2 (Romans Decl.) at ¶ 11].

---

[5]   Plaintiffs erroneously contend that Mr. Rodgers's claims are based "on his own attendance" at events separate and apart from his wife's distributorship. [D.E. 98 at 7 n.4]. As noted in the Joint Motion to Transfer Venue, the reason Mr. Rodgers does not have a separate Distributorship Agreement is because Herbalife prohibits spouses from maintaining their own distributorships. [D.E. 63-2 at ¶ 8]. Consequently, Mr. Rodgers was added to his wife's distributorship. *See* excerpt of deposition transcript of Silvia Ramirez ("Ramirez Depo Tr."), a true and correct copy of which is attached hereto as **Exhibit "A,"** at 44:2-21. Plaintiffs' contention is also belied by their allegations that the Rodgers attended Herbalife events together "[i]n their pursuit of the Herbalife business opportunity" and seek to recover over $100,000 in purported losses in pursuing this opportunity. [D.E. 1 at ¶¶ 158, 163].

[6]   The Complaint references the term "distributor" or "distributors" ***110 times***, and "business opportunity" ***83 times***. Plaintiffs' attempt to make this case about something other than their pursuit of the Herbalife business opportunity is a desperate distortion of their own Complaint.

Plaintiffs cannot seriously contend, on the one hand, that they were misled into believing that Herbalife's "multi-level marketing *business opportunity*" presented them with a "guaranteed pathway to attaining life changing financial success" and, on the other hand, that the Distributorship Agreements that undisputedly govern their pursuit of that opportunity do not also govern their claims in this action. [*Id.* at ¶ 2] (emphasis added); [D.E. 98 at 6] (admitting that the forum selection clause governs "the purchase of Herbalife's products and pursuit of its so-called business opportunity.").[7]

Plaintiffs' claims of injury also demonstrate their refusal to acknowledge the obvious, as they seek recovery of the losses they allegedly incurred in pursuing the Herbalife business opportunity. For example, the Rodgers Plaintiffs contend that they lost "more than $100,000 pursuing Herbalife's fraudulent and illusory *business opportunity*," alleging that "[a]t least $20,000 of those loses [sic] stem directly from their participation in the Circle of Success event cycle." [D.E. 1 at ¶ 163] (emphasis added). Not only do the Rodgers Plaintiffs seek $80,000 in damages relating to the purchase of Herbalife product, but they implicitly admit that the $20,000 in losses they allegedly incurred in attending "Circle of Success" events *are a subset of the losses they incurred in pursuing the Herbalife business opportunity*. [*See also id.* at ¶ 190] (Izaar Valdez contends "she spent more than $10,000 purchasing Herbalife products.").

The out-of-circuit cases Plaintiffs cite for the proposition that the forum selection clause contained in their Distributorship Agreements is not broad enough to cover their claims in this action are readily distinguishable. The plaintiffs in *Armco* alleged that the contract at issue was fraudulently procured. *Armco Inc. v. N. Atl. Ins. Co.*, 68 F. Supp. 2d 330, 338 (S.D.N.Y. 1999). In *Curwood*, the plaintiff sought remedies under a "separate contract." *Curwood Inc. v. Prodo-Pak Corp.*, No. 07-C-544, 2008 WL 644884, at *6 (E.D. Wis. Mar. 7, 2008). Here, Plaintiffs do not allege that their Distributorship Agreements were fraudulently procured or that a separate contract governs their claims.

Rather than stretch to find inapt, non-binding cases, the Court should look to the cases in this circuit that provide that a forum selection clause that encompasses "any lawsuit" should be read broadly to include claims "arising directly or indirectly from the

---

[7] Contrary to Plaintiffs' assertion, the "Terms of Use" of Herbalife's website are not applicable to this dispute. [*See* D.E. 91 at 4-5].

3502538.1                                      5

contractual relationship," including tort and extra-contractual claims. *See Am. Residential Equities, LLC v. Del Mar Datatrac, Inc.*, No. 08-20014-CIV, 2008 WL 11333097, at *3 (S.D. Fla. Mar. 13, 2008); *Pods, Inc. v. Paysource, Inc.*, No. 8:05-CV-1764-T-27EAJ, 2006 WL 1382099, at *2 (M.D. Fla. May 19, 2006). The clause at issue here, which encompasses "any claim," should be afforded a similarly broad construction.[8]

### 3. The Public Interest is Served by Transferring This Case to the Central District of California.

Under *Atlantic Marine*, the court must still evaluate whether the public interest is served by a transfer. *Atl. Marine*, 571 U.S. at 64. Plaintiffs erroneously contend that it is not because (1) Florida is the "nerve center" of this dispute and (2) transfer to California would result in parallel proceedings.

