**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:17-cv-23429-MGC**

PATRICIA RODGERS, et al.,
individually and on behalf of
all others similarly situated,

      Plaintiffs,

vs.

MARK ADDY, et al.

      Defendants.

_____/

**<u>DEFENDANTS' JOINT MOTION TO DISMISS AMENDED COMPLAINT</u>**

All Defendants in this case move, pursuant to Rule 12(b)(6), for an order dismissing the claims asserted in the Amended Complaint ("FAC," Dkt. 129).

## I.   INTRODUCTION.

This case is about 6 former Herbalife independent distributors who implausibly accuse 20 other independent distributors of federal racketeering and various state law causes of action in connection with Plaintiffs' attendance at various distributor training events. According to Plaintiffs, such trainings were worthless, and Plaintiffs seek to recover the money they spent attending them. Plaintiffs' claims all sound in fraud and thus must meet the stringent requirements of Rule 9(b). The FAC, however, falls woefully short of meeting that high standard. Among other failures, Plaintiffs' FAC uses generalized narratives, impermissible group pleading, and vague accusations—all of which obscure whom Plaintiffs seek to hold liable, for what alleged conduct, and on what legal theory. Indeed, Plaintiffs' FAC is replete with conclusory, repetitive allegations that paint all 20 Defendants— independent small business owners who sell Herbalife Nutrition products— with the same broad brush but contain none of the specific and legally required factual allegations as to each individual Defendant demanded by Rule 9(b). In fact, many key paragraphs in the FAC concern the conduct of "top distributors," a group identified only as "Herbalife's highest earners that play or have played a material role in the Herbalife event system." (Dkt. 129 ¶ 3.) As if that definition were not vague enough, Plaintiffs insufficiently add that the 20 Defendants are "a select subset" of that group. (*Id.*) In other words, many fundamental allegations in the FAC are not about the alleged conduct of one Defendant—or even the 20 Defendants collectively—but instead related to alleged conduct of a broader group of unknown identity. These allegations fall far short of what Rule 9(b) requires.

Plaintiffs' failure to satisfy Rule 9(b) is not a mere pleading technicality. Plaintiffs' counsel has had access to hundreds of thousands of pages of discovery from Herbalife and from many of the Defendants in this case.[1] Despite all of this information, they still have not

---

[1] As outlined in Defendants' Motion to Stay Discovery, for the last **two years**, Plaintiffs have taken **extensive** documentary and deposition discovery from Defendants (as well as from former defendants who Plaintiffs have now dropped from the FAC) and from Herbalife in

been able to identify with any specificity what each Defendant allegedly did wrong. That is a telling statement when one considers that Plaintiffs are accusing each Defendant of taking part in a massive criminal enterprise that supposedly defrauded thousands of people. Who did Defendants "defraud" and how? What did the Defendants say and to whom—and how was it false? The FAC contains no answers to these questions. Under the circumstances, the Court should dismiss the Amended Complaint in its entirety, without leave to amend.

Plaintiffs' RICO claims also fail because (1) each Defendant's alleged misconduct does not causally connect to Plaintiffs' injuries; (2) the FAC does not plausibly establish scienter for each Defendant; (3) the FAC does not plausibly allege a common fraudulent purpose shared by all members of the enterprise; and (4) no facts support that any Defendant willingly entered into a conspiracy to defraud Plaintiffs. Similarly, Plaintiffs' state law claims for consumer fraud, civil conspiracy, and unjust enrichment are also subject to dismissal for failure to meet Rule 9(b)'s heightened pleading standard and other, independent reasons.

Finally, the 4 new defendants Plaintiffs have added to the Amended Complaint— Alan Rodriguez, Mary Holloway, Alcides Mejia Jr., and Suzanne Morrow (collectively, the "New Defendants")—should all be dismissed from the case because Plaintiffs' claims against them do not relate back to the filing of the original complaint and are clearly time-barred.

For all of these reasons, the Court should dismiss the FAC, without leave to amend.

## II.   RELEVANT ALLEGATIONS

Each of the Plaintiffs is a former Herbalife distributor. (Dkt. 129, ¶¶ 21-25.) Plaintiffs contend that they attended numerous Herbalife-sponsored "Circle of Success" events since at least 2008. (*Id.*) Plaintiffs allege that an undefined group of "top distributors" collaborated with Herbalife to organize and produce monthly Circle of Success events across the country. (*Id.* ¶¶ 3, 13–14.) The Circle of Success events are "controlled" by a combination of Herbalife, an internal Herbalife committee known as the Strategy & Planning Committee ("S&P Committee"), and "a network of regional leadership committees." (*Id.* ¶¶ 11–12.)

_____

Plaintiffs' case against Herbalife, which is pending in the Central District of California, *Lavigne v. Herbalife LTD*, Case No. 2:18-cv-07480-JAK (MRWx) (the "California Lawsuit").

The S&P Committee has been in existence "since the very early days of the company," and meets at least once a month, with Herbalife employees and executives participating in and facilitating these meetings. (*Id.* ¶¶ 53-55.) Plaintiffs claim that each Defendant is or was a member of the S&P Committee and participated in certain S&P Committee meetings during the putative class period. (*Id.* ¶¶ 12, 53–65). Plaintiffs allege that the Circle of Success events were pitched as a "guaranteed pathway to attaining life changing financial success," and that they were encouraged by the "top distributors" to "attend every event" in order to achieve success even though Herbalife and the "top distributors" purportedly know there is "no recognized correlation between event attendance and success in Herbalife." (*Id.* ¶¶ 2, 8, 14.)

Plaintiffs claim that they attended numerous Circle of Success events based on various misrepresentations and omissions spread by a largely faceless group of presenters, speakers, and top distributors. (*Id.* ¶¶ 122, 131, 133, 142–43, 148, 159–60.) Plaintiffs contend that attending Circle of Success events is "valueless" and "worthless" and that the Herbalife business opportunity is "fraudulent" and "illusory" (*Id.* ¶¶ 16, 129, 136, 139). They seek damages for the amounts they spent on tickets for events and the costs they spent attending and "qualifying for" events. (*Id.* ¶¶ 279, 284, 300, 313, 326.) Based on these allegations, Plaintiffs bring claims under the federal RICO statute, the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), the Arizona Consumer Fraud Act ("ACFA"), and the Oklahoma Consumer Protection Act ("OCPA"), along with common law claims for unjust enrichment and civil conspiracy.

## III.   ARGUMENT.

### A.   Plaintiffs' Claims Must Satisfy Rule 9(b).

All of Plaintiffs' claims sound in fraud and therefore must satisfy the heightened pleading standard of Rule 9(b). The RICO claims are based on alleged predicate acts of wire fraud, which must be pled with particularity. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007); *see also Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x. 788, 790 (11th Cir. 2016) (predicate act allegations must include "the parties to, the place of, or the content of the wire communications, any misrepresentations made, or how the communications were entwined in the scheme to defraud"); *Brooks v. Blue Cross & Blue*

3

*Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (RICO plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud"). Similarly, a RICO conspiracy claim must be pled with particularity. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) ("[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity."); *see also Sterling Nat. Mortg., Co. v. Infinite Title Sols., LLC*, 2011 WL 1303225, at *5 (S.D. Fla. Mar. 4, 2011), *report and recommendation adopted*, 2011 WL 1222168 (S.D. Fla. Mar. 31, 2011) (holding that "the complaint's lack of the elements required under Rule 9(b) [was] fatal" to both RICO and RICO conspiracy claims).

The state consumer fraud claims also must satisfy Rule 9(b) because they are premised on fraudulent conduct. *See Wyndham Vacation Ownership, Inc. v. US Consumer Attorneys, P.A.*, 2019 WL 7837887, at *12 (S.D. Fla. July 3, 2019) (A FDUTPA claim must be pled in particularity where the claim sounds in fraud.); *Runton v. Brookdale Senior Living, Inc.*, 2017 WL 7311877, at *2 (S.D. Fla. July 10, 2017) (same); *Ellis v. Warner*, 2017 WL 634287, at *23 (S.D. Fla. Feb. 16, 2017) (same); *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) ("Rule 9 requires allegations of fraud be pled with particularity, even if they are brought under the [Arizona Consumer Fraud Act]."); *Parrish v. Bank*, 2016 WL 3906814, at *2 (W.D. Okla. July 14, 2016) (an Oklahoma Consumer Protection Act claim must be pled with Rule 9(b) particularity where is it based on fraud).