#### a. Florida is Not the "Nerve Center" of This Dispute.

Not only is Plaintiffs' "nerve center" theory unrecognized in the law, but this contention is belied by their own allegations. Indeed, Plaintiffs allege that Herbalife events "are held each month in *dozens of locations across the country*," that they attended events in numerous states besides Florida, and also seek to certify a nationwide class. [D.E. 1 at ¶ 2, ¶ 92] (citing testimonials from events held in Phoenix, Boston, Denver, and Chicago); [*Id.* at ¶¶ 169, 176] (alleging that Plaintiffs attended events in Ohio, Missouri, Michigan, Georgia, Oklahoma, Texas, California, and Nevada); [*Id.* at ¶ 330].

Moreover, because Herbalife is headquartered in California, it is California that has a "unique and compelling interest in adjudicating claims related" to Herbalife's business model and marketing practices. [*Id.* at ¶¶ 203, 348] ("The Circle of Success has a presence in most states, and it plays a central role in the business model of a multi-billion dollar publicly traded company."); *Amaya v. Victoria's Secret Stores, LLC*, No. 08-81367-CIV, 2009 WL 10667492, at *5 (S.D. Fla. Aug. 3, 2009).

---

[8] That Plaintiffs bring RICO and tort claims does not render the forum selection clause inapplicable here, as each of these claims is premised on the notion that Herbalife fraudulently induced Plaintiffs to invest money in the Herbalife business opportunity. To wit, the questions Plaintiffs contend are common to the putative class largely concern alleged misrepresentations and non-disclosures regarding the Herbalife business opportunity. [D.E. 1 at ¶ 333].

     **b.**  **There is No Risk of Parallel Proceedings if the Court Transfers Plaintiffs' Claims to the Central District of California.**

  Plaintiffs also contend incorrectly that there is a risk of parallel proceedings because only four of the Plaintiffs are subject to the forum selection clause, and the Individual Defendants lack standing to enforce the clause. Not so. There is no risk of parallel proceedings in California and Florida because Defendants seek to transfer the entire action under § 1404(a). The only reason the other four Plaintiffs are not subject to forum selection clauses is because their Distributorship Agreements contain arbitration provisions. [D.E. 63-2, Exhs. C, D, G]. Defendants' Joint Motion to Compel Arbitration is pending. [D.E. 62].

  Second, the Individual Defendants have standing to invoke the forum selection clause under the principle of equitable estoppel, which "allows a nonsignatory to enforce the provisions of" a forum selection clause "when the signatory raises allegations of interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Blixseth v. Disilvestri*, No. 11-22459-CIV, 2013 WL 12063940, at *15 (S.D. Fla. Jan. 31, 2013). Because Plaintiffs allege that "Herbalife's Circle of Success is the product of a close association between Herbalife and its highest-ranking Distributors," as well as a purported RICO enterprise comprised of Herbalife and these high-ranking Distributors, the Individual Defendants may also seek to enforce the forum selection clause. [D.E. 1 at ¶¶ 138, 346]; *Blixseth*, 2013 WL 12063940 at * 16 (finding forum selection clause to be enforceable by non-signatory because "the claims for RICO violations and fraud . . . [and] negligent misrepresentations . . . are all based on the alleged interdependent and concerted conduct," and "the claims against [the non-signatory defendant] 'are based on the same facts and are inherently inseparable' from the claims against the signatories to the Agreements.") (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999)).

  Importantly, the only way to avoid the risk of inconsistent proceedings is to transfer this case to the Central District of California, which retains exclusive jurisdiction over the *Bostick* judgment and FTC consent decree. As discussed in more detail in the Joint Motion to Transfer Venue, and in Section II(B) below, because the adjudication of Plaintiffs' claims will require a court or an arbitrator to construe the release contained in the *Bostick* judgment

and the scope of the consent decree, maintaining any portion of this case in Florida creates the risk of conflicting rulings in this case and in future cases. [D.E. 63 at 15-18].

> B. **Transfer of the Entire Action to the Central District of California is Warranted Under § 1404(a) Because That Court Retains Exclusive Jurisdiction Over the *Bostick* Judgment and FTC Consent Decree.**
>
> > 1. **Plaintiffs Patricia Rodgers, Jeff Rodgers, Izaar Valdez, and Felix Valdez's Claims Fall Within the Scope of the *Bostick* Class Action Settlement Release.**

Plaintiffs give short shrift to the effect the *Bostick* class action settlement release has on their claims. They merely repackage a familiar refrain: the "Circle of Success" was not part of the *Bostick* action. Plaintiffs, however, altogether ignore both (a) the broad scope of that settlement release, which plainly bars the claims brought by Patricia Rodgers, Jeff Rodgers,[9] Izaar Valdez, and Felix Valdez, each of whom was a *Bostick* settlement class member, and (b) the striking similarities between the allegations in this case and in *Bostick*. [D.E. 63 at 5-7, 15-16].