### B.    Plaintiffs' Section 1962(c) RICO Claim (Count I) Fails.

To state a civil RICO claim, "a plaintiff must establish 'three essential elements': first, that the defendant committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant's racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014). Plaintiffs also must plausibly allege a common fraudulent purpose of engaging in a course of conduct among the enterprise's alleged participants. *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1101 (S.D. Fla. 2019) (holding that the association-in-fact element requires that there be a "continuing unit that

4

functions with a common purpose" (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009))). Here, Plaintiffs failed to establish *any* of these three critical elements.

### 1.   The Allegations of Racketeering Activity Do Not Satisfy Rule 9(b).

To be liable under RICO, a defendant must have "participated in an illegal enterprise 'through a pattern of racketeering activity.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting 18 U.S.C. § 1962(c)). "Racketeering activity" includes "such predicate acts as mail and wire fraud." *Id.* (quoting 18 U.S.C. § 1961(1)). A "pattern" of such activity requires at least two "distinct crimes." *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1377 (S.D. Fla. 2012). "Each predicate act must be pled individually and be capable of standing on its own; i.e., it must contain all of the elements of the crime." *Id.* "The RICO claim, in other words, must read like a 'mini-indictment,' alleging separate 'counts' of mail or wire fraud." *Id.* at 1376.

Here, Plaintiffs attempt to allege predicate acts consisting of wire fraud. "[W]ire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental*, 605 F.3d at 1290 (quoting *Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991)*). Consistent with Rule 9(b), a plaintiff may not "lump" defendants together and must "inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia*, 482 F.3d at 1317; *see also see also Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217 (11th Cir. 2020) ("Moreover, blending the identities of the defendants in her allegations of fraud -- expecting us to read Petland's complicity into an allegation that specifically names only Petland Kennesaw -- is precisely the kind of vagueness in fraud pleadings Rule 9(b) was designed to prevent."); *Bray & Gillespie Mgmt/ LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1363 (M.D. Fla. 2007) ("When the complaint asserts claims against multiple defendants, it cannot merely 'lump together all of the defendants in their allegations of fraud.'") (quoting *Brooks*, 116 F.3d at 1317).[2] Here, Plaintiffs globally allege that "top distributors utilize the

---

[2] "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,

wires to promote event attendance to Plaintiffs and class members, to plan and organize specific events, to sell tickets and to hold regularly scheduled meetings of the S&P Committee." (Dkt. 129 ¶ 13.) But Plaintiffs do not present a "mini-indictment" for each Defendant that alleges details about at least two specific times that he or she used the wires in any of these ways. The FAC fails to meet the 9(b) pleading standard for multiple reasons.

First, throughout the FAC, Plaintiffs engage in impermissible group pleading, combining various groups of Defendants together when alleging predicate acts. (*E.g.*, Dkt. 129 ¶¶ 60-65.) As the most glaring example of this, Plaintiffs improperly lump together the Defendants who are ***spouses***. Instead of separately addressing each predicate act allegedly committed by Mark Addy and Jillian Addy; Cody Morrow and Suzanne Morrow; and Jorge de la Concepción and Disney di Martinez, Plaintiffs refer to conduct by "Morrow," "Addy," and "the couple." (*Id.* ¶¶ 60-65, 179.) This group pleading extends to all Defendants throughout the FAC and contravenes Rule 9(b). *Myers v. Provident Life & Accident Ins. Co.*, 2020 WL 3963891, at *18 (M.D. Fla. July 13, 2020) ("Plaintiff has improperly lumped together Defendants in their allegations of fraud. Further particularity is required.") (record citations omitted); *Omnipol, A.S. v. Worrell*, 421 F. Supp. 3d 1321, 1351 (M.D. Fla. 2019) ("Even looking at the Amended Complaint holistically, [it] is not specific enough regarding Worrell's involvement in the so-called scheme because Worrell gets lumped together with Benjamin Worrell and Brech in nearly all of the allegations.").

Second, Plaintiffs' rote, copied-and-pasted allegations that groups of Defendants "participated in . . . online meeting[s]" do not present a sufficiently-detailed "mini-indictment" for each Defendant's alleged wire fraud. (Dkt. 129 ¶¶ 60-65.) Instead of providing the required details about each Defendant's individual conduct vis-à-vis the meetings, Plaintiffs lump groups of Defendants together and describe what generally transpired in passive voice, as a way to hide their failure to identify who said what, to whom and when. [3] Because Plaintiffs have failed to describe each "online meeting" with

---

742 F.2d 786, 791 (3d Cir. 1984)). This purpose is especially germane here, where the dearth of specific facts makes Plaintiffs' selection of defendants seemingly random.

[3] *See* Dkt. 129 ¶ 60 ("attendance figures, qualifications, and special promotions were discussed"); ¶ 61 ("event agenda, qualifications, venues, and budgets were discussed and the

particularity—including but not limited to who organized the meeting, what (if anything) each Defendant said during the meeting, which specific event(s) were planned at the meeting, whether Plaintiffs attended events planned at the meeting, and each Defendants' specific role as a participant in the meeting—these allegations do not satisfy Rule 9(b). *See, e.g.*, *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1362 (S.D. Fla. 2015) ("Plaintiffs' argument that 'both Press and Silverman participated' in the telephone conversations and the issuance of the sham default letters is not enough. Defendants are entitled to know the specific allegations that are being brought against each individual Defendant, and as pleaded, Plaintiffs have failed to allege each Defendant's participation with particularity."); *Libov v. Readix, Inc.*, 2011 WL 13216996, at *1 (S.D. Fla. Sept. 8, 2011) ("Plaintiffs have engaged in impermissible group pleading by lumping all Defendants together, rather than differentiating between the individual Defendants in setting forth who made the alleged misrepresentations."). Indeed, Plaintiffs provide the Court with ***no*** information about each Defendant's alleged participation in each "online meeting"; the Defendants may well have dialed into the meetings and contributed absolutely nothing.

 <u>Third</u>, in the few instances where Plaintiffs allege a use of the wires in addition to participating in an "online meeting," Plaintiffs still omit essential details, such as the identities of the parties to the alleged communications and the manner in which the statements misled the Plaintiffs or furthered the scheme:

- Plaintiffs describe "an April 19, 2016 email exchange" between Defendant Holloway and "other members of the S&P Committee" in which Holloway states her opinion about sharing "result stories," but do not identify who received the email, how Holloway's opinion about "result stories" furthered the allege scheme, or how the email misled any Plaintiff or caused their injury. (Dkt. 129 ¶ 114.); *see Am. Dental*,

---

committee voted to keep January events semi-independent"); ¶ 62 ("ticket sales, qualifications, speaker selection, and the 'semi-corporate' nature of the January events were discussed"); ¶ 63 ("event qualifications, ticket sales, agendas, locations, and speakers were discussed"); ¶ 64 ("ticket sales, qualifications, and attendance were discussed"); ¶ 65 ("corporate support for Circle of Success events was discussed and the STS sub-committee reported back with a plan for STS growth and encouraged S&P members to participate in area STS leadership calls").

605 F.3d at 1290 ("Plaintiffs do not point to a single specific misrepresentation by Defendants regarding how Plaintiffs would be compensated in any of these communications, nor do they allege the manner in which they were misled by the documents, as they are required to do under Rule 9(b).").

- Plaintiffs allege that Defendant "Katz was the featured speaker in a nationwide teleconference promoting the importance of the [event] hosted by Herbalife on November 7, 2011," yet fail to identify the participants in the call or describe Katz's statements; moreover, the allegation is ambiguous as to whether the *call* occurred on November 7, or whether the call related to an *event* held on November 7. (*Id.* ¶ 207.)

- Plaintiffs allege that Defendants Wick and Grace participated in a call to promote "the upcoming Extravaganza," but do not identify the participants in the call, besides a reference to unknown, unidentified "members of [Sandy Gioiosa's] downline." (*Id.* ¶¶ 51, 152.) Plaintiffs do not even allege that they listened to this call. *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1281 (N.D. Ala. 2011), *aff'd sub nom. Green v. Bissell Homecare Inc.*, 476 F. App'x. 238 (11th Cir. 2012) ("[P]laintiffs do not allege any specifics as to the mail or wire fraud, and, likewise neglect to specify whether either named Plaintiff received the mail or internet advertisements.").

Fourth, as part of Defendants' supposed fraudulent scheme, Plaintiffs claim that "top distributors"[4] achieved success in Herbalife not through event attendance or through the techniques promoted at events, but rather through means that "are now, or always have been, forbidden by Herbalife's rules or the law." (*Id.* ¶¶ 15, 75, 94.) Plaintiffs provide a laundry list of ten "techniques" allegedly used, but do not specifically claim that any individual Defendants used these "techniques." (*Id.* ¶ 94.) Plaintiffs do not address even one Defendant individually to explain how she or he supposedly achieved success in Herbalife (completely independent of training events), much less create the plausible inference that the

---

[4] The Amended Complaint refers repeatedly to the alleged conduct of "top distributors," who, as noted above, are defined as "Herbalife's highest earners that play or have played a material role in the Herbalife event system." (Dkt. 129 ¶ 3.) The Defendants "are a select subset" of "top distributors." (*Id.*) So each allegation regarding "top distributors" refers not to the alleged conduct of the 20 Defendants, but to a broader group of unknown persons. This is quintessential "lumping."