As explained in detail in Defendants' pending Motions to Dismiss, the *Bostick* judgment releases all claims "known or unknown" as of September 18, 2015, that either were or could have been asserted in *Bostick*, or that are based on allegations that Herbalife, among other things, engaged in "false and/or misleading advertising," or operated a "fraudulent scheme."[10]  [D.E. 70 at 4-5; D.E. 61-3 at ¶ 12]. Plaintiffs' claims, which are fundamentally premised on the allegation that Defendants misrepresented the nature of the Herbalife business opportunity, manifestly fall within the scope of this release.

Moreover, the *Bostick* plaintiffs alleged that misrepresentations were made at the ***very same events*** that are the subject of Plaintiffs' Complaint, like the "Extravaganza" event. *See* [D.E. 61-1 (*Bostick* Amended Complaint)] at ¶ 166 ("You only have to put in the hard work along with the dedication, patience and discipline, attributes you can learn at the ***events***"); ¶¶ 174-177 (describing alleged misrepresentations made at Herbalife "***Extravaganza***" events);

---

[9]  To the extent Jeff Rodgers pursued the Herbalife business opportunity under his wife's distributorship, he is bound by the *Bostick* settlement release as her "agent" or "representative." [D.E. 1 at ¶¶ 158, 163]; Exh. A (Ramirez Depo. Tr. at 44:2-21); [D.E. 61-3 at ¶ 12].

[10]  Significantly, none of these four Plaintiffs alleges that he or she attended events after September 18, 2015.

¶ 214 (alleging Herbalife encouraged distributors to put money towards attending "*Training events/seminars*"); ¶ 302(f) (alleging that at "[t]*raining and events, such as the Extravaganza* . . . Herbalife distributors made material false representations regarding the 'business opportunity' and the success that a distributor could get through Herbalife by purchasing products and recruiting others to do the same."); [D.E. 1 (Complaint) at ¶¶ 55, 62, 84-89, 100, 112, 115, 123, 131, 169, 176, 189, 197-201] (referencing the "Extravaganza" event). Indeed, the plaintiffs in *Bostick* pled a nearly identical RICO claim in their original complaint, alleging an enterprise consisting of Herbalife and its "beneficiaries" and "promoters," including some of the *same Individual Defendants* in this action. [D.E. 67-1 ¶¶ 10-11, 236, 239].

Importantly, Defendants need not prove that these four Plaintiffs' claims are actually barred by the *Bostick* settlement release in order for the court to transfer this case. All Defendants need to show, as they have done, is that Plaintiffs' claims "plausibly fall" within the scope of the *Bostick* settlement release. *Freeman v. MML Bay State Life Ins. Co.*, No. 3:10-CV-66 JCH, 2010 WL 8961440 at *5-6 (D. Conn. July 15, 2010) (granting transfer to district court that retained jurisdiction over prior class action settlement, despite plaintiff's contention that the settlement was "facially inapplicable" to his claims); *Boys v. Mass Mut. Life Ins. Co.*, No. 2:12-CV-445, 2013 WL 3834010 at *4 (E.D. Tenn. July 24, 2013) (holding the same in order to "avoid[] inconsistent rulings.") In fact, were this Court to resolve this issue on Defendants' Joint Motion to Transfer Venue, it would present just the type of interference with the *Bostick* court's jurisdiction that the Motion seeks to avoid.[11]

## 2. The FTC Consent Decree Provides for Jurisdiction Over This Action in the Central District of California.

It is of no moment that Plaintiffs do not seek to enforce the FTC Consent Decree, because the decree is relevant to Herbalife's potential defenses. To the extent Herbalife has complied with that decree, which prohibits Herbalife from making misrepresentations about its business opportunity, this compliance would tend to show that Herbalife has not engaged

---

[11] Keeping this entire action in Florida would also run the risk that courts in future cases could reach inconsistent rulings regarding the scope of the *Bostick* settlement release. And if the Court were to transfer only those Plaintiffs' claims that are potentially barred by the *Bostick* settlement release, the Court would nevertheless have to adjudicate this issue as to the putative class should this case reach the class certification stage.

in the deceptive and unfair business practices alleged by Plaintiffs. [D.E. 61-5 at 14-17 (FTC Consent Decree)]. The best court to make that determination is the District Court for the Central District of California. [D.E. 61-5 at 29].

### 3. There are no Private Interest Factors that Weigh in Favor of Keeping this Action in the Southern District of Florida.