8

Defendant knew events were "valueless" and that Plaintiffs would inevitably lose money by attending them.

In summary, Plaintiffs' RICO Section 1962(c) RICO claims should be dismissed pursuant to Rule 9(b) because Plaintiffs' have not alleged clearly and with particularity how each Defendant engaged in at least two predicate acts of wire fraud.[5]

### 2. Plaintiffs Have Not Pled Plausible, Factual Allegations Demonstrating How The Predicate Acts Committed By Each Defendant Proximately Caused Plaintiffs' Injuries.

"In order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to a private plaintiff, one or more of the predicate acts must not only be the 'but for' cause of the injury, but the proximate cause as well. A wrongful act is a proximate cause if it is a substantial factor in the sequence of responsible causation." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) (quotation marks and citations omitted). "The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect"—rather, "there must be some direct relation between the conduct and the injury to sustain a claim." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016). Thus, when evaluating a RICO claim for proximate causation, the "central question" is "whether the alleged violation led directly to the plaintiff's injuries." *Id.* (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).

"[C]ourts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006), *abrogated on other*

---

[5] The RICO claims against Defendants Baker, Concepción, Martinez and Rodriguez fail for the additional reason that Plaintiffs have not alleged <u>two</u> predicate acts of wire fraud as to each of these defendants. The sole alleged wire use by Baker is that he "promoted [an] event to other distributors via a Zoom conference facilitated by Herbalife on February 20, 2018," which lacks particularity. (Dkt. 129 ¶ 215.) Concepción and Martinez are vaguely (and collectively) alleged to have "promoted . . . event speaking engagements using their popular social media profiles," with no further detail. (*Id.* ¶ 179.) And Defendant Rodriguez is alleged to have participated in one online meeting, which is not described with particularity in any event. (*Id.* ¶ 198.) Plaintiffs otherwise allege that these (and other) Defendants attended in-person meetings or spoke at various events—which of course does not involve the use of the wires and cannot establish a predicate act of wire fraud.

grounds by *Simpson*, 744 F.3d 702. "Even if causing the 'harm' asserted was the purpose of a criminal scheme, and acts in furtherance of that scheme have caused it, unless a designated 'predicate act directly caused' that harm, then RICO's proximate causation requirement has not been met." *Hall v. Thomas*, 753 F. Supp. 2d 1113, 1152 (N.D. Ala. 2010) (quoting *Anza*, 547 U.S. at 460).

Here, it is not plausible that the Defendants' alleged racketeering activity (using the wires "to promote events attendance to Plaintiffs and class members, to plan and organize specific events, to sell tickets and to hold regularly scheduled meetings of the S&P Committee") was the "but for", let alone the proximate cause of Plaintiffs' injuries— because Plaintiffs do not allege that they attended events planned by Defendants at any specific "online meeting," received or reviewed any promotional messages transmitted or created by Defendants, purchased tickets from any Defendant's website, or were lured into attending events by others who had been directly influenced by any Defendant's use of the wires. The alleged "online meetings" certainly could not have caused each Plaintiffs' injuries (as Plaintiffs apparently imply), given that the meetings took place *after* some Plaintiffs stopped attending events altogether. (*See, e.g.*, Dkt. 129 ¶¶ 60-65 (alleging online planning meetings held between March 2015 and September 2016); *id.* ¶ 127 (alleging that Rodgers attended events "from 2011 – 2015"); *id.* ¶ 154 (alleging that Ribalta's last event was in July 2014); *id.* ¶ 144 (alleging that Izaar Valdez attended events in 2014). *Spirit Airlines*, 836 F.3d at 1350 (RICO claim failed where plaintiffs failed to allege "a direct link— or, indeed, any link at all—between Spirit's presentation of its Passenger Usage Fee and the plaintiffs' decision to purchase tickets on Spirit's website").

Plaintiffs not only fail to allege that predicate acts of wire fraud caused their harm— they fail to allege any connection whatsoever to Defendants. For example, Plaintiff Rodgers alleges attending events in Florida; and Pyle claims to have attended events in Oklahoma, Texas, and California. (Dkt. 129 ¶¶ 119, 121, 132.) Yet some Defendants are alleged to be "primary organizers" and promoters of events in entirely different geographical areas. (*Id.* ¶¶ 213 (Ohio), 218 (New Mexico), 227 (Santa Clara).) Plaintiffs' apparent theory—that each Defendants' alleged predicate acts were the "but-for" cause of Plaintiffs paying to attend *any* Herbalife event, *anywhere*, *anytime*—is simply implausible. *See Viridis*, 155 F. Supp. 3d at

10

1357 ("Accepting Plaintiffs' allegations as true for purposes of this Motion, Ideal could not have standing to bring this RICO action because its damages could not flow *directly* from Press and Silverman's conduct." (emphasis in original)); *Spirit Airlines*, 836 F.3d at 1349 ("[A] defendant who commits an act of racketeering is 'not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496–97 (1985)).

Plaintiffs also fail to plead proximate cause because intervening factors plausibly account for their failure to benefit from attending Herbalife events—*i.e.*, succeed in the Herbalife business opportunity. *Doe v. Trump Corp.*, 385 F. Supp. 3d 265 (S.D.N.Y. 2019), is particularly instructive. In *Trump*, the plaintiffs pursued multi-level marketing programs, including the "ACN Opportunity," as "independent business owners" ("IBO"). *Id.* at 271. They alleged that senior ACN members told them they had to attend local and national ACN events to be successful. *Id.* at 272-73. They also alleged that the defendants misled them into believing that the business opportunity "offered a reasonable probability of commercial success." *Id.* Among other things, the plaintiffs sought to recover the expenses they incurred in attending such events. *Id.* at 272-73.

The Court dismissed the plaintiffs' RICO claims for failure to allege proximate cause, holding that "[n]umerous intervening factors may account for [p]laintiffs' inability to recover their investments," aside from the defendant's conduct:

> Plaintiffs' lack of success could be attributable to the inherent challenges of multi-level marketing, Plaintiffs' capabilities as salespeople and the extent of Plaintiffs' existing networks to whom Plaintiffs could sell ACN products and recruit new IBOs. The losses may also be attributable to the market for ACN products in the Plaintiffs' localities and ACN's business practices – legitimate or otherwise – separate from Defendants' role. These factors, contributing in whole or part to Plaintiffs' losses, make the question of Defendants' responsibility the sort of "intricate, uncertain inquir[y]" that the proximate cause requirement is intended to avert.

*Id.* at 280 (quoting *Anza*, 547 U.S. at 460). The Court further observed that the conduct of third parties, *i.e.*, those who recruited Plaintiffs into the ACN opportunity and encouraged them to attend events, "bears on the question of proximate cause" and further "attenuat[es]

11

the link between Defendants' conduct and Plaintiffs' losses . . . ." *Id.* at 280-81.

The allegations here are virtually identical. As in *Trump*, Plaintiffs here allege that they were told they must attend events to be successful, and that they attended events, but were never successful. (*See, e.g.,* Dkt. 129 ¶¶ 8, 120, 129, 135-36.) Because Plaintiffs attended events in order to pursue the Herbalife business opportunity—at which they claim they ultimately failed—the alleged lack of value of the events cannot be separated from other factors that may have contributed to their lack of success, *e.g.*, their sales skills, the size of their networks, local demand for Herbalife product, representations made by third parties, the extent to which Plaintiffs followed advice given at events, and other aspects of the business opportunity not at issue in this case. This precludes a finding that Plaintiffs have plausibly plead proximate causation. *See Trump*, 385 F. Supp. 3d at 272.[6]

### 3.   There Are No Facts Supporting A Plausible Inference of Scienter.

To state a RICO claim based on wire fraud, Plaintiffs must plead that each Defendant acted with intent to defraud. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). Intent to defraud exists "when the defendant believed that he could deceive the person to whom he made the material misrepresentation out of money or property of some value." *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009). "A RICO plaintiff's allegations of scienter cannot be merely conclusory and unsupported by any factual allegations." *Republic of Panama*, 119 F.3d at 949 (quotation marks omitted). Rather, the plaintiff must provide a factual basis giving rise to a "strong inference that [the] defendants possessed the requisite factual intent." *Id.*