Because judicial efficiency and the interest of justice weigh so heavily in favor of transfer, a transfer should be granted without regard to whether private interests might be implicated by a transfer. *See Great Lakes Transportation Holding LLC v. Yellow Cab Serv. Corp. of Fla., Inc.*, No. 10-80241-CIV, 2012 WL 12930665, at *8 (S.D. Fla. Feb. 6, 2012); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

Nevertheless, Plaintiffs erroneously contend that the private interest factors militate against transfer, arguing that: (1) most of the physical evidence is in Florida and (2) a transfer would inconvenience them. First, it is irrelevant that some "physical" evidence may be found in Florida, as "the realities of electronic discovery and mandatory nature of electronic filing diminish any significance that the location of documents might have in deciding" a motion to transfer venue. *Iconic Leaf Cigars LLC v. Kendall*, No. 13-CV-23345-UU, 2013 WL 12093806, at *2 (S.D. Fla. Nov. 22, 2013). In any event, the bulk of the discovery obligations in this class action will fall on Herbalife, which is based in California. [D.E. 1 at ¶ 203].

Second, because four of the Plaintiffs entered into forum selection clauses and all of the Individual Defendants have consented to the transfer of this action, it is only the remaining four Plaintiffs whose interests the Court would evaluate. *See Atl. Marine*, 571 U.S. at 63; *Elite Advantage,* 2015 WL 4982997, at *9. Of these remaining Plaintiffs, **only one**, Felix Valdez, appears to reside in Florida. [D.E. 63-2, Exh. G at 1]. The remaining three Plaintiffs, Jennifer Lavigne, Michael Lavigne, and Cody Pyle, reside in Ohio and Oklahoma, respectively. [*Id.*, Exhs. C and D at 1]. These three Plaintiffs cannot plausibly contend that litigating this case in California, as opposed to Florida, would present a hardship. The choice of these three non-Florida residents to pursue this action in Florida therefore deserves "less weight," particularly because they are seeking to certify a nationwide class. *Elite Advantage,* 2015 WL at *10.

## III.    CONCLUSION

Defendants respectfully urge the Court to grant their Joint Motion to Transfer Venue and transfer this entire action (or whatever portion remains after resolution of Defendants' Joint Motion to Compel Arbitration) to the Central District of California.

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.**
*Co-Counsel for Herbalife Defendants*
201 S. Biscayne Blvd., Suite 2700
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428
By:  */s/ Todd A. Levine*
**STEVE I. SILVERMAN**
Fla. Bar No. 516831
*ssilverman@klugerkaplan.com*
**TODD A. LEVINE**
Fla. Bar No. 899119
*tlevine@klugerkaplan.com*
**ERIN E. BOHANNON**
Fla. Bar No. 90912
ebohannon@klugerkaplan.com

and

**BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW, P.C.**
*Co-Counsel for Herbalife Defendants*
1875 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110
By:  */s/ Mark T. Drooks*
**MARK T. DROOKS**
*Admitted Pro Hac Vice*
*mdrooks@birdmarella.com*
**PAUL S. CHAN**
*Admitted Pro Hac Vice*
*pchan@birdmarella.com*
**GOPI K. PANCHAPAKESAN**
*Admitted Pro Hac Vice*
*gpanchapakesan@birdmarella.com*

and

**QUARLES & BRADY, LLP**
*Attorneys for Individual Defendants*
101 E. Kennedy Boulevard, Suite 3400
Tampa, FL 33602
Telephone: (813) 387-0300
Facsimile: (813) 387-1800
By: */s/ S. Douglas Knox*
**S. DOUGLAS KNOX**
Florida Bar No. 849871
*Douglas.Knox@quarles.com*
**ZACHARY S. FOSTER**
Florida Bar No. 111980
*Zachary.Foster@quarles.com*

and

**QUARLES & BRADY, LLP**
*Attorneys for Individual Defendants*
Two North Central Avenue
Phoenix, AZ 85004
Telephone: (602) 229-5200
Facsimile: (602) 229-5690
**KEVIN D. QUIGLEY**
Arizona Bar No. 015972
*Admitted Pro Hac Vice*
*Kevin.Quigley@quarles.com*
**EDWARD SALANGA**
Arizona Bar No. 020654
*Admitted Pro Hac Vice*
*Edward.Salanga@quarles.com*
**BRIAN A. HOWIE**
Arizona Bar No. 026021
*Admitted Pro Hac Vice*
*Brian.Howie@quarles.com*
**MICHAEL S. CATLETT**
Arizona Bar No. 025238
*Admitted Pro Hac Vice*
*Michael.Catlett@quarles.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June <u>15</u>, 2018, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF and served on Etan Mark, Esq., Donald J. Hayden, Esq., and Lara O'Donnell Grillo, Esq. *Attorneys for Plaintiffs*, MARK MIGDAL & HAYDEN, 80 S.W. 8th Street, Suite 1999, Miami, FL, 33130 via transmission of Notices of Electronic Filing generated by CM/ECF.

By: <u>*/s/ Todd A. Levine*</u>
      Todd A. Levine, Esq.