Attempting to establish the Defendants' intent to defraud, Plaintiffs allege globally that the Defendants "have collectively" persuaded victims to purchase tickets to events "held out as the secret to becoming financially successful in a fraudulent scheme to which Defendants know financial success is not possible." (Dkt. 129 ¶ 276.) This allegation is flatly

---

[6] Ostensibly, Plaintiffs seek to recover only losses stemming directly from event attendance. However, to the extent they seek to recover the total amounts they allegedly spent attempting to succeed in the Herbalife business opportunity, such amounts represent an expectancy interest not recoverable under RICO. *See Keeton v. Gynecare Worldwide*, 2016 WL 2753866, at *3 (S.D. Fla. Jan. 29, 2016) ("Allegations of an injury to a mere expectancy interest or an intangible property interest are insufficient to state a RICO injury.").

inconsistent with Plaintiffs' multiple allegations that the Defendants, in fact, **have** achieved financial success with Herbalife. (*Id.* ¶¶ 3, 7.) Plaintiffs' allegations that Defendants do not benefit financially from event ticket sales is also inconsistent with their generalized claim that Defendants acted with an intent to defraud Plaintiffs "out of money or property of some value" through ticket sales. (*Id.* ¶¶ 34 ("Proceeds from STS ticket sales typically flow into single purpose business entities, often with multiple members of the local leadership team having access to the accounts."); 103 ("Tickets to Leadership Development Weekends and Extravaganzas are sold by Herbalife."); 107 ("Most tickets for top distributor STS events are sold via websites and through entities operated by local leadership."). As alleged against a group of 20 Defendants—without any specific facts about each one's backstory, history with Herbalife, or knowledge—Plaintiffs' conclusory scienter theory does not give rise to a strong inference that each Defendant intended to deceive Plaintiffs.[7]

> **4.**   <u>Plaintiffs' Enterprise Allegations Fail Because They Have Not Pled A Common Purpose Shared by All Members of the Enterprise.</u>

To plead an association-in-fact enterprise "a plaintiff <u>must</u> allege that a group of persons shares three structural features: '(1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Cisneros*, 972 F.3d at 1211 (quoting *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017)).

> The purpose prong contemplates 'a common purpose of engaging in a course of conduct among the enterprise's alleged participants. *United States v. Turkette*, 452 U.S. 576, 583 (1981). An abstract common purpose, such as generally shared interest in making money, will not suffice." *Id.* (citing *Ray v. Spirit Airlines*, 836 F.3d at 1352-53, 1352, n.3 (observing that the "common purpose of making money" would not be sufficient to find an association-in-fact enterprise between Spirit Airlines

---

[7] Plaintiffs allege that "[t]op distributors do not participate in the creation of" and "do not understand" Herbalife's Statement of Average Gross Compensation, which is displayed at events and allegedly "gives an intentionally obscure and misleading impression of an individual's chances of having financial success with Herbalife's business opportunity." (Dkt. 129 ¶¶ 77-78.) If anything, this group-pled allegation weighs *against* a finding that the Defendants knew "financial success is not possible" with Herbalife and thus intended to defraud Plaintiffs.

> and outside vendors who merely provided "anodyne services").
> Rather, where the participants' ultimate purpose is to make
> money for themselves, a RICO plaintiff must plausibly allege
> that the participants shared the purpose of enriching themselves
> through a particular criminal course of conduct.

*Cisneros*, 972 F.3d at 1211 (citations omitted).

Plaintiffs' enterprise allegations fail here because they have not plausibly alleged that the participants in the purported enterprise shared a qualifying purpose. Plaintiffs allege that the association-in-fact enterprise consists of "Herbalife and approximately 100 leadership level members of its President's Team, including the top distributors and the entities these top distributors control" (Dkt. 129 ¶ 270), with each member of the enterprise sharing the "common purpose of perpetuating the fraudulent Circle of Success to sustain distributor engagement for their own financial gain." (*Id.* ¶ 271.) In other words, Herbalife and the distributors had a common purpose to make money by selling products, retaining distributors and generating income under the Herbalife marketing plan. Such a purpose is not distinct from the purpose the defendants (and Herbalife) share as part of their normal business. Nor is it distinct from the purpose shared by other direct sales companies and many of their distributors who desire to sell products, retain and recruit distributors to sell products and generate income. Thus, the complaint fails to plausibly allege an association-in-fact enterprise in which each member of the enterprise acts for a common, *fraudulent* purpose, that is distinguishable from their independent purpose to make money, sell products and grow and maintain customers and distributors. *See Cisneros*, 972 F.3d at 1212 ("Cisneros has alleged no facts that plausibly support the inference that the defendants were collectively trying to make money in pet sales <u>by fraud</u>, which is a common purpose sufficient to find a RICO enterprise . . . as opposed to the 'obvious alternative explanation,' . . . that they were simply trying to make money in pet sales, which is not.").

### C.   Plaintiffs' Section 1962(d) RICO Conspiracy Claim Fails (Count II).

Because Plaintiffs fail to state a claim for primary RICO violations under § 1962(c), their RICO conspiracy claim necessarily fails. *Cisneros*, 972 F.3d at 1220 ("Because she has failed to adequately allege . . . a pattern of racketeering activity, [Plaintiff's] RICO conspiracy claim must also fail.").

Even if the Court finds that Plaintiffs have pled a claim under § 1962(c) against one or more of the Defendants, the Court should still dismiss Plaintiffs' § 1962(d) claim. To allege a § 1962(d) claim, a plaintiff must allege "that the conspirators agreed to participate directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity." *United States v. Castro*, 89 F.3d 1443, 1451 (11th Cir. 1996). Such agreement can be established by: (1) showing an agreement of an overall objective or (2) by showing that a defendant agreed personally to commit two predicate acts. *United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992). "Plaintiffs must allege both that the conspirators agreed to participate in the affairs of an enterprise through a pattern of racketeering activity and sufficient conduct on the part of the participants that such an agreement can be inferred." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1281 (S.D. Fla. 2003) (citations omitted). Specific factual allegations must support the inference of an "agreement" to violate RICO. *Carter v. MGA, Inc.*, 189 F. App'x. 893, 895 (11th Cir. 2006). And the agreement to commit fraud also must be pled with specificity. *Am. United Life Ins. Co.*, 480 F.3d at 1065.

Here, Plaintiffs' conspiracy allegations are entirely conclusory. (Dkt. 129 ¶¶ 281-84.) Simply put, Plaintiffs allege that the Defendants were part of a larger group of individuals that helped to plan and promote, and that spoke at, various events. (*E.g., id.* ¶¶ 3, 4, 12.) Plaintiffs do not "describe the alleged agreement to perform at least two of the predicate acts" of wire fraud nor do they "describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the agreement." *Pupke v. McCabe*, 2014 WL 12621479, at *3 (S.D. Fla. Jan. 30, 2014); *Carter*, 189 F. App'x. at 895 ("[P]laintiffs alleged no facts to show or to create a reasonable inference that Defendants made an agreement. Plaintiff's conclusory allegations that Defendants conspired with each other are insufficient to survive a motion to dismiss."). By lumping Defendants into a larger body of unidentified individuals ("top distributors") and using broad strokes to allege an agreement to engage in wire fraud in order to plan and promote events, Plaintiffs fail to state a claim for RICO conspiracy.

### D. Plaintiffs Fail to Plead Their State Consumer Fraud Claims with Particularity.

A claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA")

requires (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009). A claim under the Arizona Consumer Fraud Act ("ACFA") requires proof of "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (App. 2004). A claim under the Oklahoma Consumer Protection Act ("OCPA") requires allegations that (1) the defendant engaged in an "unlawful practice" as defined in Section 753 of OCPA, (2) that the challenged practice occurred in the course of defendant's business; (3) plaintiff suffered an injury in fact; and (4) that the challenged practice caused plaintiff's injury. *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000).

Plaintiffs' state law claims sound in fraud[8] and are therefore also subject to Rule 9(b).[9] Nevertheless, despite the Amended Complaint's protracted narrative, the specific allegations relating to Defendants fall well short of those requirements.

<u>First</u>, most of the Defendants have no connection to any Plaintiff. Plaintiffs do not contend that they were ever exposed to any direct misrepresentation from or produced by Ryan Baker, Jorge de la Concepcion, Disney Di Martinez, Mary Holloway, Michael Katz, Alcides Mejia Jr., Cody Morrow, Suzanne Morrow, Paulina Riveros, Alan Rodriguez, or

---

[8] *See, e.g.*, Dkt. 129 ¶ 100 ("Moreover, income claims made by top distributors at Circle of Success events are fraudulent . . . ."); ¶ 129 ("Ms. Rodgers and her husband (now deceased) lost more than $100,000 pursuing Herbalife's fraudulent and illusory business opportunity."); ¶ 136: ("Cody lost approximately $30,000 pursuing Herbalife's fraudulent and illusory business opportunity,"); ¶ 247 ("Whether Defendants fraudulently represented that qualifying for, and attending, events was the key to success in the Herbalife business opportunity . . . . Whether Defendants' coordinated sales and marketing tactics as they relate to Circle of Success events were inherently fraudulent and/or exploitative."); ¶ 271 ("[E]ach member needed and depended on the participation of the other members to accomplish their common purpose of perpetuating the fraudulent Circle of Success to sustain distributor engagement for their own financial gain.").

[9] *Wyndham Vacation Ownership, Inc. v. US Consumer Attorneys, P.A.*, 18-81251-CIV, 2019 WL 7837887, at *12 (S.D. Fla. July 3, 2019) (A FDUTPA claim must be pled in particularity where the claim sounds in fraud); *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) ("Rule 9 requires allegations of fraud be pled with particularity, even if they are brought under the ACFA."); *Parrish v. Bank*, CIV-15-0913-HE, 2016 WL 3906814, at *2 (W.D. Okla. July 14, 2016) (an OCPA claim must be pled with Rule 9(b) particularity where is it based on fraud).

Gabriel Sandoval. To be sure, Plaintiffs assert that most of these Defendants spoke at various events and "misrepresented the importance of event attendance," but Plaintiffs do not claim they attended any of these events or otherwise received the misrepresentations. (Dkt. 129, ¶¶ 168-238.) Even if Plaintiffs had actually attended these events, alleging vaguely that Defendants, for example, misstated "the importance of event attendance" (*id.* ¶ 174) or presented "misleading success testimonials" (*id.* ¶ 216) does not satisfy Rule 9(b).

<u>Second</u>, even where Plaintiffs claim they attended events at which specific Defendants spoke, they largely neglect Rule 9(b)'s other requirements. For instance, Rodgers claims that she attended "almost every event from 2011 – 2015 and that "she heard each of Defendants Wick, Addy (without distinguishing between which Addy, Mark or Jillian), Peterson, Waldron, Stanford, Tartol, and Rosenau make the same misrepresentations: remain dedicated to the Circle of Success, and you will become rich like us." (Dkt. 129 ¶ 127.) However, Rodgers neglects to allege when or where these statements occurred, their context, or the specific representations actually made. (*Id.*) Likewise, Pyle and Ribalta provided lists of the events they attended and the specific speakers at each event, but no details about what any speaker said. (*Id.* ¶¶ 132, 154.) Kirby claims that Amber Wick told her "that she spent five years trapped at the lower rungs of the Herbalife scheme—so she knows how it feels—but that she ultimately made it to the top by not giving up and by increasing her commitment to the event system" but does not allege when this statement occurred or how the statement was false. (*Id.* ¶ 163.) Izaar and Felix Valdez contend that they were "instructed" to participate in "training systems" and told they would be "making $500,000 per year in Herbalife, that they would be able to purchase homes using all cash, and that their family's future would be secure for generations," but do not say who made the claims, when the claims occurred, or the context for the claims. (*Id.* ¶¶ 138-42.)

The fact that Plaintiffs are attempting to assert a complex, overarching conspiracy against twenty different defendants does not excuse their compliance with Rule 9(b); instead, it demands it. Defendants are individual small business owners who are being accused of racketeering and consumer fraud. Rule 9(b) requires Plaintiffs to make specific allegations that are sufficient to "inform <u>each</u> defendant of his [or her] alleged participation in the fraud." *Brooks*, 116 F.3d at 1381 (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*,

822 F.2d 1242, 1247 (2d Cir. 1987)) (emphasis added). Thus, the Court must dismiss Plaintiffs' consumer fraud claims pursuant to Rule 9(b).

### E. The Florida Plaintiffs' FDUTPA Claims Fail for Additional Reasons.

#### 1. The vast majority of the Defendants were not direct participants in any alleged FDUTPA violations.

An individual is liable for a FDUTPA violation only if he or she was a direct participant in the improper conduct. *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Services, Inc.*, 446 F. Supp. 3d 1032, 1053 (S.D. Fla. 2020) (quoting *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1288 (M.D. Fla. 2009)); *Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1277 (S.D. Fla. 2007) (plaintiffs "must allege Reardon's direct involvement in any dealings that may constitute a violation of FDUTPA."). Although the FDUTPA claim is subject to dismissal as to all Defendants for failure to satisfy Rule 9(b), the Florida Plaintiffs also fail to allege that the overwhelming majority of Defendants had any direct involvement in the representations or omissions to which the Florida Plaintiffs were exposed.

<u>First</u>, Florida Plaintiffs plead a mere handful of specific misrepresentations made by only three Defendants. The only alleged misrepresentations Rodgers cites are statements by Susan Peterson and Amber Wick taking place in January 2011 and July 2011. (Dkt. 129 ¶¶ 120-21.) Likewise, Ribalta describes specific representations by Amber Wick and Dani Grace during a September 2012 conference call. (*Id.* ¶¶ 151-53.) Otherwise, the Florida Plaintiffs do not allege that any of the other seventeen Defendants made any specific misrepresentations to them or directly participated in any of the above-referenced alleged misrepresentations. Therefore, at a minimum, the Florida Plaintiffs' claims fail as to the remaining seventeen Defendants.[10]

<u>Second</u>, Plaintiffs will presumably argue that direct participation requirement is satisfied by their general allegations that Defendants served on the S&P Committee during the time Plaintiffs attended Circle of Success events. As an initial matter, the deceptive

---

[10] Mark Addy, Jillian Addy, Cody Morrow, Suzanne Morrow, Gabriel Sandoval, John Tartol, Leslie Stanford, Alcides Mejia Jr., Paulina Riveros, Carol Rosenau, Jorge de la Concepcion, Disney Di Martinez, Ryan Baker, Daniel Waldron, Michael Katz, Alan Rodriguez, and Mary Holloway.

practice on which Plaintiffs base their claims is the misrepresentations and omissions about the events' impact on a distributor's Herbalife business, not the events themselves. Merely providing logistical and organizational support for these events is not participation in misrepresentations about the events. Even so, the Florida Plaintiffs stopped attending events <u>before</u> Plaintiffs allege most of the Defendants ever attended an S&P Meeting. Rodgers stopped attending events at some unspecified time in 2015 (*Id.* ¶ 154), Ribalta's last event was in July 2014 (*Id.* ¶ 154), and the Valdezes' last attended an event in October 2014 (*Id.* ¶¶ 144-45). Yet, Plaintiffs alleged that the earliest S&P Committee meeting attended by Mary Holloway, Gabriel Sandoval, Alcides Mejia Jr., and Carol Rosenau was on March 11, 2015. (*Id.* ¶ 61.) For John Tartol and Paulina Riveros, Plaintiffs allege it was May 12, 2015. (*Id.* ¶ 60.) Plaintiffs contend that Leslie Stanford and Amber Wick did not attend an S&P Committee meeting until June 23, 2016. (*Id.* ¶ 62.) Alan Rodriguez allegedly only participated in a September 18, 2019 meeting. (*Id.* ¶ 198.) Finally, Plaintiffs do not plead that Jorge de la Concepcion, Disney di Martinez, and Ryan Baker participated in <u>any</u> of the alleged S&P Committee meetings. (*See id.* ¶¶ 53–65.) Consequently, there is no allegation that these Defendants participated in planning, facilitating, or executing any of the events (or messaging relating to those events) that allegedly harmed the Florida Plaintiffs.

## 2. The Florida Plaintiffs fail to allege causation against all Defendants under FDUTPA.

Under FDUTPA, the plaintiff need not show actual reliance on a deceptive act, only that the deception was likely to deceive a consumer acting reasonably in the same circumstances. *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x. 565, 567 (11th Cir. 2009) (quoting *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC,* 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007)).

The Florida Plaintiffs contend that Defendants' misrepresentations and omissions would have deceived a reasonable consumer into believing that Circle of Success events had value and that the misrepresentations damaged them because they continued to attend the allegedly valueless events. (Dkt. 129 ¶ 293.) However, none of the direct, specific representations that the Florida Plaintiffs cite would have led a reasonable consumer to continue attending allegedly worthless events for several years.

To illustrate, Rodgers claims that, in January 2011, she attended a presentation by Susan Peterson in which Peterson claimed, "the *Herbalife business opportunity* offered a certain path to financial freedom for anyone willing to invest the time, money, and energy." (*Id.* ¶ 120 (emphasis added)). However, the representation related to the "Herbalife business opportunity", as pled, had nothing to do with encouraging event attendance or participation in the "Circle of Success." Indeed, Rodgers does not even assert that this statement caused her to attend more events but, rather, that it led her to commit "herself to vigorously pursuing the *Herbalife business opportunity*." (*Id.* (emphasis added)). Rodgers also alleges that, in July 2011, she attended another event where Amber Wick explained that she achieved success by "funneling prospects into the 'Circle of Success'" and "that anyone willing to 'duplicate' her model was sure to achieve the same liberation." (*Id.* ¶ 121). But, Rodgers does not and cannot explain how being told to "funnel prospects" (*i.e.*, people other than herself) to events would lead her (or the reasonable consumer) to spend money on events that she found otherwise valueless.[11]

Likewise, Ribalta claims that, during a September 2012 call, Amber Wick and Dani Grace told her that attending "Extravaganza" – an annual Herbalife corporate event – "completely transformed" Grace's life, was worth "every single penny," and that Ribalta should find a way to attend even if she could not afford to do so. (*Id.* 151–53.) However, these representations were limited to Extravaganza (an annual Herbalife corporate event) only and would not lead a reasonable consumer to attend the thirty-eight other supposedly worthless, non-Extravaganza events that Ribalta apparently attended for the next two years. (*Id.* ¶ 154.) Moreover, many of the events Ribalta claims she attended based on Defendants'

---

[11] In fact, Plaintiffs tacitly admit that Wick's statement is true when they claim that the event system benefited higher-level distributors (what Rodgers would be in relation to the prospects she "funnels" to event) by keeping distributors in their downline (*i.e.*, Rodgers' prospects) engaged. (Dkt. 129 ¶ 9 ("For Herbalife and the top distributors, the events are crucial to 'cement belief' in the Herbalife scheme, thereby increasing lower-level distributor engagement and retention.")). This also illustrates a conflict inherent in Plaintiffs' claims. If Rodgers heeded Wick's advice and funneled prospects to events despite believing those events had no value, then Rodgers participated in and perpetuated the very fraudulent scheme that she claims harmed her. Thus, those prospects should have claims against Rodgers and any other Plaintiff that encouraged event attendance despite knowing the events added no benefit to their Herbalife business.

misrepresentations occurred *before* the September 2012 call with Wick and Grace. (*See id.*)

Because the Florida Plaintiffs have not demonstrated that their damages (*i.e.*, what they spent on event tickets) were caused by the few specific, representations alleged in the Amended Complaint, their FDUTPA claims fail as a matter of law.

**F.      Kirby's Allegations do not Support an ACFA claim.**

To succeed on an Arizona consumer fraud claim, a plaintiff must prove "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn*, 208 Ariz. at 129, 91 P.3d at 351. "[A] plaintiff suing under the ACFA must prove reliance . . . . Parties that do not actually rely on a false statement or material omission have no claim under the ACFA." *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 624 (D. Ariz. 2017).

Kirby cites two specific representations, but neither is actionable under the ACFA. First, Kirby claims that Amber Wick told her that "she spent five years trapped at the lower rungs of the Herbalife scheme—so she knows how it feels—but that she ultimately made it to the top by not giving up and by increasing her commitment to the event system." (Dkt. 129 ¶ 163.) However, Kirby does not explain why this statement is false or misleading or how relying on this statement caused her to continue to attend allegedly worthless events to her detriment. Likewise, Kirby alleges that Susan Peterson told her and a large audience that they needed to "prune the vine of relationships" and that, in sum, meeting and being motivated by like-minded people is a reason to come to meetings. (*Id.* ¶ 165.) Again, though, Kirby neglects to explain how this statement is false or misleading or how her reliance on the statement caused her damages. Therefore, Kirby fails to state a claim under the ACFA.

Further, Kirby raises no other allegations against any of the other Defendants. Therefore, at the very least, Kirby's ACFA claims against the other Defendants should be dismissed.

**G.      Pyle's Allegations do not Support an OCPA claim.**

To sustain a claim under the OCPA, a plaintiff must show that (1) the defendant engaged in an "unlawful practice"; (2) the practice occurred in the course of defendant's business; (3) plaintiff suffered an injury in fact; and (4) that the challenged practice caused

plaintiff's injury. *Patterson*, 19 P.3d at 846.

Although Pyle lumps Defendants together and asserts generally that they made various deceptive representations and omission at Circle of Success events (Dkt. 129 ¶ 318), his actual factual allegations do not support these conclusory claims. Rather, Pyle alleges that he attended twenty-two events over two years, and at only two of these events is any Defendant alleged to have spoken (Dan Waldron at a June 2015 STS and Amber Wick at a April 2016 LDW). (*Id.* ¶ 132.) Even then, Pyle does not actually allege that Waldron or Wick made any misrepresentations at these events, or that "unlawful practice" under the OCPA actually caused his damages. *Walls v. Am. Tobacco Co.*, 2000 OK 66, ¶ 13, 11 P.3d 626, 630 ("[T]o have a private right of action under § 761.1(A), a consumer must suffer some detriment or loss as a result of a violation of the OCPA."). Therefore, Pyle's OCPA claims should be dismissed.

**H.    Plaintiffs' Conspiracy Claim Fails Because It Is Not A Stand-Alone Cause Of Action.**

Under Florida, Arizona, and Oklahoma law, conspiracy is not a state alone cause of action; it requires an underlying tort. *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 4th DCA 2006) ("[A]n actionable conspiracy requires an actionable underlying tort or wrong."); *Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, 2020 WL 411188, at *8 (D. Ariz. Jan. 24, 2020) ("Under Arizona law, to be liable for civil conspiracy, the defendants must have accomplished an underlying tort.") (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 37 (Ariz. 2002)); *AKC ex rel. Carroll v. Lawton Indep. Sch. Dist. No. 8*, 9 F. Supp. 3d 1240, 1245 (W.D. Okla. 2014) ("[I]n order for a civil conspiracy claim to lie, it must be based on an underlying tort."). Plaintiffs have failed to state viable claims under the FDUPTA, ACFA, or OCPA. Therefore, because no actionable underlying tort exists, Plaintiffs' conspiracy claim fails as a matter of law.

**I.    The Unjust Enrichment Claims Fail As A Matter of Law.**

**1.    Plaintiffs do not allege that they conferred a direct benefit on any Defendant.**

Under Florida, Arizona, and Oklahoma law, unjust enrichment requires the plaintiff to have conferred a direct benefit on the defendant. *See Harvey v. Florida Health Scis. Ctr., Inc.*,

728 Fed. Appx. 937, 946 (11th Cir. 2018) ("As to the first element, the plaintiff must show it 'directly conferred' a benefit on the defendant."); *Century Senior Servs. v. Consumer Health Ben. Ass'n Inc.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011) ("A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment."); *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1280 (N.D. Okla. 2006) (the plaintiffs' unjust enrichment failed where the defendants clearly "did not obtain any direct benefit" from the allege conduct); *Laborers' & Operating Engineers' Util. Agreement Health & Welfare Tr. Fund for Arizona v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 951 (D. Ariz. 1999) (holding a claim for unjust enrichment fails where the plaintiff "does not allege it conferred any benefit on [the defendant"); *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352, 661 P.2d 196 (App. 1982) (plaintiff seeking restitution "must demonstrate that [defendant] received a benefit, that by receipt of that benefit [defendant] was unjustly enriched at [plaintiff's] expense"); *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) ("To satisfy the first element, "the plaintiff must directly confer a benefit to the defendant.").

Plaintiffs' conclusory allegation that they "conferred a benefit onto Defendants by purchasing tickets to STS events" (Dkt. 129 ¶ 333) is belied by their specific allegations. Plaintiffs do not claim that they purchased event tickets directly from Defendants. Rather, Plaintiffs allege that "[p]roceeds from STS ticket sales typically flow into *single purpose business entities*, often with multiple members of the *local leadership team* having access to the accounts," "[m]ost tickets for top distributor STS events are sold via websites and through *entities operated by local leadership*," and that "[m]ost *local leadership committees* sell STS event tickets on-site in packs of five or ten tickets." (*Id.* ¶¶ 34, 107, 109 (emphasis added).) Plaintiffs do not allege that Defendants owned the "single purpose business entities" or otherwise received the revenues from STS ticket sales made to "local leadership committees." Therefore, Plaintiffs have not alleged that their ticket purchases conferred a direct benefit to Defendants and their unjust enrichment claims must be dismissed.

### 2. Plaintiffs' RICO and state law consumer fraud claims require dismissal of the unjust enrichment claims.

"Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Guyana Tel.*

23

*& Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n. 3 (11th Cir. 2003). "As soon as [a] claimant relies on a wrong [to supply the unjust factor], the right on which he relies arises from that wrong, not from unjust enrichment." *Id.* at 1245 n.3 (alterations in original) (quoting Peter Birks, Unjust Enrichment and Wrongful Enrichment, 79 TEX. L. REV. 1767, 1783 (2001)). Thus, where a plaintiff predicates its unjust enrichment claim on the wrongful conduct of a defendant in committing a tort, the plaintiff's recovery lies in the damages from the underlying tort, "rather than unjust enrichment." *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (quoting *Guyana*, 329 F.3d at 1245 n. 3).

In *Tenet*, the court dismissed the plaintiffs' unjust enrichment claims where the unjust enrichment was premised on the same conduct as the plaintiffs' RICO and theft claims. *Id.* Numerous district courts in this state have also recognized that unjust enrichment claims should be dismissed when the claims are based on wrongful conduct, including but not limited to RICO claims. *See, e.g.*, *Taxinet Corp. v. Leon*, 2018 WL 3405243, at *7 (S.D. Fla. July 12, 2018); *Freestyle Slides, Inc. v. Super Sweet Air, Inc.*, 2018 WL 3819073, at *4 (M.D. Fla. July 9, 2018); *Swipe For Life, LLC v. XM Labs, LLC*, 2011 WL 13220766, at *5-6 (S.D. Fla. Nov. 8, 2011); *Group Assets, LLC v. Fortress Inv. Group*, 2010 WL 2951508, at *4 (M.D. Fla. June 22, 2010); *Tilton v. Playboy Entm't Group, Inc.*, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007); *Union Pacific R.R. Co. v. Paragon Laboratories, Inc.*, 2006 WL 3709619, at *4 (S.D. Fla. Dec. 14, 2006); *but see AIM Recycling Florida, LLC v. Metals USA, Inc.*, 2019 WL 1991946, at *2 (S.D. Fla. Mar. 4, 2019) ("[O]ther courts reject this position, and maintain that Florida law makes no distinction between wrongful enrichment and unjust enrichment; these courts hold that a claim of unjust enrichment may be predicated on a wrong.").

As in *Tenet*, Plaintiffs' unjust enrichment claims are predicated on the same conduct that Plaintiffs cite as the basis for their RICO and state consumer protection claims. Therefore, because Plaintiffs rely on this wrongful conduct to supply the unjust factor, their unjust enrichment claims fail as a matter of law. *Tenet*, 420 F. Supp. 2d at 1309 ("Because '[t]he law of unjust enrichment is concerned solely with enrichments that are unjust independently of [alleged] wrongs,' Plaintiffs' unjust enrichment claims must be dismissed.") (quoting *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n. 2 (11th Cir. 2003)).

Plaintiffs' unjust enrichment claims should also be dismissed because Plaintiffs do not affirmatively allege that they lack an adequate remedy at law. *See Int'l Aerospace Group, Corp. v. Evans Meridian, Ltd.*, 2017 WL 11220668, at *4 (S.D. Fla. Feb. 23, 2017) (To state a claim for unjust enrichment, "the plaintiff must allege that there is no adequate legal remedy."); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) ("The plaintiffs' claims for unjust enrichment should be dismissed because the plaintiffs do not plead that they lack an adequate legal remedy."); *Hanks v. Andrews*, 2006 WL 273606, at *5 (D. Ariz. Jan. 30, 2006) ("Hanks fails to allege how the defendants were enriched by his dental records and how there is no adequate remedy at law."); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002), *amended*, 2002 WL 1359736 (S.D. Fla. Mar. 25, 2002) ("The Plaintiffs have not explicitly alleged that an adequate remedy at law does not exist, and the failure to do so is fatal" to their unjust enrichment claims").

Notwithstanding this pleading deficiency, Plaintiffs do possess adequate remedies at law. A remedy is adequate where "so long as 'the remedy at law is plain, certain, prompt, speedy, sufficient, complete, practical, and efficient in attaining the ends of justice. . . .'" *Estate of Malkin v. Wells Fargo Bank, N.A.*, 379 F. Supp. 3d 1263, 1283 (S.D. Fla. 2019) (quoting *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997)). Clearly, Plaintiffs' claims under RICO and the consumer fraud statutes provide an adequate legal remedy. *Id.* (dismissing the plaintiff's unjust enrichment claims because Delaware's insurable interest statute provided an adequate remedy); *see also Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.,* 408 F.3d 1300, 1309 (10th Cir. 2005) (upholding the trial court's dismissal of the plaintiff's unjust enrichment claim where the plaintiff had an adequate legal remedy under the Oklahoma Insurance Code); *Matthews v. Am. Honda Motor Co., Inc.*, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012) ("[B]ecause Matthews' unjust enrichment claim is predicated on the same wrongful conduct as her FDUTPA claim, she does not lack an adequate legal remedy."); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356–57 (S.D. Fla. 2012) ("Plaintiff seeks recovery for the exact same wrongful conduct as in her FDUTPA claim. Thus, if Defendant's [conduct] was deceptive, misleading or unlawful, causing damage to Plaintiff, she has an adequate remedy under Florida law."); *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 354 (D. Ariz. 2009) ("Rather, if an unjust

25

enrichment claim is based on fraud, then a plaintiff has an adequate remedy at law and should prove the fraud claim."); *In re Managed Care*, 185 F. Supp. 2d at 1337 (suggesting that the plaintiffs' RICO claims presented an adequate remedy because they provided treble damages); *Digital Sys. Eng'g, Inc. v. Bruce-Moreno*, 1 CA-CV 09-0574, 2010 WL 5030808, at *4 (App. Nov. 16, 2010) (holding that the plaintiff's fraud claim precluded recovery on an unjust enrichment claim where the "substantive facts for each stem from the same actions").

### J. Plaintiffs' Claims Against the New Defendants are Barred by the Applicable Statute of Limitations.

In their Amended Complaint (filed October 23, 2020), Plaintiffs added the New Defendants. It is readily apparent from the face of the Amended Complaint that Plaintiffs' claims against each of the four New Defendants are barred by the applicable statutes of limitations. The relation-back doctrine is inapplicable here and does not save Plaintiffs' claims against these defendants.

#### 1. RICO and RICO Conspiracy—All Plaintiffs

RICO and RICO conspiracy claims are subject to a four-year statute of limitations, which begins to accrue "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013).

Plaintiffs claim that Defendants misrepresented that the Circle of Success events were the key to success as an Herbalife distributor and that they were injured by purchasing tickets to events that did nothing to help their businesses prosper. Plaintiffs Rodgers, Valdez, and Ribalta allege that they stopped attending Circle of Success events well before October 23, 2016 (*i.e.*, four years before the filing of the Amended Complaint). (Dkt. 129 ¶¶ 127, 145, 154.) Consequently, Rodgers, Valdez, and Ribalta plainly knew or should have known that they had suffered the claimed injury (that they had purchased tickets to ineffective training events) before October 23, 2016. Likewise, although Pyle and Kirby attended three events after October 23, 2016, they also should have known that they had suffered the alleged RICO injury before this date. Pyle contends that he attended twenty-two events beginning in November 2014, but discovered that "[d]iligent attendance at every event was not delivering any success . . . ." (*Id.* ¶ 133.) Twenty of those events occurred before October 23, 2016. (*Id.*

¶ 132.) Kirby similarly claims that she attended "every event" for six years, with her last event being "an LDW in October 2016 . . . but the success never came." (*Id.* ¶ 162.) Having attended years of events and supposedly never achieving the promised financial success in the Herbalife system, both Pyle and Kirby clearly knew or should have known well before October 23, 2016 that attendance at these events was not guaranteeing their success in the Herbalife business.

Because each Plaintiff knew or should have discovered their RICO injury before October 23, 2016, their RICO claims against the New Defendants should be dismissed with prejudice.

### 2.    FDUPTA and unjust enrichment under Florida law—the Florida Plaintiffs.

FDUPTA has a four-year statute of limitations that begins to run when the consumer purchases the item or service. *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1192 (S.D. Fla. 2017). Similarly, under Florida law, unjust enrichment's four-year limitations period begins to run when the plaintiff confers the benefit at issue. *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So. 3d 1207, 1213 (Fla. 3d DCA 2017). None of the Florida Plaintiffs purchased an event ticket on or after October 23, 2016. (Dkt. 129 ¶¶ 127, 145, 154.) Therefore, their FDUTPA claims and unjust enrichment claims against the New Defendants should be dismissed with prejudice.

### 3.    ACFA and unjust enrichment under Arizona law—Kirby.

A plaintiff must bring a claim under the ACFA within one year of when the plaintiff discovered or with reasonable diligence could have discovered the fraud. *Syntelco Ltd. v. Reish*, 2017 WL 11513278, at *3 (D. Ariz. Aug. 28, 2017). The statute of limitations for an unjust enrichment under Arizona law is four years from the date that the plaintiff knew or reasonably should have known of the resulting injury. *Sweet v. Tomlinson*, 2020 WL 5016777, at *3 (D. Ariz. Aug. 25, 2020); *Atkins v. Calypso Sys. Inc.*, 2016 WL 10650809, at *9 (D. Ariz. Nov. 16, 2016), *aff'd*, 707 F. App'x. 882 (9th Cir. 2017). As outlined above (*see supra* § II(H)(1)), Kirby—the only Plaintiff asserting a claims under Arizona law—attended "every event" for "nearly six years between January 2010 and October 2016 but never achieved any success. (Dkt. 129, ¶¶ 158, 162.) As such, Kirby plainly knew or reasonably

should have known of her injury—and the alleged fraudulent conduct—well before the limitations deadline for both her unjust enrichment and ACFA claims.

### 4.    OCPA and unjust enrichment under Oklahoma law—Pyle.

A plaintiff must bring an OCPA claim within three years of the date the conduct occurred or the plaintiff discovered or could have discovered his injury with reasonable diligence. *Legacy Crossing, L.L.C. v. Travis Wolff & Co., L.L.P.*, 229 F. App'x. 672, 682 (10th Cir. 2007). Under Oklahoma law, unjust enrichment has a two-year statute of limitations from the date the plaintiff knew or should have known about the injury. *Erikson v. BP Expl. & Prod., Co.*, 2013 WL 12069069, at *2 (W.D. Okla. Nov. 18, 2013); *City of Tulsa v. Bank of Oklahoma, N.A.*, 2011 OK 83, ¶ 22, 280 P.3d 314, 321. Pyle, the only Plaintiff asserting claims under Oklahoma law, last attended a Circle of Success event on November 12, 2016. (Dkt. 129 ¶ 132.) By that time, Pyle had concluded that regular event attendance "did nothing to help [him] succeed at the Herbalife business opportunity. (*Id.* ¶ 135.) Therefore, Pyle's OCPA claims against the New Defendants are barred because he discovered or could have discovered his injury before October 23, 2017, and October 23, 2018 (respectively, the three-year and two-year limitations deadlines for his OCPA and unjust enrichment claims).

### 5.    Plaintiffs' claims against the New Defendants do not relate back to the filing of the original complaint.

Plaintiffs' claims against the New Defendants do not relate back to their filing of the original complaint. Fed. R. Civ. P. 15(c)(1)(C) provides that an amended complaint adding new parties relates back to the filing of the original complaint *only* where:

> (1) the claim "arose out of the same conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading;" (2) the new party "received such notice of the action that it will not be prejudiced in defending on the merits;" (3) the party being added received such notice within the time period of Rule 4(m), 120 days; and (4) the party being added "knew or should have known [within the Rule 4(m) time period] that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Lindley v. City of Birmingham, Ala.*, 515 F. App'x. 813, 815 (11th Cir. 2013). Without proof of a "mistake," an amendment cannot relate back. *Powers v. Graff*, 148 F.3d 1223, 1226-27 (11th Cir. 1998) ("[The Rule] permits an amendment to relate back *only* where there has

been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where . . . there is a lack of knowledge of the proper party.") (quoting *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993)). "A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." *Powers*, 148 F.3d at 1226-27 (quoting *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997)).

The burden of proof to show Rule 15(c)(1)(C) applies falls on the plaintiff. *Harris v. Rambosk*, 2020 WL 6505036, at *3 (M.D. Fla. Nov. 5, 2020) ("Although the statute of limitations is an affirmative defense that must be established by the defendant, when relation back is required to satisfy the statute of limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied.") (quoting *Covey v. Assessor of Ohio Cnty.,* 666 F. App'x. 245, 248 (4th Cir. 2016)); *Hodge v. Orlando Utilities Comm'n*, 2009 WL 5067758, at *5 (M.D. Fla. Dec. 15, 2009) (on a motion to dismiss, noting that the plaintiff bears the burden of showing requirements of Rule 15(c)(1)(C) are satisfied and dismissing the plaintiff's claim where he failed to meet that burden); *see also Dowdell v. Jones*, 2019 WL 1436385, at *5 (M.D. Ala. Mar. 13, 2019) (granting the defendants' motion to dismiss and holding that the "onus" is on the plaintiff to show that it satisfies Rule 15(c)(1)(C)); *McLaughlin v. SLD Atlanta West, LLC*, 2017 WL 9882669, at *3 (N.D. Ga. Nov. 1, 2017) (holding plaintiff failed to come forward with any proof showing addition of the defendant related back to the original complaint).

Plaintiffs do not, and cannot, satisfy their burden under Rule 15(c)(1)(C). Nothing in the Amended Complaint suggests that the New Defendants received notice of the action within the period required by Rule 4(m) for serving the original complaint. *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) ("The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted."). Equally important, Plaintiffs do not—and cannot—contend that they made an error about the identity of any of the New Defendants. *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1364 (M.D. Fla. 2018) ("[W]here the mistake requirement of Rule

15(c) is not satisfied, 'there can be no relation back regardless of whether other requirements, such as notice and lack of prejudice to the joined party, are met.'") (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999)). To the contrary, Plaintiffs explicitly referenced Alcides Mejia Jr. in the original complaint, alleging that he managed the LLC that collected ticket sales for the Miami STS events. (Dkt. 1 ¶ 73.) Thus, they knew he existed and was involved in Circle of Success events, yet Plaintiffs chose not to name him. "[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset." *Powers*, 148 F.3d at 1227 (quoting *Wells v. HBO & Co.*, 813 F. Supp. 1561, 1567 (N.D. Ga. 1992)). And for the other New Defendants not referenced in the original, the fact that Plaintiffs did not know their identities when they filed the complaint is not a "mistake" under Rule 15(c). *Wayne*, 197 F.3d at 1103 (holding that a plaintiff's "lack of knowledge regarding the identities of the deputy sheriffs was not 'a mistake concerning the identity of the proper party.'") (*overruled in part on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003)); *Myles v. Green*, 2013 WL 12201091, at *14 (S.D. Fla. Jan. 30, 2013) ("Lack of knowledge is not an 'error, a misnomer, or a misidentification' that allows an amendment to fall within Rule 15(c)(1)(C)'s ambit.") (quoting *Wayne*, 197 F.3d at 1102; *Lelieve v. Orosa*, 2011 WL 5103949, at *4 (S.D. Fla. Oct. 27, 2011) (same).

Because Plaintiffs have not demonstrated compliance with Rule 15(c)(1)(C), their claims against the New Defendants do not relate back to the original complaint. Without the benefit of relation back, these claims, as pled, are barred by the applicable statutes of limitations (*see supra* § II.I) and must be dismissed.

## IV.    CONCLUSION.

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss each claim asserted against them by Plaintiffs, award Defendants their attorneys' fees and costs, and grant all other just and appropriate relief.

Date: December 7, 2020                    Respectfully submitted,

                                              **QUARLES & BRADY, LLP**
*Attorneys for Individual Defendants*
101 E. Kennedy Boulevard, Suite 3400
Tampa, FL  33602
Telephone:  (813) 387-0300
Facsimile:  (813) 387-1800

By:  */s/ Zachary S. Foster*
**ZACHARY S. FOSTER**
Florida Bar No. 111980
Zachary.Foster@quarles.com


**QUARLES & BRADY, LLP**
*Attorneys for Individual Defendants*
Two North Central Avenue
Phoenix, AZ  85004
Telephone:  (602) 229-5200
Facsimile: (602) 229-5690

**KEVIN D. QUIGLEY**
Arizona Bar No. 015972
*Admitted Pro Hac Vice*
Kevin.Quigley@quarles.com
**EDWARD SALANGA**
Arizona Bar No. 020654
*Admitted Pro Hac Vice*
Edward.Salanga@quarles.com
**BRIAN A. HOWIE**
Arizona Bar No. 026021
*Admitted Pro Hac Vice*
Brian.Howie@quarles.com

31

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss was served electronically using the CM/ECF system, on December 7, 2020, on all counsel or parties of record on the service list.

## SERVICE LIST

Etan Mark, Esq.
Yaniv Adar, Esq.
Niki Namazi, Esq.
*Attorneys for Plaintiffs*
MARK MIGDAL & HAYDEN
80 S.W. 8th
Street, Suite 1999
Miami, Florida 33130
etan@markmigdal.com
yaniv@markmigdal.com
niki@markmigdal.com
eservice@markmigdal.com

AND

Jason Jones, Esq.
Ohio Bar No. 0095384
jason@jonesatlaw.com


                                        */s/ Zachary S. Foster*
                                        Attorney